J. Owen Murrin, (75329)
Murrin Law Firm
7045 E. Los Santos Drive
Long Beach, CA 90815
(562) 342-3011
(562) 724-7007 / Fax

Attorney for Plaintiff
LAURA D. SATERBAK

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA D. SATERBAK,<br><br>       Plaintiff,<br><br>  vs.<br><br><br>NATIONAL DEFAULT SERVICING CORPORATION; SELECT PORTFOLIO SERVICING, INC., and DOES 1- XXX<br><br>      Defendants. | CASE NO.: **'15CV0956 WQHNLS**<br><br>**VERIFIED COMPLAINT**<br><br>**1. STATUTORY VIOLATIONS UNDER FDCPA AGAINST SPS**<br>**2. STATUTORY VIOLATIONS UNDER FDCPA AGAINST NDSC**<br>**3. CANCELLATION OF INSTRUMENTS UNDER CIVIL CODE SECTION 3412**<br>**4. FRAUD AND DECEIT**<br>**5. WRONGFUL FORECLOSURE**<br>**6. DECLARATORY RELIEF**<br>**7. INTERFERENCE WITH CONTRACT AND PROSPECTIVE BUSINESS RELATIONS**<br>**8. RESCISSION BASED UPON VOIDABLE CONTRACT** |

9. **VIOLATION OF DECEPTIVE TRADE PRACTICES ACT**
10. **INJUNCTIVE OR EQUITABLE RELIEF**
11. **CALIFORNIA HOMEOWNER'S BILL OF RIGHTS**
12. **REGULATION X OF RESPA AND REGULATION Z OF TILA VIOLATION**
13. **VIOLATION OF 12C.F.R. §1024.36(d)(2)(B)**
14. **VIOLATION OF 12 C.F.R. §1024.36(d)(a)(i)(ii)**
15. **VIOLATION OF 12 C.F.R. §1026.36(c)(3)**
16. **VIOLATION OF 12 C.F.R. §1026.3**
17. **VIOLATION OF 12 C.F.R. §1024.35(e)(1)(A)**
18. **NEGLIGENCE**
19. **VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200**
20. **DEMAND FOR ACCOUNTING**
21. **VIOLATION OF 11 U.S.C. §1691(D)(1)**

**[JURY TRIAL REQUESTED]**

///

///

2

VERIFIED COMPLAINT

TABLE OF CONTENTS

Page

I.    THE PARTIES ………………………………………….....2

II.   VENUE & JURISDICTION ………………………………….2

III.  PURPOSE OF SUIT AND THE
      ASSERTION OF NO WAIVER …………………………….....4

IV.   GENERAL ALLEGATIONS ………………………………….5

            A. The Basis For Action Against SPS …………………………...15

V.    CAUSES OF ACTION …………………………………...19

FIRST CAUSE OF ACTION …………………………………………19
(As To All Statutory Violations Under FDCPA)
Against SPS

      A. FDCPA COUNTS 1-4 …..…………………………………19

      B. FDCPA COUNTS 5-8 …………………………………..20

      C. FDCPA COUNTS 9-12 …………………………………..20

      D. FDCPA COUNTS 13-16 …………………………………21

      E. FDCPA COUNTS 17-20 …………………………………22

      F. FDCPA COUNTS 21-24 …………………………………22

      G. FDCPA COUNTS 25-28 ……………………………….....23

      H. FDCPA COUNTS 29-32 …………………………………24

      I. FDCPA COUNTS 33-36 …………………………………25

SECOND CAUSE OF ACTION …………………………………...26
(As To All Statutory Violations Under FDCPA)
 Against NDSC

      A. FDCPA COUNTS 1-4 …………………………………..26

      B. FDCPA COUNTS 5-8 …………………………………..27

C. FDCPA COUNTS 9-12 ……………………………………………28

D. FDCPA COUNTS 13-16 …………………………………………..29

E. NDSC has repeatedly set and then cancelled the sale dates of the Plaintiff's Property-Counts 17-21 …………………………………………30

F. Counts 22-26 (as to NDSC for the action of T&B) ………………………..31

G. Counts 27-30 (as to NDSC using T&B, as agent) …………………………32

H. Counts 30-36 (as to NDSC using T&B, as agent) …………………………33


THIRD CAUSE OF ACTION ……………………………………………....33
Cancellation of Instruments Under Civil Code Section 3412
Against all Defendants

FOUTH CAUSE OF ACTION …………………………………………...35
(Fraud and Deceit)
All Defendants

FIFTH CAUSE OF ACTION …………………………………………37
(Wrongful Foreclosure)
All Defendants

SIXTH CAUSE OF ACTION ……………………………………………38
(Declaratory Relief)
As Against All Defendants

SEVENTH CAUSE OF ACTION …………………………………… 39
(Interference with contract and prospective business relations)
As Against All Defendants

EIGHTH CAUSE OF ACTION ……………………………………………41
(Rescission as a Voidable contract)
As Against All Defendants

NINETH CAUSE OF ACTION ………………………………………....41
(Violation of Deceptive Trade Practices Act)
Against SPS

TENTH CAUSE OF ACTION ……………………………………….…..43
(Injunctive or Equitable Relief)
Against All Defendants

ELEVENTH CAUSE OF ACTION ………………………………….......44
(California Homeowner's Bill of Rights)
As to All Defendants

TWELFTH CAUSE OF ACTION …………………………………….48
(Regulation X RESPA and Regulation Z of Tila Violation)
Against SDS

THIRTEENTH CAUSE OF ACTION ...............................................59
Violation of 12 C.F.R. § 1024.36(d)(2)(B)
(Failure to provide information requested in
Plaintiff's RFI letters within 30 days of receipt, excluding legal public holidays,
Saturdays, and Sundays)
 As to SPS

FOURTEENTH CAUSE OF ACTION …………………………………60
Violation of 12 C.F.R. § 1024.36(d)(1)(i)-(ii)
(Failure to provide Plaintiff with the requested
information in writing with contact information
 for further assistance and failure to conduct a
reasonable search for the requested information)
As to APS

FIFTEENTH CAUSE OF ACTION …………………………………….61
Violation of 12 C.F.R. § 1026.36(c)(3)
(Failure to provide an accurate payoff statement
within 7 days, excluding legal public holidays,
COMPLAINT FOR DAMAGES AND EQUITABLE
RELIEF Saturdays, and Sundays, "after receiving a
written request from the consumer or any person
acting on behalf of the consumer")
As to SPS

SIXTEENTH CAUSE OF ACTION ……………………………………..62
 Violation of 12 C.F.R. § 1026.3
(Failure to provide an accurate reinstatement
statement within 10 days, excluding legal public holidays,
Saturdays, and Sundays, of receiving Plaintiff's request)
As to SPS

SEVENTEENTH CAUSE OF ACTION …………………………………...63
Violation of 12 C.F.R. § 1024.35(e)(1)(A)
(Failure to correct the error or errors identified by the
borrower and failure to provide the borrower with a
written notification of the correction, the effective date of the correction, and
contact information, including a telephone number, for further assistance)
As to SPS

EIGHTEENTH CAUSE OF ACTION ………………………………… ..64
**Negligence**
As to all Defendants

NINETEENTH CAUSE OF ACTION …………………………………...65
**(Violations of Business and Professions Code §17200)**
As to All Defendants

TWENTIETH CAUSE OF ACTION ……………………………………….70
(Demand for Accounting)
As to All Defendants

TWENTY FIRST CAUSE OF ACTION …………………………………...71
(Violation of 11 U.S.C. § 1691(d)(1)
As to SPS

VI.     PRAYER FOR RELIEF …………………………………………..73

**Laura Saterbak's verification to verified complaint is after last page of
complaint**

## SATERBAK EXHIBIT LIST

| Document # | Description | Date |
|---|---|---|
| 12 | Corporate Assignment of Deed of Trust | 12-17-12 |
| 21 | NDSC postponement letter New Trustee's sale date 11-12-14 | 09-15-14 |
| 22 | NDSC postponement letter New TS date 12-11-14 second wave | 10-15-14 |
| 23 | NDSC postponement letter New TS date 1-13-15 | 11-20-14 |
| 24 | NDSC postponement letter -New TS date 02-17-15 | 12-31-14 |
| 25 | SPS letter add info req for loan mod | 10-08-14 |
| 26 | SPS letter re loan mod too close to TS | 09-3-14 |
| 31 | SPS Validation of Debt Notice | 08-12-13 |
| 32 | SPS letter re interest rate change | 10-18-14 |
| 33 | Notice of Trustee's sale | 3-26-15 |
| 34 | Saterbak Loan Mod Request | 10-1-14 |
| 35 | Saterbak Loan Mod Request  (2013 Fed Tax return-LDS) | 10-1-14 |
| 36 | Notice of Trustee Sale | 9-12-14 |
| 59 | Recorded Items Grant Deed | 6-1-07 |
| 63 | Substitution of Trustee | 12-17-12 |
| 66 | SPS Relationship Mgr letter #3 09-13-14 | 09-13-14 |
| 67 | Manning letter to Saterbak re request for info | 10-29-14 |
| 68 | Manning letter to Saterbak re request for info | 10-29-14 |
| 69 | Manning letter to Saterbak re request for info | 10-29-14 |
| 70 | Manning letter to Saterbak re request for info | 10-29-14 |
| 71 | Manning letter to Saterbak re request for info | 10-29-14 |

| 72 | Manning letter to Saterbak re request for info | 10-29-14 |
|----|-----------------------------------------------|----------|
| 73 | Manning letter to Saterbak re request for info | 10-29-14 |
| 74 | Manning letter to Saterbak re request for info | 10-29-14 |
| 75 | Manning letter to Saterbak re request for info | 10-29-14 |
| 76 | Manning letter to Saterbak re request for info | 10-29-14 |
| 77 | Manning letter to Saterbak re request for info | 10-29-14 |
| 78 | Manning letter to Saterbak re request for info | 10-29-14 |
| 79 | Manning letter to Saterbak re request for info | 10-29-14 |
| 80 | Manning letter to Saterbak re request for info | 10-29-14 |
| 81 | Manning letter to Saterbak re request for info | 10-29-14 |
| 82 | Manning letter to Saterbak re request for info | 10-29-14 |
| 83 | Manning letter to Sak re request for info | 10-29-14 |
| 84 | Manning letter to Saterbak re request for info | 10-29-14 |
| 85 | Notice of Trustee Sale for April 16, 2015 | 4-16-15 |
| 86 | Letter from NDSC Re Postponement of Trustee | 4-2-15 |
| 87 | Letter from Laura Saterbak to NDSC | 4-3-13 |
| 88 | November 1997 Assets Securitization Controller's Handbook | Nov. 1987 |

COMES NOW the Plaintiff, Laura D. Saterbak, and hereby complains, alleges and affirms the following:

## I.

## THE PARTIES

1.    Plaintiff Laura D. Saterbak is a citizen and resident of the State of California, residing in La Mesa, San Diego County, California.   Plaintiff is a "person" as identified under 15 USC 1692a(3) (as a "consumer").

2.    Defendant National Default Servicing Corporation ("NDSC") is an Arizona Corporation who appears to be acting in the nature of a debt collector under the Fair Debt Collection Practices Act.  Plaintiff believes and alleges that Defendant is acting in the nature of a debt collector as identified under 15 USC 1692a(6).

3.    Defendant Select Portfolio Servicing, Inc. ("SPS") is a Utah Corporation who appears to be acting as a debt collector under the Fair Debt Collection Practices Act. Plaintiff believes and alleges that they are under 15 USC 1692a(6).

## II.

## VENUE & JURISDICTION

4.    This is an action in law and in equity and this venue is the proper and appropriate subject matter jurisdiction to hear these matters because the subject property which presents itself as to the creation of justifiable controversy is situated in San Diego County, California.

5.   The Plaintiff resides at the subject property which is in controversy in this proceeding, situated in La Mesa, San Diego County, California.

6.   The issues surrounding this controversy involve violations of the Fair Debt Collection Practices Act (15 USC § 1692e et seq), hereinafter FDCPA, Truth in Lending Act (part of the Consumer Credit Protection Act (15 USC § 1601 et seq.), hereinafter TILA, Real Estate Settlement and Practices Act (2 USC §§ 2601-2617),

3

VERIFIED COMPLAINT

hereinafter RESPA,(15 USC §1691 et seq.), and  Equal Credit Opportunity Act hereinafter, 15 USC §1691 et seq.) ECOA.  The court has pendent jurisdiction over the related state causes of action.

**III.**

**PURPOSE OF SUIT AND THE ASSERTION OF NO WAIVER**

7.  Fed. R. of Civ. P. Rule 8 (d) (2) & (3) allows pleading of alternative and even inconsistent Claims. In accordance with this, Plaintiff seeks as its primary goal, to have Defendants'  foreclosure and collection actions cease and terminated whether because they are time barred, for lack authority or because Defendants or their predecessor failed to perfect their interest or other reasons that go to unenforceability of the loan.  To achieve this goal, and because of these things, Plaintiff asserts the loan is unenforceable.   If the court fails to find in Plaintiff's favor, or to the extent it is not inconsistent, then Plaintiff asserts claims that go to laws and statutes designed to aid and protect homeowners and debtors like the Fair Debt Collection Practices Act, the Truth in Lending Act, the Real Estate Settlement and Practices Act, the California's Homeowners' Bill of Rights, and/or the Equal Credit Opportunity Act.  Their primary mission is to completely defeat Plaintiffs collection and foreclosure efforts once and for all.   Only if that position is not accepted or it is otherwise allowed, does Plaintiff fall back on the other claims, mostly the above-mentioned statutory ones based on the above statutes, including California State Homeowners' Bill of Rights, but which assumes a loan or debt.  Plaintiff does not believe there is an enforceable loan or debt and wants to do nothing to interfere or waive such position.   Still, if it is determined, there is an enforceable loan or it is otherwise allowed Plaintiff wants to assert all rights allowed by laws and the Federal Rules of Civil Procedure to the extent these laws were also broken.  For example even though Plaintiff first asserts there is no enforceable loan, the Homeowners Bill

4

VERIFIED COMPLAINT

of Rights prevents dual tracking which is alleged happened here and explained in claim number eleven.  Plaintiff does asserts this and other such claims only to the extent allowed by law as long as it does nothing to interfere or waive its primary position that this is an enforceable loan. The same with the Loan Modification claims.   Loan Modification communications are considered offers of compromise under Fed. R. of Ev. § 408 and Privileged.  Plaintiff does nothing, by this complaint and in asserting all viable claims, to waive any and all such privileges while asserting the loan and/or note is unenforceable.  The communications offered in this complaint and this case are offered under the strict exceptions with the understanding that no waiver is given generally to the loan modification communications or that it inhibits their ability to challenge the enforceability of the note and/or loan. In other words, Plaintiff waives nothing and retains all rights available to them.

## IV.

## GENERAL ALLEGATIONS

8.  Plaintiff at all times claims a legal and equitable interest in the real property known as 4826 Mount Helix Dr., La Mesa, California. The property was acquired by way of a Grant Deed dated April 30, 2007. See Ex. 59.

9.  At all times and places the Plaintiff disputes the validity of the debt referenced herein based on the circumstances set forth.  The Plaintiff herein believes she is acting in good faith and within  the "least sophisticated consumer" standard in the filing of this action,  as noted in *Clomon v. Jackson*, 988 F2d 1314 (1993). She is entitled to relief under the Fair Debt Collection Practices Act and other causes of action that follow.

10. The Defendants, jointly and severally, have sent correspondence to the Plaintiff through the United States Mails claiming among other things that they or their alleged principal are owed a sum certain, which is not correct, and which they

VERIFIED COMPLAINT

know or should know is not correct.  As a result of the above, Plaintiff believes and alleges the amount noted for collection or the amount stated that is needed to satisfy the foreclosure is incorrect, and discovery is highly likely to  show Defendant's alleged "principal" has been paid (in full or in part) due to third party payers, and thus a full  explanation or accounting is requested.

11. Defendants, jointly and severally, have sent correspondence to the Plaintiff through the United States Mails claiming among other things that they are collecting for an undisclosed principal.  It is believed this undisclosed principal is not a legitimate holder or assignee of the (alleged) Note.  In the alternative, it is previously alleged that Defendant's alleged "principal" has been made whole (in full or in part) due to third-party payers.   Either way, the implication of their communication is that they have authority from the legitimate holder and or assignee of the (alleged) Note and DOT.

12. Defendants collectively represent their principal in the nature and capacity of a debt collector as defined under the Fair Debt Collection Practices Act ("FDCPA") and do not actually own the alleged debt they are attempting to collect.

13.   The sum certain that is alleged to be owed by the Plaintiff is specific, yet on numerous occasions, the Defendants, jointly and severally, have sent numerous correspondence to the Plaintiff which contains gross misrepresentations of the alleged debt they claim the Plaintiff owes them and they have sent out numerous, inconsistent amounts as to the alleged debt.

14. It only takes one single violation of the FDCPA (per se) to establish civil liability on the part of one or more defendants participating together, to wit:

> a debt collection practice can be a 'false, deceptive, or misleading' practice in violation of § 1692e even if it does not fall within any of the subsections of § 1692e. A single violation of § 1692e is sufficient to establish civil liability under the FDCPA. See 15 U.S.C. § 1692k (establishing civil liability for "any debt collector who fails to comply with any provision of this subchapter")."  *Clomon*, supra.

6

VERIFIED COMPLAINT

14. The allegations brought forward in this Complaint are timely, continuing and are not barred by the statute of limitations under the Fair Debt Collection Practices Act (15 USC 1692k(d) or any of the other causes of action that make up this complaint.

15. Further, the Plaintiff herein believes and alleges that the actions of the Defendants jointly and severally continue to cause her personal economic harm, in addition to jeopardizing her business relationship with other third parties, slandering her credit histories with false and misrepresentative information; thus depriving her of an income or the quiet enjoyment of her property.  Said conduct of Defendants tortuously interferes with her business affairs and relations with third parties by and through their actions as debt collectors.

16. Further, the issues creating this controversy involve an alleged indebtedness that is not present and for which she should be exonerated or spared from foreclosure at this time.  It is specifically alleged that payment has been made by some third party payer that should inure to the benefit of Plaintiff which is not being considered. Even if some doubt exists as to who should get the benefit of these payments, as between the Defendants and Plaintiff, Plaintiff has the superior equity and comes to this Court with clean hands.

17. The actions of the Defendants, jointly and severally, now constitute an imminent threat to the Plaintiff's possession of the property which is the subject of this Complaint.

18. As to Specific Violations of FDCPA by Defendant NDSC the following are asserted as separate violations.

19. Defendant NDSC, and by and through its agent, and or under the direction of Defendant SPS, sent correspondence and various Notices of Trustee's Sales to the Plaintiff, only to later postpone or completely cancel them.  For example, letters

VERIFIED COMPLAINT

from them started in January of 2013, one such  , dated August 19, 2014, is attached as Exhibit "36."  The Plaintiff alleges that the directives given in this regard and other similar notices that Defendant NDSC sent Plaintiff each and every month through April 2015 are identical and  possess inherent issues based on the lack of authority due to defendants:

      (a) having done improper accounting relating to the actual sum due and owing; and

      (b) failure to establish a full and verifiable chain of custody as to the note or Deed of Trust ("DOT") between Plaintiff and the "real party in interest."

20.  Defendant NDSC, along with its liaison SPS, engaged in wrongful conduct because it allows some person or entity other than the "real party in interest" to the benefit of security they do not possess. In the alternative, if the real party at interest is truly behind the foreclosure, then this foreclosure is allowing them a double recovery.

21.  Defendants' (NDSC and SPS') activities are wrongful because it emanates from a void or voidable DOT (Exh. 3) or note (Exh. 14) because the actual parties to it were defunct, or not viable, at the time or nothing but shell, pass-through entities (that cannot act or hold property), and no matter what, were not authorized to do business in the State of California at the time.

22.  It is impossible for SPS or any other party to appoint a Substitute Trustee, or NDSC to act as such for a number of reasons:

    1)    There are defects in the chain of title of the entity carrying the financing.  This started because the original lender, American Brokers Conduit ("ABC"), and its nominee, and agent for foreclosure purposes, Mortgage Electronic Registration Systems, Inc. (MERS) were defective, not viable entities, and not registered to do business in California in 2007 when the Note or DOT was executed,  (While MERS claims it is a

8

VERIFIED COMPLAINT

"mortgagee or beneficiary of record", in reality its standing or capacity to act as the Lender itself as defined in the DOT does not comports to the standards set forth in Restatement of Mortgages Third § 5.4.  See Restatement (Third) of Property: Mortgages § 5.4(a) 16 (1997) ("A transfer of an obligation secured by a mortgage also transfers the mortgage 17 unless the parties to the transfer agree otherwise."). Moreover, "[a] mortgage may be 18 enforced only by, or in behalf of, a person who is entitled to enforce the obligation the 19 mortgage secures." Id. § 5.4(c). Put differently, "in general a mortgage is unenforceable if it is held by one who has no right to enforce the secured obligation." Id. § 5.4 21 comment e).  ABC and MERS at the time in essence were fictitious entities, representing a real party in interest that did not manifest itself or properly perfect its interest.  Therefore the Deed of Trust filed on June 1, 2007, as the underlying authority for this foreclosure is a nullity at the option of Plaintiff, which she elects to void with the assistance of the court.   Declaratory relief is sought as one of the causes of action set forth in this complaint.

2)      Even if the above is not voided or set aside, the subsequent attempt to assign the DOT as set forth in Exhibit 12 is fraught with error and cannot be deemed a valid transfer.  It is believed the Defendants claim their authority from this improper assignment.   This is an invalid and improper assignment because of the following:

a) The document is dated on December 27, 2011; yet it wasn't filed for record until December 17, 2012, almost a year later. There is no excuse provided for this delay.

b) American Brokers Conduit was not qualified to do business in California at that time.  Plus, it was never a legitimate company, and even if it was, it ceased to be such and or became defunct or bankrupt before December 27, 2011.  Plaintiff located an American Brokers Conduit Corporation in New York, but it did not come into existence until March 16, 2012.

c) The document was prepared by "E. Lance" of "NTC," an acronym for Nationwide Title Clearing in Palm

9

VERIFIED COMPLAINT

Harbor, Florida, a known third-party document manufacturing plant who more than likely obtained third-party information from one of LPS's computer software manufacturing platforms.

d) The document was notarized by Mark A. Seech, a notary public in and for the State of Ohio, who acknowledged the signature of Nicole M. Wicks. Even though he is acknowledging the signature and affixing his seal, there is no seal for MERS affixed to this document so it is not valid as to MERS.

e) Nicole M. Wicks in all likelihood is an employee of JPMorgan Chase Bank, N.A. and is using her "certifying officer" authority as an "Assistant Secretary" for MERS to attempt to convey the deed and note with some sort of implied authority; JP Morgan Chase has no interest in this case and is not in the chain of title. This renders Ms. Wicks action ineffective on behalf of MERS.

f) The assignment itself advises anyone referencing this document to contact JPMorgan Chase Bank, N.A. at the listed address and telephone number on the document. Again JP Morgan Chase, was not in the chain of title and its reference is therefore irrelevant to the matter.

g) The Loan Number on this assignment (#1024635350) does NOT match the original loan number shown on the original deed of trust (#1780534).

h) MERS, as nominee ABC claims to have received "good and valuable consideration from ABC". Both entities have no right to conduct business in California, so their actions thereafter are voidable, at the election of the other party, Plaintiff who has so elected.

i) MERS could NOT have received anything of value because of its bankruptcy-remote status and subsidiary status.

VERIFIED COMPLAINT

j) The attempt to assign this to the Securitized trust (Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007-AR7), is invalid, so any action by the trust or an arm of the trust is invalid.

k) The cut-off date for this trust is September 1, 2007. The date of this assignment is December 27, 2011, recorded December 17, 2012; OVER FOUR YEARS AFTER IT WAS EXECUTED AND FIVE YEARS AFTER IT WAS RECORDED;

l) The closing date of this trust is September 18, 2007, which means that distribution of funds to investors, would begin roughly 30-45 days later.  If this loan is non-performing, it would not be in the best interest of the trust to accept it. In the alternative, it would have been deceitful on the part of the Grantors to convey a non-performing loan into a trust, and it is further alleged the terms of the trust do not allow the trust to accept this loan.  Therefore the trust in question could not own it. The Trust in question is Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007-AR7, which the Plaintiff alleges is in violation of specific sections of the Internal Revenue Code which define the activities of said trust in order to ensure its tax-exempt status, in addition to violations of 17 CFR 210, 228, 229 et seq, which Congress intended to effectuate to regulate the tax-exempt behaviors of such trusts.

m) Based upon the Pooling and Servicing Agreement (PSA) at pages S-96 through S-98, of the above named trust, the manner in which the above assignment purported to convey the note and deed into the trust pool was non-compliant in multiple aspects and thus, could not have made the trust pool as prescribed, in contravention of New York Trust Law at Section 7-2.4.  This law read: "If the trust is expressed in the instrument creating the estate of

11

the trustee, every sale, conveyance or other act of the trustee in contravention of the trust, except as authorized by this article and by any other provision of law, is void." Thus, the actions of any subsequent "trustee" on behalf of this trust entity is *ultra vires* and without legal authority. If Chase was involved in this matter, then it appears Chase self-assigned this deed and note to itself. This would also be *ultra vires*. It is believed that Defendants took over from Chase and so they are in the same situation. They are taking through a party not in the chain of title.

n) It is alleged upon information and belief, and Defendants have the burden on this point, that somehow this loan became an asset of American Home Mortgage Holdings, Inc or one of its affiliates, also abbreviated AHMH because it's loan number links up to the MERS website which shows the loan became owed by AHMH.   ABC is believed a trade name, trademark or assumed name of AHMH or one of the American Home Mortgage affiliated companies.  AHMH became bankrupt along with other affiliated American Home Mortgage Companies in 2007. It is believed that ABC and this loan would have been an asset of this bankruptcy.  Once Bankrupt, the Bankruptcy court had the right to deal with all the assets including this loan.  Any designation or right given to MERS would and did drop off of this loan due to the Bankruptcy.  Since that was not done, MERS' ability to act on behalf of ABC was lost. That being the case, MERS could not be used as a way to convey this loan, even assuming it had the right to do so (which is denied) after 2007.  Since the Loan is purported to be transferred to the securitized trust: Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007-AR7, in 2011 by way of a recorded document in 2012, this would be an ineffective void transfer for the reasons already

VERIFIED COMPLAINT

described but also because it is after the 2007 bankruptcy.   This is further reason for refusing to recognize Defendants' actions. The real party in interest needs to receive its assignment or rights through the bankruptcy. There is no such assignment or order form any bankruptcy court conveying any interest to these Defendants or their principals.   Defendants have not connected any dots with any bankruptcy order or assignment so the real party in interest is not associated with these defendants.

o) According to the Pooling and Servicing Agreement ("PSA") encompassing the subject property the "Closing Date" for assets to be conveyed into the trust was "September 18, 2007."  In addition, the PSA names the certain participants which do not include either "Broker's Conduit" or "American Home Mortgages."

p) Despite the arguments made by Lenders in court cases in this State that Borrowers are not "parties" to the REMIC trusts, in the November 1997 *Asset Securitization Comptroller's Handbook*, issued by the Comptroller of the Currency ("OCC"), Page 8 of this handbook illustrates that the Borrower is in fact, a party to the securitization chain. In order for securitization to work, the PSA must be properly adhered to, which in this case, the Plaintiff maintains was not.  (See Exhibit 88 for page 8 of the above)

23.  It is believed the real party in interest has not authorized the commencement of foreclosure proceedings herein.  Further, it is alleged the real party in interest has been substantially paid or paid in full and the principal trying to collect money from the Plaintiff is an imposter.  Suggesting the contrary by these defendants is proffered as false and a misrepresentation, emanating from bad records, self-interest, and/or deception.  The Defendants taking their authority from the wrong party, as a

13

VERIFIED COMPLAINT

substitute Trustee, are acting, *ultra vires*. If successful, this foreclosure would result in unjust enrichment by some person or entity other than the real party in interest, or in the alternative if the real party in interest is involved then the real party in interest would be obtaining a double recovery.  Along this line, the Plaintiff alleges that any real party in interest involved in the securitization process described herein has been made substantially whole through insurance proceeds which are not privileged or entitled to any rights of subrogation by its own terms.

24. Further, it would be impossible for any claimant to appoint a substitute Trustee as the original "Lender" went bankrupt or went out of business prior in 2007 and could not act, and or any proper assignee did not appoint the present substitute trustee, as it did not properly perfect its interests.  Its nominee, MERS, was not registered to do business in California and could not act as a nominee at the time the note and DOT were executed, and even if it could, it lost its rights when the above mentioned bankruptcy occurred.  Still, Defendants manufactured documents for the purposes of illegally taking the Plaintiff's property, only to enrich themselves at the expense of the Plaintiff and the real party in interest.  It is no secret that servicing entities to mortgage loans stand to make substantially more money for themselves by allowing foreclosure to occur, which works to the detriment of any borrower attempts to cure any alleged default, especially if securitization is involved.  If the real party in interest has been paid in full or in part, as is the case here, then an attempt to take over this property by some other party without proper privity would be unfair and should not be allowed. It is alleged that Defendants cannot say payment has not been paid in full.  Defendant's burden is to come forward and show it has authority to act against Plaintiff, and this loan or alleged loan has not been paid by any source.

VERIFIED COMPLAINT

25. Further, it should not be allowed for any claimant, like defendants, to appoint a substitute Trustee without filing a bona fide appointment that comports to all other constructive notices of transfer of authority and shows its authority and right to act without suspicion of going through manufactured documentation. Defendants so called authority is associated with too much suspicion.

26. Defendants used a ruse to lure Plaintiff into thinking there was a way to modify the (alleged) loan which would allow Plaintiff to save her property without filing legal action. Said ruse occupied a lot of time and money for nothing. It caused plaintiff emotional stress waiting for naught.  Defendants never had any intention of modifying the alleged loan or an ability to modify and wrongfully and deceitfully gave the impression otherwise or that this process would help Plaintiff save her property.  Plaintiff wasted time and money trying to comply, and now that her credit is ruined she is in a precarious position in her ability to conduct her own business, let alone refinance with another lender, if in fact such was warranted. Defendants' actions have negatively affected the marketability of the property.  Plaintiff seeks damages for the above including damages for breaches of law and contract according to proof at trial.

## A. The Basis For Action Against SPS

27. Defendant SPS sent the Plaintiff a "Validation of Debt Notice", dated August 12, 2013, wherein Defendant SPS claims that it is collecting payments for Wilmington Trust Company, successor Trustee to Citibank, N.A., as Trustee for the benefit of registered holders of Structured Asset Mortgage Investments II Trust ("SAMI II Trust 2007-AR7"), Mortgage Pass-Through Certificates Series 2007-AR7.  Said Notice is attached to this Complaint as Exhibit 31, incorporated by reference herein.  It is in this letter wherein the Plaintiff disputes the right of SPS and its principal.  Plaintiff particularly takes issues with the following:

VERIFIED COMPLAINT

(a.)  The claim that SPS possess rights to enforce any provisions of any alleged Note or Deed of Trust, or assignment;

(b.)  The claim that a sum certain  is due when it is believed a third-party payment was made from other sources than the alleged Borrower (Plaintiff herein) but sources upon which Plaintiff is entitled to a credit.

(c.)  The claim that SPS has any right to collect any payments on behalf of the SAMI II Trust 2007-AR7.

28. Plaintiff believes and alleges that the SAMI II 2007-AR7 Trust is regulated by a pooling and servicing agreement ("PSA") , relevant portions have been referred to above.  See allegations 7-26.  Specifically, there was a Closing Date stated in this trust's PSA of September 18, 2007.  That is the time, all documents, including Assignments of Deeds of Trust and other related instruments, had to have been submitted to the Trustee of said Trust.  This date was not met here.

29. On December 17, 2012 at 8:00 a.m., over five (5) years AFTER the Closing Date of the Trust, the Plaintiff maintains and alleges that employees of Nationwide Title Clearing, Inc., a known Florida document manufacturing plant, under the request of Lender Processing Services, Inc., caused to be drafted and recorded a "Corporate Assignment of Deed of Trust" on behalf of a defunct Lender, American Brokers Conduit ("ABC"), recorded in the office of the Recorder of San Diego County, California, bearing Document #2012-0790475.   Said "Corporate Assignment of Deed of Trust" is attached hereto as Exhibit 12 and incorporated herein by reference and sometimes referred to as the assignment of the DOT. This assignment of the DOT has numerous irregularities and is therefore invalid.

30. Plaintiff further believes and alleges that ABC, never had any authority to contract in the State of California so any liaison involving MERSCORP HOLDINGS, Inc. as the parent corporation of Mortgage Electronic Registration Systems, Inc. as ABC's nominee, could not exist and therefore any purported

VERIFIED COMPLAINT

transfer of this (alleged) loan to Citibank as Trustee for SAMI II 2007-AR7 could not have properly taken place.

31. To repeat and emphasize, the parties executing this assignment of the DOT, knew or should have known that Defendant SPS and its affiliates did not have authority to collect any debt on behalf of the trust, for reasons set forth above at paragraphs 7-26, because:

> (a.) ABC's could not contract with MERS without being registered in the state of California, and or by reason that it was a defunct company or non-entity.

> (b.) That the purposed assignment above mentioned was originally prepared on December 27, 2011, but not recorded until a year later;

> (c.) The Closing Date of the Trust pool in question was September 18, 2007; thus, the Assignment comporting to give SPS authority to collect payments from the Plaintiff on an alleged loan did not make the trust pool on time and was void under New York Estates, Powers and Trusts § 7-2.4; and said voiding of the late recordation of an assignment to a trust was upheld by this State's Fifth Appellate District in *Thomas A. Glaski v. Bank of America, N.A. et al*, Case No. F064556, which was later published in the Official Reports.  Cases to the contrary are on appeal.

32. It is alleged upon information and belief that this loan became an asset of American Home Mortgage or one of its affiliated companies above mentioned. American Home Mortgage and its affiliated companies went bankrupt, and when it did, any and all arrangements it had with MERS in association with this loan were rendered void and no longer effective. That bankruptcy happened in 2007.  This is a further reason for refusing to recognize Defendants actions which have materialized

VERIFIED COMPLAINT

only in association with the actions of MERS or MERSCORP. In addition the above creates the background for further FDCPA violations, set forth in detail hereinafter.

33. Plaintiff states for the record that the last payment made by her on this alleged debt was October, 2008, which is four years beyond that allowed to enforce the underlying debt as provide in violation of CCP 337. Once the underlying debt is unenforceable because of the statute of limitations, so is the ability to enforce the security which is dependent upon it. Regardless, foreclosing on security after five years is not permissible under CCP 320. The relevant provisions are as follows:

**CCP 320 dealing with the recovery of real estate provides**:

No entry upon real estate is deemed sufficient or valid as a claim, unless an action be commenced thereupon within one year after making such entry, and within five years from the time when the right to make it descended or accrued.

**CCP section 335.  The periods prescribed for the commencement of actions other than for the recovery of real property, are as follows:**

[CCP 337]  **CCP Within four years:** 1. An action upon any contract, obligation or liability founded upon an instrument in writing, except as provided in Section 336a of this code; provided, that the time within which any action for a money judgment for the balance due upon an obligation for the payment of which a deed of trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, may be brought shall not extend beyond three months after the time of sale under such deed of trust or mortgage.

34. Tender is not required where a party is alleging a cancellation of instruments cause of action according to the California Supreme Court, 55 Cal 2d at 620-621. Tender is also not required when other statutory law apply that require tender which is the case here. It also does not apply to this case because the wrong party has instituted a wrongful foreclosure and or the party instituting the foreclosure is time

VERIFIED COMPLAINT

barred and has no authority to bring it.   See *Glaski v. Bank of America*, 218 Cal. Appl 4th at 1100; Ram v. OneWest Bank, 234 Cal. App. 4th 1, 11, (2015).

## V. CAUSES OF ACTION

## <u>FIRST CAUSE OF ACTION</u>

### (As To All Statutory Violations Under FDCPA)

### Against SPS

35. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

36. Plaintiff prays that all individual counts set forth below be considered separate violations against SPS and each a violation of the Fair Debt Collection Practices Act, FDCPA.

37. By reason of the above conduct of Defendants, and each of them, Plaintiff has suffered extreme stress for which she seeks compensation.

38. By reason of the above, Plaintiffs request all damages allowed by law, particularly 15 USC §1692k including actual damages, attorney fees, and including the set amount per violation for each count listed below.

### A. FDCPA COUNTS 1 - 4

39. 22Defendant SPS, in the furtherance of its debt collection scheme as above described, sent correspondence to the Plaintiff, dated April 12, 2014.  This letter purports to misrepresent SPS's authority to engage Plaintiff in a "loan resolution option." SPS knew or should have known that conditions preceding prevented it from sending such false and misrepresentative correspondence to the Plaintiff. Yet it sent out this letter within the statutory period in violation of the FDCPA referencing a Loan No. of "0015342751," which is unknown to the Plaintiff for which her property would be subject to seizure and sale by this Defendant.

VERIFIED COMPLAINT

40. Said correspondence contains debt collection language as propounded by the FDCPA.

41. The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of **15 USC 1692e(5) and 15 USC 1692f(6)(A).**

42. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A).**

## B. FDCPA COUNTS 5-8

43. Said correspondence contains debt collection language as propounded by the FDCPA.

44. The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

45. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

## C. FDCPA COUNTS 9-12

46. Defendant SPS, in the furtherance of its debt collection scheme, sent correspondence to the Plaintiff, dated July 14, 2014, Exhibit 24 and incorporated by reference herein, which purports to misrepresent SPS's authority to claim that it was owed a sum certain in the amount of $251,277.88, when it knew or should have known that it had no legal authority vested in it to send such a letter.

47. Said correspondence contains debt collection language as propounded by both the RFDCPA and the FDCPA.

48. The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

VERIFIED COMPLAINT

49. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

## D. FDCPA COUNTS 13 - 16

50. Defendant SPS, in the furtherance of its debt collection scheme, sent correspondence to the Plaintiff, dated September 3, 2014,  attached hereto as Exhibit 26 and incorporated by reference herein, which purports to misrepresent SPS's authority to deny "loss mitigation assistance. "  Defendant SPS knew or should have known that it had no legal authority vested in it to deny such an offering.

51.  Said correspondence contains debt collection language as propounded by the FDCPA.

52.  The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of, **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

53.  Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

## E. FDCPA COUNTS 17-20

54. Defendant SPS, in the furtherance of its debt collection scheme, sent correspondence to the Plaintiff, dated September 13, 2014, attached hereto as Exhibit 66 and incorporated by reference herein, which purports to represent SPS's authority to offer a "loan resolution option", when it knew or should have known that it had no legal authority vested in it to offer such a thing.  Further, SPS knew or should have known that conditions precedent prevented it from sending such false and misrepresentative correspondence to the Plaintiff especially one referencing a Loan No. of "0015342751,"   which is unknown to the Plaintiff as to the specific

VERIFIED COMPLAINT

identification of any alleged Loan that may  be exerted as a lien interest against her real property.

55. Said correspondence contains debt collection language as propounded by the FDCPA.

56. The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of, **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

57. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

58. The Plaintiff prays for statutory damages under the Complaint in addition to statutory attorney's fees and costs of suit and any other relief this Court deems just and proper.

### F. FDCPA COUNTS 21-24

59. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

60. Defendant SPS, in the furtherance of its debt collection scheme, sent correspondence to the Plaintiff, dated October 1, 2014, within the statutory period of the FDCPA and incorporated by reference herein as Exhibit 34 or 35. This correspondence purports to represent SPS's authority to offer a "loan resolution option," when it knew or should have known that it had no legal authority vested in it accept or deny such a thing.  Further, SPS knew or should have known that conditions precedent prevented it from sending false and misrepresentative correspondence to the Plaintiff related to a Loan No. of "0015342751." which loan is unknown to the Plaintiff as to the specific identification of any alleged Loan that may exerted as a lien interest against her real property.

VERIFIED COMPLAINT

61. Said correspondence contains debt collection language as propounded by FDCPA.

62. The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

63. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

### G. FDCPA COUNTS 25-28

64. Defendant SPS, in the furtherance of its debt collection scheme, sent correspondence to the Plaintiff, dated September 3, 2014, attached hereto as Exhibit "26" and incorporated by reference herein, This correspondence purports to misrepresent SPS's authority to offer "loan modification assistance," when it knew or should have known that it had no legal authority vested in it to deny or accept such an offering.  Further, SPS knew or should have known that conditions precedent prevented it from sending such false and misrepresentative correspondence to the Plaintiff related to Loan No. of "0015342751," is unknown to the Plaintiff as to the specific identification of any alleged Loan for which her property may be encumbered by a publicly-recorded document.

65. Said correspondence contains debt collection language as propounded by the FDCPA.

66. The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

67. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

VERIFIED COMPLAINT

## H. FDCPA COUNTS 29-32

68. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

69. Defendant SPS, in the furtherance of its debt collection scheme, sent correspondence to the Plaintiff, dated October 8, 2014, attached hereto as Exhibit "25" and incorporated by reference herein. This correspondence purports to misrepresent SPS's authority to request further "loan modification assistance," when it knew or should have known that it had no legal authority vested in it to initially request said information from Plaintiff, and it was acting with the intent to mislead the Plaintiff into believing it had authority to grant a loan modification in the first place. Defendant further requested information from the Plaintiff to further continue to mislead her along with their scheme. Further, SPS knew or should have known that conditions precedent prevented it from sending such false and misrepresentative correspondence to the Plaintiff related to a Loan No. of "0015342751," which loan was unknown to the Plaintiff as to the specific identification of any alleged Loan for which her property might be encumbered.

70. The correspondence further threatens alternatively to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of 15 **USC 1692e(5)** and **15 USC 1692f(6)(A)**.

71. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

## I. FDCPA COUNTS 33-36

72. Defendant SPS, in the furtherance of its debt collection scheme, sent yet another piece of correspondence to the Plaintiff, dated October 18, 2014, attached hereto as Exhibit 32 and incorporated by reference herein, which purports to

24

VERIFIED COMPLAINT

misrepresent SPS's authority to claim that it was authorized to inform the Plaintiff that her mortgage payments reset to a new monthly payment and then to demand said payment, when it knew or should have known that it had no legal authority vested in it to send the Plaintiff any such notice and demand letter.

73. Said correspondence contains debt collection language as propounded by FDCPA, claiming that such information was for "informational purposes only" and "not considered an attempt to collect a debt", when it knew or should have known that it had sent previous correspondence to the Plaintiff in an attempt to collect a debt, which the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

74. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)**.

75. The Plaintiff prays for statutory damages under the Complaint in addition to statutory attorney's fees and costs of suit and any other relief this Court deems just and proper.

76. Further, Defendant SPS is believed to be working in concert with the other named Defendants to wrongfully deprive the Plaintiff of her property through said deceptive trade practices and statutory violations as cited herein.

## <u>SECOND CAUSE OF ACTION</u>
### (As To All Statutory Violations Under FDCPA)
### Against NDSC

77. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

78. Plaintiff prays that all individual counts set forth below be considered separate violations against SPS and each a violation of the Fair Debt Practices Act.

VERIFIED COMPLAINT

79. By reason of the above conduct of Defendants, and each of them, Plaintiff has suffered extreme stress for which she seeks compensation.

80. By reason of the above, Plaintiffs request all damages allowed by law, particularly 15 USC §1692k including actual damages, attorney fees, and including the set amount per violation for each count listed below.

## A. FDCPA COUNTS 1-4

81. Plaintiff claims and alleges that Defendant NDSC sent correspondence to the Plaintiff, dated September 15, 2014, within the statutory period under both sets of statutes, showing a Trustee's Sale Number of "11-31100-EM-CA", stating a Loan No. of "0015342751", which is unknown to the Plaintiff as to the specific identification of any alleged Loan for which her property would be subject to seizure and sale by this Defendant.  Said correspondence is attached hereto as Exhibit 21 and incorporated herein by reference, and are deceptive because they knew Plaintiff is engaged in loan modification and until that exercise has been completed and it is known the loan modifications will not happen, not known at this time, it is inappropriate to support a sale going forward.

82.  Said correspondence contains debt collection language as propounded by the FDCPA.

83.  Said notice claims to set a new sale date of November 12, 2014 and threatens to take action that the Plaintiff does not believe the Defendant is entitled to take, in violation of 15 USC 1692e(5) and 15 USC 1692f(6)(A).

84. Further, the Plaintiff claims and alleges that the Defendant has misrepresented the character and status of the debt under 15 USC 1692e(2)(A) for reason alleged in paragraphs 7-26 .

VERIFIED COMPLAINT

85. The Plaintiff prays for statutory damages under the Complaint in addition to statutory attorney's fees and costs of suit and any other relief this Court deems just and proper.

## B. FDCPA COUNTS 5 - 8

86. Plaintiff refers to and incorporates by reference herein each and every allegation continued above.

87. Plaintiff further claims that Defendant NDSC sent correspondence to the Plaintiff, dated October 15, 2014, within the statutory period under both sets of statutes, showing a Trustee's Sale Number of "11-31100-EM-CA", stating a Loan No. of "0015342751", which is unknown to the Plaintiff as to the specific identification of any alleged Loan for which her property would be subject to seizure and sale by this Defendant.  Said correspondence is attached hereto as Exhibit 22 and incorporated herein by reference.

88. Said correspondence contains debt collection language as propounded by the FDCPA.

89. The correspondence claims to set a new sale date of December 11, 2014 and threatens to take action that the Plaintiff alleges the Defendant is entitled to take, in violation **15 USC 1692f(6)(A).**

90. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A).**

91. The Plaintiff prays for statutory damages under the Complaint in addition to statutory attorney's fees and costs of suit and any other relief this Court deems just and proper.

## C. FDCPA COUNTS 9 - 12

92. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

VERIFIED COMPLAINT

93. Plaintiff further claims that Defendant NDSC sent correspondence to the Plaintiff, dated November 20, 2014, within the statutory period under both sets of statutes, showing a Trustee's Sale Number of "11-31100-EM-CA", stating a Loan No. of "0015342751", which is unknown to the Plaintiff as to the specific identification of any alleged Loan for which her property would be subject to seizure and sale by this Defendant.  Said correspondence is attached hereto as Exhibit 23 and incorporated herein by reference.

94. Said correspondence contains debt collection language as propounded by both the RFDCPA and the FDCPA.

95. The correspondence claims to set a new sale date of January 13, 2015 and threatens to take action that the Plaintiff does not believe the Defendant is entitled to take, in violation of **15 USC 1692e(5) and 15 USC 1692f(6)(A).**

96. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A).**

97. The Plaintiff prays for statutory damages under the Complaint in addition to statutory attorney's fees and costs of suit and any other relief this Court deems just and proper.

### D. FDCPA COUNTS 13 - 16

98. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

99. Plaintiff further claims that Defendant NDSC sent correspondence to the Plaintiff, dated December 31, 2014, within the statutory period under both sets of statutes, showing a Trustee's Sale Number of "11-31100-EM-CA", stating a Loan No. of "0015342751", which is unknown to the Plaintiff as to the specific identification of any alleged Loan for which her property would be subject to seizure

VERIFIED COMPLAINT

and sale by this Defendant. Said correspondence is attached hereto as Exhibit 24 and incorporated herein by reference.

100. Said correspondence contains debt collection language as propounded by the FDCPA.

101. The correspondence claims to set a new sale date of February 17, 2015 and threatens to take action that the Plaintiff does not believe the Defendant is entitled to take, in violation of **15 USC 1692e(5) and 15 USC 1692f(6)(A).**

102. Further, the Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A).**

103. The Plaintiff prays for statutory damages under the Complaint in addition to statutory attorney's fees and costs of suit and any other relief this Court deems just and proper.

### E. NDSC has repeatedly set and then cancelled the sale dates of the Plaintiff's Property-Counts 17-21

104. Plaintiff alleges that Defendant NDSC has repeatedly cancelled and reset the sale date multiple times without specifically advising who it is collecting a debt for, in violation of 15 USC 1692e(10). NDSC continues engage in this activity without authority to sell the property. It cannot sell the property and has no legitimate proof of authority vested in it that gives it the right to sell said property.

105. Plaintiffs alleges that Defendant has no right to suggest there is indebtedness in the amount set forth.

106. Further, Defendant NDSC is believed to be working in concert with the other named Defendants to wrongfully deprive the Plaintiff of her property through said deceptive trade practices and statutory violations as cited herein one of which is to misrepresent to the Plaintiff that her property would be sold at sale when in fact, it knew or should have known that it was advertising the sale of the "lien" only to

VERIFIED COMPLAINT

prospective bidders, while telling the Plaintiff her property was being sold on any given sale date therein.  These misrepresentations are continuous and ongoing and have been throughout the current statutory period under both sets of debt collection practices acts referenced herein, involving all claims herein set forth.

### As to Specific Violations of FDCPA as against NDSC for the acts of Tiffany and Bosco, its agent.

107. In conjunction with the alleged statutory violations, to further their scheme to defraud the Plaintiff of her money or property, Defendant NDSC used Tiffany and Bosco ("T & B"), to assist in the sale of the Plaintiff's property.

108. In concert with other actors, a single-page document referenced herein as a "Substitution of Trustee", filed for record in the office of the Recorder of San Diego County, California as Document #2012-0790476, made false claims as who had the power to act to foreclose on this loan, Exhibit 63.

109. In addition, Plaintiff believes and alleges that these acts are *ultra vires* and constitute the following alleged violations of the FDCPA:

### F.  Counts 22-26 (as to NDSC for the action of T&B)

110. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

111. On or about August 19, 2014, **NDSC through T & B** sent correspondence to the Plaintiff, signed, by one of its representatives, noticing the Plaintiff that Defendant T & B, on behalf of Defendant NDSC, intended to conduct a Trustee's Sale of her property on or about September 12, 2014 at 10:30 a.m., claiming the Plaintiff owed it $1,719,290.48, which is grossly disproportionate to previous amounts claimed by any of the other alleged ultra vires parties.

VERIFIED COMPLAINT

112. In sending this Notice, **NDSC** using T & B, on behalf of Defendant NDSC, affirmed under the heading entitled "NOTICE TO POTENTIAL BIDDERS", the following:

> "If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction.  You will be bidding on a lien, not on the property itself."

113. This "NOTICE TO POTENTIAL BIDDERS" is NOT consistent with other communications.   Each letter sent to the Plaintiff, as noted in the foregoing Complaint, indicated that the Defendant parties herein intended on foreclosing on the Borrower's property and used language that it knew was false and misrepresentative in an attempt to get the Plaintiff to pay them a sum certain or lose her home to foreclosure.    NDSC used T & B to state (in **BOLD-FACED TYPE and** emphasis supplied)  the following:

> **YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 05/24/2007.   UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.**

114. In fact, the Plaintiff alleges that the Defendants jointly and severally knew or should have known that they did not have any real authority to demand payment or threaten to take such action, all the while knowingly misrepresenting to the Plaintiff their intentions to take such actions, knowing such actions were false and misrepresentative, in violation of **15 USC 1692e(5)** and **15 USC 1692f(6)(A).**

### G. Counts 27-30 (as to NDSC using T&B, as agent)

115. On March 24, 2015, Defendant NDSC using T & B sent correspondence to the Plaintiff, this time unsigned, despite naming a representative party, therein noticing the Plaintiff that NDSC using T & B, intended to conduct a Trustee's Sale of her property on April 16, 2015 at 10:30 a.m., claiming the Plaintiff owed it $1,600,635.93, which is grossly disproportionate to previous amounts claimed by

31

VERIFIED COMPLAINT

any of the other alleged ultra vires parties that the Plaintiff alleges have committed numerous violations of said debt collection acts.  Said correspondence is attached hereto as Exhibit 85 and incorporated herein by reference. Said correspondence also contained contradictory language as to the alleged sale.

116. Further, Defendant SPS is believed to be working in concert with the other named Defendants to wrongfully deprive the Plaintiff of her property through said deceptive trade practices and practices constituting violations of the FDCPA.

117. In sending this Notice, NDSC using Defendant T & B, on behalf of Defendant NDSC, affirmed under the heading entitled "NOTICE TO POTENTIAL BIDDERS", the following:

> If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction.  You will be bidding on a lien, not on the property itself.

118. The above is not consistent with previous communications to the Plaintiff and what was in fact communicated.  Each letter sent to the Plaintiff, as noted in the foregoing Complaint, indicated that the Defendant parties herein intended on foreclosing on the Borrower's home and maintained, albeit in misrepresentative fashion, that the Plaintiff should pay them a sum certain or lose her home to foreclosure, when in fact this T & B (as in this Exhibit) states otherwise.  This is another violation of **15 USC 1692e(5)** and **15 USC 1692f(6)(A)**.

119. Plaintiff again claims and alleges that the Defendant has misrepresented the character and status of the debt under **15 USC 1692e(2)(A)** in that any sale of the lien interest in the property may still enrich parties not entitled to the proceeds of such sale and instead may defraud other parties who are legally entitled to said proceeds of such a sale, thereby imposing a double liability upon the Plaintiff.

VERIFIED COMPLAINT

**H.  Counts 30-36 (as to NDSC using T&B, as agent)**

120.  Attached hereto is a letter from Plaintiff to Defendant, NDSC outlining additional FDCPA violations regarding activity relating to posting the property for sale(s) and not responding to the letter date April 3, 2013, which more specifically outlines the violations.  Attached hereto is a letter dated April 3, 2013 as Exhibit 87.

## THIRD CAUSE OF ACTION
### Cancellation of Instruments Under Civil Code Section 3412
### Against all Defendants

121. Plaintiff refers to and incorporates by reference herein each and every allegation contained above.

122. Pursuant to Civil Code § 3412, "[a] written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."

123. Plaintiff alleges the Subject Note dated May 24, 2007 was obtained through misrepresentation and concealment of the real party to the transaction and therefore, pursuant to Civil Code § 3391 is unenforceable.

124. Plaintiff alleges the Subject Note dated May 24, 2007 and assignment of the Deed of Trust dated December 27, 2011 is void and seeks its cancellation against all parties for reasons set forth and because this was a table-funded loan in violation of California and Federal law.  They are void because the parties were not registered to do business, were defunct or shell corporations, and were fraudulent deceptive and ultra virus for reason set forth above.

125. Plaintiff alleges the note, DOT, and assignment was obtained through misrepresentation and concealment and pursuant to Civil Code § 3391 is unenforceable, and not just and reasonable pursuant to Civil Code § subd. 2 &3.

VERIFIED COMPLAINT

126. Plaintiff alleges the Subject Note, and Deed of Trust, and its assignment is void as a matter of law and are not subject to a statute of limitations.

127. Plaintiff has been prejudiced by the concealment of the true nature of the loan, and from the concealment of the real creditor to whom Plaintiff could, and did qualify for a modification that would have preserved Plaintiff's homeownership.  If this instrument is enforced it will injure Plaintiffs because she will lose her home to someone who has no privity with the property or who is not a legitimate holder or assignee of the note or DOT.

128. Plaintiff alleges the Substitution of Trustee of NDSC is void on the grounds that, Note, DOT and the assignment is void and unenforceable and because no valid beneficiary with proper authority had been timely appointed pursuant to  the Note, the DOT or the assignment of the deed of trust.

129. Plaintiff is entitled to an Order Cancelling the Note, Deed of Trust, Assignment of the Deed of Trust, Notice of Default, Substitution of Trustee, and Notices of Trustee Sale because if any one is invalid then subsequent ones are invalid too.

130. No tender is required for a void sale.

131. As a proximate result of the reckless, fraudulent behavior of Defendants, Plaintiff has suffered consequential damages and will continue to suffer additional damages in an amount to be proven at trial.

## FOUTH CAUSE OF ACTION

### (Fraud and Deceit)

### All Defendants

132. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

VERIFIED COMPLAINT

133. To prove a civil action for fraud, the plaintiff must show: (1) Misrepresentation (false representation, concealment, or nondisclosure); (2) Knowledge of falsity (scienter); (3) Intent to defraud (i.e., to induce reliance); (4) Justifiable reliance; and (5) Resulting damage. Under the California Civil Code, "fraud" and "deceit" are technically two distinct concepts.

134. Plaintiff alleges Defendants misrepresented to Plaintiff they were agents for the real party in interest.

135. Defendant, SPS knew it was not the agent for the real party in interest but put themselves out as such. Defendant, SPS knew Plaintiff would rely on it being the agent for the real party in interest. This meets the second and third elements of fraud and deceit, i.e., knowledge of the falsity and intent to defraud Plaintiff and induce reliance by Plaintiff.

136. Plaintiffs entered into loan modification agreements with Defendant SPS who was representing a party who was not the real party in interest, and knew it. As a result Plaintiff spent time and effort and expended emotional energy related to attempting to modify the loan all for not. This satisfies reliance and it was justified and reasonable because of the impression created by SPS and procedures used by SPS that could have resulted in the loss of her home to the wrong party if she did not fight them. It also satisfies the damages suffered as a result. She was also damaged in her ability to have the quiet enjoyment of her premises not be disturbed and her credit not improperly adversely effected.

137. Because of Defendant's misrepresentations as above described, Plaintiff was harmed as a direct result of the actions above described.

138. Plaintiff seeks the rescission of any loan modification agreements made as they were made under false pretenses as above described. Further, Plaintiff seeks

VERIFIED COMPLAINT

reimbursement for the time and expense she incurred for having to participate in the process.

139. Plaintiff seeks punitive damages on the basis that Defendants acts were particularly wanton in that Defendants knew their acts were wrongful and committed said actions with a total disregard for the harmful consequences to Plaintiff and the Deceit in dealing with her.

## FIFTH CAUSE OF ACTION

### (Wrongful Foreclosure)

### All Defendants

140. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

141. In California, the tort of wrongful foreclosure requires: 1) a legally owed duty to the Plaintiff by foreclosing party 2) a breach of that duty, 3) a causal connection between the breach of that duty and the injury the Plaintiff sustained, and 4) damages.

142. Plaintiff further alleges that none of the Defendants acted under the claim of being an "agent" or representative of the true beneficiary of the loan.

143. Plaintiff alleges Defendants had a duty to do due diligence and determine that they were serving the correct legitimate lender, or a valid holder or assignee of the note.   SPS, as the servicer, had the additional legal obligation to report the true ownership of the debt and the obligation to determine whether the matter was time barred before proceeding to take steps to foreclose. Also Defendants had a duty to process the foreclosure only after actual notice by the Lender, or by a legitimate proper designee in the form of a holder or assignee of the note.  This is specifically contracted between the parties in the DOT at § 22 and other places.  No such notice was given. Therefore the first element of wrongful foreclosure is met.

VERIFIED COMPLAINT

144. Plaintiff alleges SPS breached that duty by claiming ownership was in the wrong party, not the real party in interest in violation of Civil Code §2924 et seq. and as detailed above. This ties into Defendants not being part of a foreclosure process that does not provide actual notice by the lender (or a legitimate proper designee capable of foreclosure) as required by the DOT at §22 and other places and in the note.  In addition, both parties breached their duty under the law and to citizens in foreclosure (the Plaintiff in this case) by failing to obey the law.  In this case the law does not allow commencing a time barred proceeding against the law relating to the statute of limitations above mentioned.  Therefore, numerous breaches occurred. These numerous areas of breaches meet the second element of wrongful foreclosure.

145. Plaintiff alleges Defendants were not entitled to Plaintiff's payments  as the agent for the beneficiary were entitled to the payments of the debt.  The above causes Plaintiff harm because she has been unable to possess the quiet enjoyment of her property, and her credit has been slandered.    Further as a result of the above mentioned wrongful conduct, Plaintiff has been put in a high state of stress for some time.

146. As a direct result of Defendant's conduct and actions above described, Plaintiff was harmed.  Said harm also includes having to incur high legal fees, expend an enormous amount of time involved in this case, and having to suffer extreme emotional distress.   These numerous areas of damage and harm meet the third and fourth elements of wrongful foreclosure along with the above paragraph because it demonstrates the causal  connection between the breach of the duty owed to the Plaintiff, the injury to the Plaintiff, and the fact that Plaintiff sustained subsequent damages and potential damages *ab initio* in paying the wrong party or making payments to a party that has already been made whole.

VERIFIED COMPLAINT

147. Defendants engaged in a fraudulent and wrongful foreclosure of the subject property in that Defendants did not have the legal authority to foreclose on the Subject Property, and even if they did, they went passed the time period to do it.

148. As a result of the above breaches and wrongful conduct of Defendants, Plaintiff has suffered emotional distress and seeks general and special damages in an amount according to proof of trial, but not less than $1,000,000.

## SIXTH CAUSE OF ACTION

### (Declaratory Relief)

### As Against All Defendants

149. Plaintiff re-alleges paragraphs 1-123 as though fully set forth herein.

150. An actual controversy has arisen and now exists between the Plaintiff and Defendants concerning their respective rights and duties in relation to the property, in that the Plaintiff contends that she is the affected consumer as defined under the FDCPA.

151. Defendants appear to claim a right to represent an unknown interest against the Plaintiff and her property, for which the Plaintiff prays for this Court to judicially determine the rights and interests of the Defendant parties making such claims; and to issue a judicial declaration, as deemed necessary and proper, at an appropriate time in order to determine or negate, by and through declaratory relief, what interest the Defendants, if any, may have, in the collection of said alleged debt. Specifically the Plaintiff request the following declaration:

        i.     That the DOT be declared void because of numerous irregularities involved in the process of foreclosure including commenced by the wrong parties under a defective assignment.

VERIFIED COMPLAINT

    ii.    That the Assignment of deed of trust dated 12/27/2011 be declared void for numerous irregularities including deceit, forged signatures, late transfer into the securitized trust against its terms (four years late) and any and all of the above reasons mentioned.

    iii.    That Defendants do not have the standing or right to institute or continue foreclosure proceedings.

    iv.    That Defendants action to exercise its power of sale and foreclose the property is time barred by reason of CCP §320 & §335 & 355 and related statutes governing this situation.

152. Wherefore, the Plaintiff requests judgment and relief as stipulated herein.

## SEVENTH CAUSE OF ACTION

### (Interference with contract and prospective business relations)

### As Against All Defendants

153. Plaintiff re-alleges paragraphs 1-123 as though fully set forth herein.

154. Plaintiff bought this house and owns it.  As a resident of it, she has contracts with others arising out of her usage of the premises. She also has relations with others including vendors she uses in community to maintain her house like the electric and water company, lawn and cleaning services.   In addition as noted above, when she bought this house, she obtained financing with a party not properly disclosed to her and unknown.   She cannot be in a contractual relationship with ABC because, for reasons discussed, above and including any of the other allegations in this complaint, it was not in business, that if in business, it was not registered to do business in California or elsewhere, and /or it was a front for another entity and/or it became an asset of a bankruptcy proceeding.

155. Defendants knew or should have known that its principal is not the proper assignee of the true lender and that it would be acting as an interloper and has been

VERIFIED COMPLAINT

acting as an unauthorized interloper.  By being the agent and acting for a party that is not the proper holder or assignee, harm and damage was and is done upon Plaintiff.

156. That Defendants know they are not, and they cannot claim to take through a legitimate holder and assignee of the note or DOT and as a result, they know or are reckless in not knowing that they cannot act as the foreclosing agent under the law and conduct foreclosure proceedings against Plaintiff.

157. That Defendants by doing what they are doing (engaging in foreclosure activity against Plaintiff as above alleged) intend to and are disrupting and interfering with the relationships and contracts of the true lender and the legitimate assignee, or holder of the note, as well as the vendors Plaintiff deals with as  the homeowner as above described.

158. That Defendants' conduct as above described is preventing Plaintiff from communicating and performing with the true assignee and holder of the note or DOT.  It makes homeownership more expensive and puts her in a precarious position where she may be liable to two creditors.  It interferes with her ability to pay off the loan to the correct party.   The harm includes personal economic harm includes all of the above and in addition has jeopardized her businesses relationships, slandered her credit and subjected her to falsities and misrepresentations thus depriving her of income and the quiet enjoyment of her property.

159. That Plaintiff has been harmed by the above conduct.

160. That Defendants' conduct was a substantial factor in causing Plaintiff's harm.

161. Plaintiff seeks all damages and all relief by reason of the above.

## EIGHTH CAUSE OF ACTION

### (Rescission as a Voidable contract)

### As Against All Defendants

VERIFIED COMPLAINT

162. Plaintiff re-alleges paragraphs 1-123 as though fully set forth herein.

163. Parties that are not registered to do business the state of California do not have the right to conduct business and contracts are void or voidable.  See Cal Rev. & Tax Code section 23301 et seq.  Plaintiffs seek the rescission of any contract that is void or voidable because of this law.

164. Neither ABC or MERS were registered to do business in 2007 when the original contract and financing documents were executed. Therefore, this contract is void and should be declared as such and the contract rescinded.

165. Wherefore, the Plaintiff seeks the above relief and attorney fees and costs as allowed by law.

## <u>NINETH CAUSE OF ACTION</u>

### (Violation of Deceptive Trade Practices Act)

### Against SPS

166. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

167. Utah has a statute known as § 13-11a-3 et seq which is known as the Deceptive trade practices act which prohibits the following:

    a.  Passes off goods or services as those of another;
    b.  Causes likelihood of confusion of misunderstanding as to the source, sponsorship, approval, or certification of goods or services'
    c.  Causes likelihood of confusion or misunderstanding as to affiliation, connection, association with, or certification of another;
    d.  Uses deceptive representations or designations of geographic origin in connection with goods or services;
    e.  Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or

VERIFIED COMPLAINT

that a person has a sponsorship, approval; status, affiliation, or connection that the person does not have.

168. Plaintiff alleges Defendants violated the above law by violating one or more of the above provisions and is liable thereby.

169. Defendant, SPS knew or was reckless in not knowing it was violating the provisions of this law by the activities and conduct above described in this complaint.

170. As a result of the above violation, Plaintiff spent time and effort and expended emotional energy related to attempting to deal with this matter. She continued to deal with it because SPS masqueraded as the true servicer under the authority of the real party in interest when it was not. SPS procedures that could have resulted in the loss of Plaintiff's home to the wrong party if she did not fight them. She fought back and as a result had to expend money and suffer emotional stress dealing with it. This also harmed her in her ability to have the quiet enjoyment of her premises and not be disturbed.

171. Because of Defendant's misrepresentations as above described, Plaintiff was harmed as a direct result of the actions above described.

172. Plaintiff seek all damages allowed by law including reimbursement for the time and expense she incurred for having to participate in the process and she seeks injunctive relief to prevent the wrongful sale of her house and further action in this regard.

173. Plaintiff seeks punitive damages on the basis that Defendants acts were particularly wanton in that Defendants knew their acts were wrongful and committed said actions with a total disregard for the harmful consequences to Plaintiff and the Deceit to in dealing with her.

## TENTH CAUSE OF ACTION

42

VERIFIED COMPLAINT

**(Injunctive or Equitable Relief)**

**Against All Defendants**

174. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

175. Defendants and each of them have engaged in a course of conduct that has resulted in repeated violations of the Plaintiff's rights under the Fair Debt Collection Practices Act, and the numerous other causes of action set forth above, not the least of which is the improper commencing of foreclosure proceedings beyond what the State of California allows. It has been since October 2008 since the last payment was made, and that is four years beyond that allowed to enforce the underlying debt as provide in violation of CCP 337. Once the underlying debt is unenforceable because of the statute of limitations, so is the ability to enforce the security which is dependent upon it. Regardless, foreclosing on security after five years is not permissible under CCP 320.

176. Plaintiff is informed and believes, and on the basis of such information and belief alleges, that unless Defendants are restrained by this Court, Plaintiff may lose her home and suffer irreparable harm including losing her home, her good credit, relations with parties, and her emotional health. It would also allow the wrong party to obtain the proceeds thereof for themselves without satisfying the true and genuine party in interest.

177. The Plaintiff has a clear equitable and legal right in the property, as demonstrated by the facts set forth herein and fears an immediate invasion of her continued equitable and legal rights and quiet enjoyment of the property and therefore the balancing of equities favors Plaintiff as far as injunctive and/or equitable relief.

VERIFIED COMPLAINT

178. If injunctive relief, whether permanent or temporary does not issue, Plaintiffs will suffer actual and substantial injury of the loss of her property to a party or parties not entitled under any legal theory against the rights of Plaintiff to the property.

179. The balancing of interests is in Plaintiffs' favor, as she stands to wrongfully lose equity in her property, whereas the Plaintiff asserts that Defendants have no equitable or any type of interest in her property.

180. Without injunctive relief, the Defendants risk creating double liability upon the Plaintiff by and through their actions now and in the future.   Defendants stand to unjustly and wrongfully be enriched while the real party in interest has been paid. This scenario if not enjoined now, will allow a double recovery on the part a party without privity with Plaintiff or the property.

181. Therefore, the Defendants should be immediately restrained and enjoined from selling the Plaintiff's property at any auction or sale now or in the future and the Plaintiff prays for this Court to issue an immediate Order protecting the equitable and legal interests of Ms. Saterbak to her property.

## ELEVENTH CAUSE OF ACTION

### (California Homeowner's Bill of Rights)

### As to All Defendants

182. In response to rising foreclosure numbers and mortgage servicers' misconduct, 49 State Attorney Generals filed suits against the country's five major mortgage servicers. Consequently, these mortgage servicers agreed to enter into consent judgments now known as the National Mortgage Settlement ("NMS"). The NMS imposed new servicing standards on these servicers. Thereafter, the California Legislature passed the Homeowner's Bill of Rights ("HBOR") applying these

VERIFIED COMPLAINT

requirements to all servicers, not just the five NMS signatories. The HBOR gives borrowers standing and a private right of action to enforce these protections in court.

183. The HBOR is codified in Cal. Civil Code §§ 2920.5, 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924, 2924.9, 2924.10, 2924.11, 2924.12, 2924.17, 2924.18 and 2924.19.

184. The HBOR's purpose is to ensure, as part of the non-judicial foreclosure process, borrowers are considered for any available loss mitigations options offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure, and have a meaningful opportunity to obtain any available relief. Cal. Civ. Code § 2923.4(a).

185. The HBOR protects homeowners' fallen victim to foreclosures that are being wrongfully advanced. "If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17." Cal. Civ. Code § 2924.12(a)(1). "The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law." Cal. Civ. Code § 2924.12(h).

186. The application package was sent via USPS Priority Mail Express 1-Day (tracking no. EI320564993US). The application package included:

    a. Completed and signed Request for Mortgage Assistance (RMA) form (including Hardship Affidavit);

    b. Two most recent pay stubs for Plaintiff and her husband;

    c. Most recent tax returns for Plaintiff and her husband;

    d. Completed and signed IRS 4506T-EZ Request for Transcript of Tax Return form.

VERIFIED COMPLAINT

187. In a letter dated October 8, 2014, SPS acknowledged receipt of Plaintiff's application and identified additional documentation required to complete the application:

a. Hardship Affidavit;

b. Proof of Occupancy, which the letter explained must be two of the following: current year's signed tax return; most recent bank statement; most recent pay check stub; gas, electric or utility bill.

188. The letter gave Plaintiff a deadline of November 15, 2014 to submit the required documentation.

189. Even though Plaintiff's October 1, 2014 application package did include the Hardship Affidavit and two forms of proof of occupancy (current tax returns, most recent pay stubs), Plaintiff mailed another Hardship Affidavit, most recent pay stub, most recent water bill, and most recent cable/phone bill to SPS on November 11, 2014 via USPS Priority Mail Express 1-Day (tracking No. EK421650798US).

190. Consequently, Plaintiff had a complete loan modification application in process with SPS as of November 12, 2014. However, SPS has kept Plaintiff's application in perpetual review with an endless cycle of requests for duplicative or unnecessary information. Plaintiff has timely complied with all of SPS's additional document requests.

191. Defendants recorded the Notice of Trustee's Sale (the "Notice of Sale") on March 26, 2015 with the San Diego County Recorder's Office as document no. 2015-0140908 while Plaintiff's complete application was pending. Exhibit 33

192. To date, Plaintiff has not received a written determination of her application; however, Defendants are wrongfully proceeding with foreclosure and a trustee's sale is presently scheduled for May 19, 2015. See Exhibit 86.   As a result, the instant action became necessary.

VERIFIED COMPLAINT

193. Defendants wrongfully delay Plaintiff's request for an alternative to foreclosure due to their own ineffective and unreasonably slow processing systems and their failure to properly train representatives to comply with servicing standards and outreach requirements imposed by HBOR.

194. As a result of the unnecessary delays and the mishandling of their documents, Plaintiff is deprived of the opportunity to consider this as an option short of litigation.

195. Pursuant to Cal. Civil Code § 2923.6(c), under HBOR, if a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the application is pending.

196. As of November 12, 2014, SPS was in possession of Plaintiff's complete application for a loan modification. Plaintiffs timely supplied SPS with all of the documents required by SPS within the timeframes specified by SPS.

197. Defendants recorded the Notice of Sale on March 26, 2015 while Plaintiff's complete application was pending, in violation of Civil Code § 2923.6(c).

198. To date, SPS has not made a written determination of Plaintiff's modification application and, instead, Defendants attempt to conduct a trustee's sale on May 19, 2015 in further violation of Civil Code § 2923.6(c).  See Exhibit 85.

199. Defendants cannot move forward with foreclosure unless and until SPS makes a written determination regarding Plaintiff's eligibility for a modification either Plaintiff is denied and any appeal period has expired or Plaintiff is approved but breaches the terms of the offer.

VERIFIED COMPLAINT

200. Pursuant to Civil Code §§ 2924.12 and 2924(g), Plaintiff seeks an order enjoining Defendants from proceeding with foreclosure unless and until Defendants have corrected and remedied their violations of Civil Code § 2923.6.

201. SPS has a pattern and practice of ignoring borrower complaints and requests for information as set forth here and in actions filed by borrowers that allege conduct by SPS similar to that experienced by Plaintiff.

## TWELFTH CAUSE OF ACTION

**(Regulation X RESPA and Regulation Z of Tila Violation)**

**Against SPS**

202. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

203. This case arises from SPS's willful failure and/or complete disregard of the rights of Plaintiff arising from SPS's statutory obligations and duties under Regulation X of RESPA and Regulation Z of TILA. Plaintiff alleges that she is entitled to statutory damages and actual damages suffered as a result of SPS's willful and intentional failure to comply with these Regulations, including, but not limited to, the time and expense spent attempting to obtain SPS's compliance, and the emption and psychological harm suffered as a result of SPS's persistent non-compliance.

204. The Loan at issue (although alleged unenforceable) in this case, would be a "federally related mortgage" as that term is defined by Regulation X of RESPA, 12 C.F.R. § 1024.5(a); SPS is subject to Regulation X of RESPA, 12 C.F.R. § 1024.5(a) and SPS is not subject to any of the small servicer exceptions as provided for by 12 C.F.R. § 1026.41(e)(4)(ii).

205. Plaintiff alleges that the SPS must comply with written Requests for Information ("RFI") related to the servicing of a federally related mortgage loan

VERIFIED COMPLAINT

under 12 C.F.R. § 1024.36 of Regulation X of the Mortgage Servicing Act under RESPA. RESPA, in its detailed Regulation X, mandates that a mortgage servicer must respond to written requests from a borrower that relate to the servicing of a mortgage (12 U.S.C. § 2605(e); 12 C.F.R. § 1024.36(c)) by acknowledging receipt of such correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) and by thereafter providing the requested information within 30 days (excluding legal public holidays, Saturdays, and Sundays), except a request for the Owner of the Note which requires a response within 10 days (excluding legal public holidays, Saturdays, and Sundays). When a non-response to the RFI or production date occurs, borrowers can notify a servicer of its non- compliance with the regulatory requirements through a Notice of Error ("NOE"). Non-compliance including non-acknowledgment of receipt, non-responses, or if responses are inadequate, incomplete, or contain errors in the information provided.

206. On or about October 29, 2015, Plaintiff, by and through her attorney, mailed nine (9) separate RFIs in nine (9) separate letters to SPS. Each RFI letter related to separate and distinct information rights under Regulations X and Z and in many instances different responsive time lines applied to each separate RFI letter. Plaintiff employed nine separate letters containing RFIs in order to assist both parties in tracking, recording and replying to each separate request and within the proper regulatory time-lines. The nine separate letters containing RFIs are alleged with particularity herein below and attached hereto as Exhibits 67, 68, 69, 70, 71, 72, 73, 82, 83 and 84 discussed below.

207. The ten separate letters containing RFIs were addressed and delivered to the address provided by SPS for correspondence concerning Requests for Information and Notices of Error (12 C.F.R. §§1024.35(c), 1024.36(b)). Plaintiff's nine RFI letters contained Plaintiff's name, loan number, and property address and

VERIFIED COMPLAINT

included a letter of authorization, signed by the Plaintiff, allowing SPS to directly communicate with Plaintiff's attorneys.

208. Plaintiff's first Request for Information letter ("RFI #1") under 12 C.F.R. § 1024.36, whose subject matter was "copy of documents" and titled "REQUEST FOR INFORMATION UNDER 12 C.F.R. §1024.36," was mailed via Certified U.S. Mail [Tracking Number: 7014 0150 0002 3103 0520]. A true and correct copy of the RFI #1 letter is attached hereto as Plaintiff's Exhibit "84" which is made a part hereof as though set forth in full.

209. Plaintiff's second Request for Information letter ("RFI #2") under 12 C.F.R. § 1024.36, whose subject matter was "life of loan or transaction history" and titled "REQUEST FOR INFORMATION UNDER 12 C.F.R. § 1024.36", was mailed via Certified U.S. Mail [Tracking Number: 7014 05100001 3813 1229]. A true and correct copy of the RFI #2 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 67 as though set forth in full.

210. Plaintiff's third Request for Information letter ("RFI #3") under 12 C.F.R. § 1024.36, whose subject matter was "loss mitigation options" and titled "REQUEST FOR INFORMATION PURSUANT TO 12 C.F.R. § 1024.36" was mailed via Certified U.S. Mail [Tracking Number: 7014 0510 0001 38131151]. A true and correct copy of the RFI #3 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 82 as though set forth in full.

211. Plaintiff's fourth Request for Information letter ("RFI #4") under 12 C.F.R. § 1026.36, whose subject was set forth and titled "REQUEST FOR PAYOFF STATEMENT UNDER 12 C.F.R. § 1026.36", was mailed via Certified U.S. Mail [Tracking Number: 7014 0510 0001 3813 1212]. A true and correct copy of the RFI #4 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 68 as though set forth in full.

VERIFIED COMPLAINT

212. Plaintiff's fifth Request for Information letter ("RFI #5") under 12. C.F.R. § 1026.36, whose subject matter was "proof of prompt crediting" and titled "REQUEST FOR INFORMATION UNDER 12 C.F.R. § 1026.36", was mailed via Certified U.S. Mail [Tracking Number: 7014 0510 0001 38131168]. A true and correct copy of the RFI #5 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 83 as though set forth in full.

213. Plaintiff's sixth Request for Information letter ("RFI #6") under 12 C.F.R. § 1026.36, whose subject matter was "reinstatement statement" and titled "REQUEST FOR REINSTATEMENT STATEMENT UNDER 12 C.F.R. 1026.36", was mailed via Certified U.S. Mail [Tracking Number: 7014 0510 0001 3813 1175]. A true and correct copy of the RFI #6 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 69, as though set forth in full.

214. Plaintiff's seventh Request for Information letter ("RFI #7") under 12 C.F.R. § 1024.41 whose subject matter was set forth and titled "REQUEST FOR PERIODIC BILLING STATEMENTS PURSUANT TO 12 C.F.R. § 1026.41", was mailed via Certified U.S. Mail [Tracking Number: 7014 0510 0001 3813 1182]. A true and correct copy of the RFI #7 letter is attached hereto and a part hereof as Plaintiff's Exhibit 70, as though set forth in full.

215. Plaintiff's eighth Request for Information letter ("RFI #8") under 12 C.F.R. § 1026.36, whose subject matter was "itemized payoff statement" and titled "REQUEST FOR INFORMATION PURSUANT TO 12 C.F.R. § 1024.36", was mailed via Certified U.S. Mail [Tracking Number: 7014 0510 0001 3813 1205]. A true and correct copy of the RFI #8 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 71, as though set forth in full.

216. Plaintiff's ninth Request for Information letter ("RFI #9") under 12 C.F.R. § 1024.36, whose subject matter was "status of borrower's loss mitigation

VERIFIED COMPLAINT

application" and titled "REQUEST FOR INFORMATION PURSUANT TO 12 C.F.R. § 1024.36", was mailed via Certified U.S. Mail [Tracking Number: 7014 0510 0001 3813 1236]. A true and correct copy of the RFI #9 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 72, as though set forth in full.

217. SPS received the RFI #1 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #1 letter can be found at www.usps.com.

218. SPS received the RFI #2 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #2 letter can be found at www.usps.com.

219. SPS received the RFI #3 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #3 letter can be found at www.usps.com.

220. SPS received the RFI #4 letter on November 3, 2014, at approximately 12:11 p.m. A true and 1   correct copy of the printout of the "Product & Tracking Information" for the RFI #4 letter can be found at www.usps.com.

221. SPS received the RFI #5 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #5 letter can be found at www.usps.com.

222. SPS received the RFI #6 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #6 letter can be found at www.usps.com.

223. SPS received the RFI #7 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #7 letter can be found at www.usps.com.

VERIFIED COMPLAINT

224. SPS received the RFI #8 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #8 letter can be found at www.usps.com.

225. SPS received the RFI #9 letter on November 3, 2014, at approximately 12:11 p.m. A true and correct copy of the printout of the "Product & Tracking Information" for the RFI #9 letter can be found at www.usps.com.

226. Plaintiff alleges upon information and belief that SPS failed to provide accurate and complete responses to the RFIs described above, and each of them, within 30 days (excluding legal public holidays, Saturdays, and Sundays) after receipt.

227. On or about January 27, 2015, Plaintiff, by and through their attorney, mailed nine (9) separate letters containing nine (9) separate NOEs to SPS addressing SPS' s failure to accurately and completely respond to the RFIs described above and directing SPS to correct the asserted errors. The nine letters containing NOEs are attached hereto as Exhibits 73 through 81 respectively. The nine separate letters containing the nine separate NOEs were addressed and delivered to the address designated by SPS on its website for correspondence concerning Requests for Information and Notices of Error.

228. Plaintiff's first letter containing, Notice of Error ("NOE #1") under 12 C.F.R. § 1024.35, whose subject matter was "copy of documents" and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.35 "NOTICE"/COPY OF DOCUMENTS," was mailed via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7824 4554]. A true and correct copy of the NOE #1 letter is attached hereto as Plaintiff's Exhibit 73 which is made a part hereof as though set forth in full.

VERIFIED COMPLAINT

229. Plaintiff's second letter containing, Notice of Error ("NOE #2") under 12 C.F.R. § 1024.35, whose subject matter was "life of loan or transaction history information" and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.35 "NOTICE"/TRANSACTION HISTORY," was mailed via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7824 4561]. A true and correct copy of the NOE #2 letter is attached hereto as Plaintiff's Exhibit 74 which is made a part hereof as though set forth in full.

230. Plaintiff's third letter containing, Notice of Error ("NOE #3") under 12 C.F.R. § 1024.35, whose subject matter was "loss mitigation" and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.35 "NOTICE"/LOSS MITIGATION," was mailed via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7819 9441]. A true and correct copy of the NOE #3 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 75 as though set forth in full.

231. Plaintiff's fourth letter containing, Notice of Error ("NOE #4") under 12 C.F.R. § 1024.35, whose subject matter was "payoff balance" and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.3"NOTICE"/PAYOFF BALANCE," was mailed via Certified U.S. Mail [Tracking 1  Number: 7014 2120 0004 7819 9748]. A true and correct copy of the NOE #4 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 76 as though set forth in full.

232. Plaintiff's fifth letter containing, Notice of Error ("NOE #5") under 12 C.F.R. § 1024.35, whose subject matter was set forth and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.35 "NOTICE"/PROOF OF PROMPT CREDITING," was mailed via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7819 9755]. A true and correct copy of the NOE #5 letter is

VERIFIED COMPLAINT

attached hereto and a part hereof as Plaintiff's Exhibit 77 as though set forth in full.

233. Plaintiff's sixth letter containing, Notice of Error ("NOE #6") under 12 C.F.R. § 1024.35, whose subject matter was set forth and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.35 "NOTICE"/REINSTATEMENT," was mailed via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7819 9762]. A true and correct copy of the NOE #6 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 78 as though set forth in full.

234. Plaintiff's seventh letter containing, Notice of Error ("NOE #7") under 12 C.F.R. § 1024.35, whose subject was set forth and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.35 "NOTICE"/PERIODIC BILLING STATEMENT," was mailed via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7819 9779]. A true and correct copy of the NOE #7 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 79 as though set forth in full.

235. Plaintiff's eighth letter containing, Notice of Error ("NOE #8") under 12 C.F.R. § 1024.35, whose subject matter was set forth as and titled "RE: NOTICE OF ERROR (NOE) UNDER CFR SECTION 1024.35 "NOTICE"/ITEMIZED PAYOFF BALANCE," was mailed via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7819 9786]. A true and correct copy of the NOE #8 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 80 as though set forth in full.

236. Plaintiff's ninth letter containing, Notice of Error ("NOE #9") under 12 C.F.R. § 1024.35, whose subject matter was set forth as and titled "NOTICE OF ERROR RESOLUTION UNDER 12 C.F.R. §§ 1024.35 and 1024.41," was mailed

VERIFIED COMPLAINT

via Certified U.S. Mail [Tracking Number: 7014 2120 0004 7819 9793]. A true and correct copy of the NOE #9 letter is attached hereto and made a part hereof as Plaintiff's Exhibit 81" as though set forth in full. SPS received the NOE #1 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #1 letter can be found at www.usps.com.

237. SPS received the NOE #2 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #2 letter can be found at www.usps.com.

238. SPS received the NOE #3 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #3 letter can be found at www.usps.com.

239. SPS received the NOE #4 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #4 letter can be found at www.usps.com.

240. SPS received the NOE #5 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #5 letter can be found at www.usps.com.

241. SPS received the NOE #6 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #6 letter can be found at www.usps.com.

242. SPS received the NOE #7 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #7 letter can be found at www.usps.com.

VERIFIED COMPLAINT

243. SPS received the NOE #8 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #8 letter can be found at www.usps.com.

244. SPS received the NOE #9 letter on January 31, 2015, at approximately 9:50 a.m. A true and correct copy of the printout of the "Product & Tracking Information" for the NOE #9 letter can be found at www.usps.com.

245. To date, SPS has yet to accurately respond or correct the errors contained in the NOE letters, and each of them, described above. Defendant provided inaccurate payoff balances, at least four(4) inaccurate itemized payoff balances, and inaccurate periodic billing statements. These four separate and each inaccurate itemized payoff balances/statements were provided by SPS in letters dated November 4, 2014, November 6, 2014, November 18, 2014 and February 3, 2015, respectively.  Plaintiff was only provided with a pay off balance/statement, albeit incorrect, an itemized pay off balance/statement, and an owner of the note, albeit incorrect, and was not provided with any of the other information requested in the RFIs and as asserted in the NOEs or, in the alternative, was not provided with accurate responses to the RFI letters and SPS has made no attempt to correct the errors identified in Plaintiff's NOE letters. Therefore, Plaintiff cannot verify the specified information is correct and act upon them.  The responses do not satisfy 12 C.F.R. §§ 1024.35 to 1024.36.

246. Plaintiff with admitting valid enforceable loan by Defendants, upon information and belief and thereon alleges, that SPS has erred in the calculation of what should be due and owing for a pay-off amount of the alleged loan since the amounts SPS claims are due and owing were materially and significantly different from the payoff and past-due amounts provided by SPS in its first, second, third, and fourth payoff statements.

VERIFIED COMPLAINT

247. Instead of addressing the requested information and asserted errors pursuant to Regulation X and Regulation Z, SPS caused NDSC to record the Notice of Sale alleging $1,600,635.93 as the total amount due and owing on Plaintiff's loan account, which amount is inconsistent with the amounts alleged by SPS in their payoff statements.

248. The foregoing acts and material omissions of SPS alleged herein were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiff's notice and disclosure rights.

249. As a result of SPS's acts and omissions alleged hereinabove, Plaintiff has been harmed in that she has expended significant time and money in her actions seeking correction of such errors.  Plaintiff has suffered actual damages such as the costs of copying documents, postage fees, loss of work fees, interest and penalties on the Loan, emotional and psychological trauma and other issues of damages related to SPS's failure to accurately and completely respond to Plaintiff's RFI letters and NOE letters. The total amounts of damages will be according to proof at trial.  Plaintiff has also had to incur attorney fees.

250. Defendants, as employers of the authorized representatives who had contact with Plaintiff, had advanced knowledge of the unfitness of their employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

VERIFIED COMPLAINT

<u>**THIRTEENTH CAUSE OF ACTION**</u>

**Violation of 12 C.F.R. § 1024.36(d)(2)(B)**

**(Failure to provide information requested in Plaintiff's RFI letters within 30 days of receipt, excluding legal public holidays, Saturdays, and Sundays) As to SPS**

251. Plaintiff refers to and incorporates by reference herein each and every allegation contained herein.

252. Plaintiff's RFI letters, specifically RFI letters 1, 2, 3, and 9, requested information related to the servicing of the alleged mortgage loan and such requests were subject to the 30 business day response timeline as made applicable to SPS pursuant to 12 C.F.R. § 1024(d)(2)(B).

253. Plaintiff re-alleges that SPS received the RFI letters # 1, 2, 3, and 9, on November 3, 2014, at approximately 12:11 p.m. Accordingly, SPS should have responded to Plaintiff's RFI letters # 1, 2, 3 and 9, by December 18, 2014. However, SPS has failed to provide responses to Plaintiff's above-referenced RFIs in violation of 12 C.F.R. § 1024.36(d)(2)(B).

254. Such failure to respond has caused Plaintiff to suffer actual damages of photocopying costs and postage costs incurred as a result of having to send additional correspondences because of SPS's failure to adequately respond to Plaintiff's RFIs.  Plaintiff requests additional damages, as the court may allow, in the case of Defendants' pattern or practice of noncompliance within the requirements of this section, in an amount of damages  allowed legally, including the actual damages noted above and the statutory damages – statutory damages not to exceed $2,000 and attorney fees and costs pursuant to 12 U.S.C. § 2605(f)(1).

VERIFIED COMPLAINT

## FOURTEENTH CAUSE OF ACTION

### Violation of 12 C.F.R. § 1024.36(d)(1)(i)-(ii)

### (Failure to provide Plaintiff with the requested information in writing with contact information for further assistance and failure to conduct a reasonable search for the requested information)

### As to APS

255. Plaintiff refers to and incorporates by reference herein each and every allegation contained herein.

256. Plaintiff's RFIs # 1 through 9, inclusive, requested information that had SPS conducted a reasonable search, SPS would have been able to locate and provide the information and documents requested in RFI letters # 1 through 9, inclusive. However, SPS failed to provide adequate and accurate information to Plaintiff's counsel's office with contact information and a telephone number for further assistance in writing, and failed to conduct a reasonable search for such information and provide a written notification, with the basis for SPS's determination that the information was not available to it, pursuant to 12 C.F.R. §1024.36(d)(1)(i) & (ii).

257. Plaintiff alleges that SPS's failure to provide the information to Plaintiff's counsel's office in accordance with 12 C.F.R. §1024.36(d)(1)(i) & (ii) caused Plaintiff to suffer actual damages including photocopying costs and postage costs incurred as a result of having to send additional correspondences.  Plaintiff requests any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance within the requirements of this section, in an amount of damages  allowed legally, including the actual damages noted above and the statutory damages – statutory damages not to exceed $2,000 and attorney fees and costs pursuant to 12 U.S.C. § 2605(f)(1).

VERIFIED COMPLAINT

**FIFTEENTH CAUSE OF ACTION**

**Violation of 12 C.F.R. § 1026.36(c)(3)**

**(Failure to provide an accurate payoff statement within 7 days, excluding legal public holidays, COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF Saturdays, and Sundays, "after receiving a written request from the consumer or any person acting on behalf of the consumer")**

**As to SPS**

258. Plaintiff refers to and incorporates by reference herein each and every allegation contained herein.

259. Without admitting the enforceability of any loan, Plaintiff's RFI letters # 4 and 8, requested an accurate payoff statement and an accurate itemized Payoff statement, respectively. Plaintiff's RFI letters # 4 and 8 were sent October 29, 2014. SPS received RFIs # 4 and 8 on November 3, 2014, at approximately 12:11 p.m. Pursuant to 12 C.F.R. 1026.36(c)(3), SPS was required to send the accurate pay off statement and the accurate itemized pay-off statement of the alleged loan within seven (7) days of receipt, excluding legal public holidays, Saturdays, and Sundays. Accordingly, SPS was required to send said accurate pay off statements by November 13, 2014.

260. Plaintiff alleges upon information and belief that SPS failed to send an accurate itemized payoff to allow Plaintiff to consider paying off the alleged loan.

261. SPS's failure to comply with 12 C.F.R. § 1026.36(c)(3) caused Plaintiff to suffer actual damages including photocopying costs and postage costs incurred as a result of having to send additional correspondences because of SPS's failure to adequately respond to Plaintiff's RFI letters and provide accurate information. Plaintiff requests an amount of damages allowed legally, including the actual damages noted above and the statutory damages – statutory damages not to exceed $2,000 and attorney fees and costs pursuant to 12 U.S.C. § 2605(f)(1).

VERIFIED COMPLAINT

## SIXTEENTH CAUSE OF ACTION

### Violation of 12 C.F.R. § 1026.3

### (Failure to provide an accurate reinstatement statement within 10 days, excluding legal public holidays, Saturdays, and Sundays, of receiving Plaintiff's request)

### As to SPS

262. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

263. Plaintiff's RFI letter # 6, mailed October 29, 2014, requested that SPS provide a Reinstatement Statement for consideration pursuant to 12 C.F.R. § 1026.36(c)(3)(iii). SPS was required to send an accurate statement of the total outstanding the alleged balance that would be required to satisfy the alleged obligation in full as of ten days of receipt of the request.  However, SPS failed to do so, and provided an inaccurate reinstatement statement on or about November 24, 2014, in a letter dated November 17, 2014.

264. In failing to provide said accurate statement by November 11, 2014, SPS caused Plaintiff to suffer actual damages including photocopying costs and postage costs incurred as a result of having to send additional correspondences because of SPS failure to adequately respond to Plaintiff's RFI # 6.  Plaintiff requests any additional damages  allowed legally, including the actual damages noted above and the statutory damages – statutory damages not to exceed $2,000 and attorney fees and costs pursuant to 12 U.S.C. § 2605(f)(1).

VERIFIED COMPLAINT

## SEVENTEENTH CAUSE OF ACTION

### Violation of 12 C.F.R. § 1024.35(e)(1)(A)

**(Failure to correct the error or errors identified by the borrower and failure to provide the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance)**

**As to SPS**

265. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

266. Plaintiff's letters including NOEs # 1-9, alleged errors related to the failure to provide specified information contained in Plaintiff's October 29, 2014, RFI letters, referenced above. On or about March 7, 2015, Plaintiff's counsel received a letter from SPS, dated February 26, 2015, wherein SPS concluded "some of the documents you requested will not be provided as they are not specific to the servicing of the mortgage or are proprietary to SPS."

267. Plaintiff is informed and believes, and upon such information and belief, alleges that Plaintiff's RFIs and subsequent NOE letters related specifically to the servicing of the mortgage and were not proprietary to SPS because all information was requested, and is specifically identified in either RESPA or TILA, and must be provided by SPS to Plaintiff.

268. SPS failed to identify which of these requested documents or information were proprietary to SPS, and failed to identify which of the requested documents or information did not specifically relate to the servicing of Plaintiff's Loan.

269. Plaintiff asserted valid, identifiable errors in SPS's responses (or lack of responses) to Plaintiff's RFIs, and that, pursuant to 12 C.F.R. § 1024.35, SPS must correct the asserted errors within thirty days, excluding legal public holidays,

VERIFIED COMPLAINT

Saturdays and Sundays. SPS failed to timely correct the errors asserted by Plaintiff, in violation 12 C.F.R. § 1024.35(e)(1)(A).

270. In failing to correct the errors asserted by Plaintiff, SPS caused Plaintiff to suffer actual damages including photocopying costs and postage costs incurred as a result of having to send additional correspondences because of SPS's failure to adequately respond to Plaintiff's NOEs, and any additional damages, allowed legally, including the actual damages noted above and the statutory damages – statutory damages not to exceed $2,000 and attorney fees and costs pursuant to 12 U.S.C. § 2605(f)(1).

## EIGHTEENTH CAUSE OF ACTION

### Negligence

### As to all Defendants

271. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.  This cause of action is alleged as an alternative theory of recovery if the Plaintiffs do not prevail on Statute of Limitations, standing authority and matters going to the enforceability of the loan or note.

272. Defendants breached their duty by: (1) failing to acquire authority from the real party in interest, (2) failing to give Plaintiff credit for payments, (3) commencing legal action outside the time barred allowed by law; (4) failing to review Plaintiff's application in a timely manner; (5) misplacing Plaintiff's application for loan modification; (6) mishandling Plaintiff's application by relying on incorrect information; (7) misrepresenting the status of Plaintiff's loan modification application; and (8) initiating and continuing foreclosure in violation of public policy and the HBOR's restrictions on dual-track foreclosures, (9) not responding to the letters referenced above and required by law.

VERIFIED COMPLAINT

273. As a direct and proximate result of Defendants' negligence, Plaintiff has been harmed in that the delayed processing of her application the slander to her credit that was done, and the inability to settle the case through a court option. This is assuming SPS had the power and authority to settlement or reinstate the loan which Plaintiff denies.  In addition SPS was negligent to suggest a loan modification as a viable option to settle, Defendant did not have authority to act for the proper real party in interest.  All of the above deprived Plaintiff of the opportunity of obtaining loss mitigation as Plaintiff now faces imminent foreclosure and must pursue court action at great expense to her. Plaintiff has been harmed in that she has suffered the derogatory ratings by the credit agencies that have made it difficult for her to establish creditworthiness. Plaintiff has been harmed in that she has been required to retain legal counsel and has paid money to protect her interest and defending title in the Subject Property that otherwise she would not have had to expend. Plaintiff has been harmed in that she has lost substantial equity in the Subject Property.

274. As a direct and proximate result of the negligence and careless practices by Defendants and their authorized representatives, Plaintiff suffered and continues to suffer, general and special damages in an amount to be determined at trial.

### NINETEENTH CAUSE OF ACTION

**(Violations of Business and Professions Code §17200)**

**As to All Defendants**

275. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

276. Plaintiff brings this action against Defendants pursuant to California Business and Professions Code § 17200, et seq., referred to as the Unfair Competition Law (the "UCL").

VERIFIED COMPLAINT

277. California Business and Professions Code § 17200 prohibits "any unlawful, unfair or fraudulent business act or practice." For the reasons described herein, Defendants have engaged in unfair or fraudulent business acts or practices in violation of Bus. and Prof. Code §17200, et. seq.

278. The Court has jurisdiction over this action pursuant to California Bus. and Prof. Code § 17200, et seq., specifically Bus. and Prof. Code § 17203, which provides that any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and Bus. and Prof. Code § 17204, which provides for actions for any relief pursuant to the UCL to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association, or by any person acting for the interests of itself, its members or the general public.

279. As alleged herein, Defendants engaged in unlawful business practices in all aspects of this case as alleged above.  The unlawful practices committed by Defendants include:

     a.    not having authority to act for the real party in interest and not proving proper documentation;

     b.    not giving Plaintiff credit for payments made;

     c.    "Dual tracking" which is engaging Plaintiff in loan modification while really foreclosure, in violation of Civil Code § 2923.6, and by recording the Notice

VERIFIED COMPLAINT

of Sale and attempting to conduct a trustee's sale all while Plaintiff's complete loan modification application remains pending;

    d.    Making false statements as described above;

    e.    Violating 12 C.F.R. § 1024.36 of Regulation X by failing to conduct a reasonable search for the information requested in Plaintiff's RFI letters # 1, 2, 3, 6 and 7 and providing Plaintiff with the requested information, or otherwise explaining that SPS was unable to provide the requested information and the basis for such determination, within thirty days of receipt of the RFI letters;

    f.    Violating 12 C.F.R. § 1026.36 of Regulation Z by failing to timely provide Plaintiff a consistent and accurate payoff statement on the alleged note;

    g.    Violating 12 C.F.R. § 1026.36 of Regulation Z by failing to timely provide Plaintiff an accurate reinstatement statement;

    h.    Violating 12 C.F.R. § 1024.35 of Regulation X by failing to timely correct the errors asserted by Plaintiff's NOE letters and provide Plaintiff with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;

    i.    Violating the FDCPA and other laws by sending Plaintiff four separate payoff statements within the month of November 2014 that each demanded different amounts, reflected inaccurate and inconsistent itemizations, and including unauthorized fees and charges (including unnecessary property inspection fees and inaccurate interest charges);

    j.    Negligently reviewing Plaintiff's application for a loan modification and assuming control over a matter when it had no authority to do so.

    k.    Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

    l.    Concealing the true character, quality and nature of their assessment of marked-up fees against Plaintiff's account; and

VERIFIED COMPLAINT

m.     Foreclosing on the Subject Property without the legal authority to do so.

n.     Pursuing time barred remedies.

280. Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under Bus. and Prof. Code §17200, et seq., in that said acts and practices offend public policy and are substantially injurious to Plaintiff and all consumers. Said acts and practices have no utility whatsoever, much less sufficient utility to outweigh the substantial harm to Plaintiff, other consumers, and potential homeowners.

281. These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior. Defendants' actions are against public policy as the HBOR and Regulation X under RESPA and Regulation Z under TILA were exacted to prevent unnecessary foreclosures by providing borrowers with accurate and complete information and a full and fair opportunity to review matters and consider options instead of dealing with foreclosure.

282. Defendants' acts and practices, as alleged, constitute "fraudulent" business acts under § 17200 in that said acts and practices are likely to deceive the public and effect consumers' legal rights and obligations. Defendants' acts, included, but not limited to, active deception, falsifying and/or failing to deliver material documents, and concealment of information to prevent consumers from exercising rights to which they are entitled.

283. Moreover, in the course and conduct of its loan servicing and collection, Defendants omitted a true itemization of each fee, and it failed to disclose the nature of the charges and fees assessed. Defendants concealed the category identified as "escrow/impound advance balance" and other charges.  The charges reflect improper marked-ups and/or unnecessary fees, never actually incurred by

VERIFIED COMPLAINT

Defendants or not allowed by law. These fees would need to be readjusted if the loan is determined enforceable.  The court should provide assistance in this regard.

284. Defendants conduct as alleged herein is an exercise in tricking trusting borrowers and to dissuading them from challenging Defendants' unlawful actions. Had the true nature of the Defendants conduct and authority been disclosed to Plaintiff's right off, she would have taken action earlier at considerable savings to her.

285. As a direct and proximate result of Defendants' unlawful, unfair and fraudulent conduct alleged herein, Plaintiff is in imminent risk of losing the Subject Property to the wrong parties.  The imminent threat and risk of foreclosure constitutes injury-in-fact because it is concrete and particularized as to the property in question and initiation of foreclosure proceedings puts Plaintiff's interest in the Subject Property sufficiently in jeopardy and constituting an injury under § 17200.

286. The illegal acts of Defendants alleged herein are a serious threat to Plaintiff because these acts have allowed, or will allow, Defendants to wrongfully foreclose on the Subject Property.

287. Defendants' unfair and deceptive business acts or practices caused a direct and proximate injury to Plaintiff and the general public. Plaintiff is entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of such business acts or practices.

288. Due to Defendants' unlawful, unfair, and fraudulent business practices, Plaintiff suffered a substantial, ascertainable loss. Therefore, pursuant to Business and Professions Code §§ 17203 and 17204, Defendants should be enjoined from continuing such practices.

69

VERIFIED COMPLAINT

## TWENTIETH CAUSE OF ACTION

### (Demand for Accounting)

### As to All Defendants

289. Plaintiff refers to and incorporates by reference herein each and every allegation contained above herein.

290. Defendants hold themselves out to be Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with Plaintiff, said Defendants have a duty to Plaintiff to properly account for payments made by Plaintiff.

291. The Deed of Trust allows Defendants to pay for default-related services when necessary or appropriate and to be reimbursed by the borrowers. However, it does not authorize Defendants to mark-up the actual cost of those services to make a profit.

292. Plaintiff alleges Defendants improperly marked-up prices charged by vendors and then, without disclosing the mark-up, assessed Plaintiff's account for the marked-up amounts with the intention of generating a profit on the non-performing loan.

293. Defendants fraudulently concealed these unauthorized fees on borrowers' alleged accounts, omitting any information about Defendants' additional profits, by not identifying them on mortgage statements as alleged above.

## TWENTY FIRST CAUSE OF ACTION

### (Violation of 11 U.S.C. § 1691(d)(1)

### As to SPS

294. Plaintiff refers to and incorporates by reference herein each and every allegation contained herein.

295. Defendant SPS's conduct, as alleged above, constitutes a violation of the Equal Credit Opportunity Act, found at 15 U.S.C. 1691, et seq. Pursuant to that

70

VERIFIED COMPLAINT

section, specifically to 15 U.S.C. 1691(d)(l), within thirty days of receipt of a credit application, which includes a loan modification application, a creditor must notify the applicant of the action taken on the application. That is, the creditor must either approve or deny the application within thirty days. This section does not specify whether the action taken be adverse or favorable, so the exception for borrowers in default in (d)(6) is not applicable to the thirty-day requirement  in (d)(1),, as it is in (d) (2), plus she alleges now and throughout this complaint that she is not in default as among other things there is not now an existence enforceable loan.

296. In November 2014 Plaintiff submitted a completed loan modification application, thereby applying for an extension of credit.  However, the application remained in Defendants' underwriting department through at least the time the suit was commenced.

297. Defendants' failure to notify Plaintiff of an answer within thirty days of the receipt of a loan modification application constitutes a violation of section 1691(d)( 1) of the Equal Credit Opportunity Act, regardless of Plaintiff's default status, which she denies.

298. Now, As a result of Defendants' violations of the Equal Credit Opportunity Act, Plaintiff is entitled to actual damages including, but not limited to, loss of money, imminent loss of her Property, incurred attorneys' fees and costs, destruction of credit, severe emotional distress, frustration, fear, anger, helplessness, nervousness, anxiety, sleeplessness, sadness, and depression, according to proof at trial but within the jurisdiction of this Court. Defendants consciously disregarded Plaintiff's rights, deliberately breaching their respective duties, showing willful misconduct, malice, fraud, wantonness, oppression, and entire want of care, thus authorizing the imposition of punitive damages.

VERIFIED COMPLAINT

# VI.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against the Defendants and each of them, jointly and severally as follows:

a.    For a declaration of the rights and duties of the parties as set forth above and specifically that the none of Defendants hold any pecuniary, legal or equitable interest in Plaintiff's loan, Note or Deed of Trust; a proper credit be given Plaintiff, and that any and all foreclosure or collection actions by the Defendants be declared time barred.

b.    For issuance of an Order canceling the Subject Note, Deed of Trust, all substitution of attorneys, the assignment of the deed of trust, Notices of Default, and all Notice of Trustee Sales.

c.    Injunctive Relief pursuant to Cal. Bus. & Prof. Code §17200, Cal Civil Code § 3396 and CCP §526, Cal. Civ. Code § 2924.12 and/or pursuant to Fed. Rules of Civ. Procedure 65.

d.    Compensatory damages and statutory fees including but not limited to those allowed per RESPA 12 USC 2605(f), and per § 12 USC 1640(a) including for pattern and practices for noncompliance under Reg. X and Z and actual damages.

e.    Special Damages.

f.    An Accounting.

g.    Punitive Damages.

h.    For all statutory damages allowed by law.

h.    Disgorgement of all fees and charges or prospective fees and charges

i.    Attorney fees and costs, including those allowed by 2924.12, 2605 (f) and Cal Civ. Code §§1788.17 and 1788.30 and any other provisions of law.

VERIFIED COMPLAINT

j.    Such other further and different relief as the Court deems just and equitable, including interest at the legal rate.

Dated:  April 29, 2015

                                   J. Owen Murrin
                                   Attorney for Plaintiff
                                   LAURA D. (A.) SATERBAK

COMPLAINT

## VERIFICATION

*Saterbak v. National Default Servicing Corporation et al.*

United States District Court, Central District of California-Southern District

I *LAURA SATERBAK* have read the foregoing document entitled Verified Complaint and am familiar with the contents thereof. The matters stated in the foregoing documents are true to my own knowledge except as to those matters which are stated on information and believe, and as those matters, I believe them to be true.

Executed on April *29*, 2015 at *LA MESA*, California. I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.

*LAURA D. SATERBAK*
Print Name

Signature

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of *SAN DIEGO*
Subscribed and sworn to (or affirmed) before me this *29* day of *April*, 20 *15* by *LAURA D. SATERBAK*
_____, proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

Signature _____ (Seal)

OFFICIAL SEAL
GREG KUGLER
NOTARY PUBLIC-CALIFORNIA
COMM. NO. 1993532
SAN DIEGO COUNTY
MY COMM. EXP. NOV. 5, 2016

- 1 -