FILED

OCT 0 1 2015

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY          *a.ca*DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAURA D. SATERBAK, | Civil No. 15cv956-WQH-NLS |
| Plaintiff, | ORDER |
| vs. | |
| NATIONAL DEFAULT SERVICING CORPORATION; SELECT PORTFOLIO SERVICING, INC.; and DOES I-XXX, | |
| Defendants. | |

HAYES, Judge:

The matter before the Court is the Motion to Dismiss (ECF No. 8) filed by Defendants Select Portfolio Servicing, Inc. ("SPS") and National Default Servicing corporation ("NDSC").

## I.     Background

On April 29, 2015, Plaintiff Laura D. Saterbak commenced this action by filing the Complaint. (ECF No. 1). On June 12, 2015, Defendants SPS and NDSC filed the Motion to Dismiss. (ECF No. 8). On July 6, 2015, Plaintiff filed a response. (ECF No. 10). On July 10, 2015, Defendants filed a reply. (ECF No. 11).

## II.    Allegations of the Complaint

"[4826 Mount Helix Dr., La Mesa, California] was acquired by way of a Grant Deed dated April 30, 2007." (ECF No. 1 ¶ 8). Plaintiff alleges that the Defendants have sent correspondence to the Plaintiff through the United States Mails claiming that

"they or their alleged principal are owed a sum certain, which is not correct, and which they know or should know is not correct," and that "they are collecting for an undisclosed principal." *Id.* ¶ 10-11. "Plaintiff believes and alleges the amount noted for collection or the amount stated that is needed to satisfy the foreclosure is incorrect, and discovery is highly likely to show Defendant's alleged 'principal' has been paid (in full or in part) due to third party payers, and thus a full explanation or accounting is requested." *Id.* ¶ 10. "Further, the Plaintiff herein believes and alleges that the actions of the Defendants jointly and severally continue to cause her personal economic harm, in addition to jeopardizing her business relationship with other third parties, slandering her credit histories with false and misrepresentative information; thus depriving her of an income or the quiet enjoyment of her property. Said conduct of Defendants tortuously interferes with her business affairs and relations with third parties by and through their actions as debt collectors." *Id.* ¶ 15. "The actions of the Defendants, jointly and severally, now constitute an imminent threat to the Plaintiff's possession of the property which is the subject of this Complaint." *Id.* ¶ 17.

"Defendant NDSC, [] by and through its agent, and or under the direction of Defendant SPS, sent correspondence and various Notices of Trustee's Sales to the Plaintiff, only to later postpone or completely cancel them." *Id* ¶ 19. "The Plaintiff alleges that the directives given in this regard and other similar notices that Defendant NDSC sent Plaintiff each and every month through April 2015 are identical and possess inherent issues based on the lack of authority due to defendants: (a) having done improper accounting relating to the actual sum due and owing; and (b) failure to establish a full and verifiable chain of custody as to the note or Deed of Trust ("DOT") between Plaintiff and the 'real party in interest.'" *Id.*

"Defendants' (NDSC and SPS) activities are wrongful because it emanates from a void or voidable DOT ... or note ... because the actual parties to it were defunct, or not viable, at the time or nothing but shell, pass-through entities...." *Id.* ¶ 21. "It is impossible for SPS or any other party to appoint a Substitute Trustee, or NDSC to act

as such for a number of reasons:

There are defects in the chain of title of the entity carrying the financing. This started because the original lender, American Brokers Conduit ("ABC"), and its nominee, and agent for foreclosure purposes, Mortgage Electronic Registration Systems, Inc. (MERS) were defective, not viable entities, and not registered to do business in California in 2007 when the Note or DOT was executed.... ABC and MERS at the time in essence were fictitious entities, representing a real party in interest that did not manifest itself or properly perfect its interest. Therefore the Deed of Trust filed on June 1, 2007, as the underlying authority for this foreclosure is a nullity at the option of Plaintiff, which she elects to void with the assistance of the court.

Even if the above is not voided or set aside, the subsequent attempt to assign the DOT as set forth in Exhibit 12 is fraught with error and cannot be deemed a valid transfer. It is believed the Defendants claim their authority from this improper assignment. This is an invalid and improper assignment because of the following:

The document is dated on December 27, 2011; yet it wasn't filed for record until December 17, 2012, almost a year later....

American Brokers Conduit was not qualified to do business in California at that time. Plus, it was never a legitimate company, and even if it was, it ceased to be such and or became defunct or bankrupt before December 27, 2011.
...

MERS, as nominee ABC claims to have received "good and valuable consideration from ABC". Both entities have no right to conduct business in California, so their actions thereafter are voidable, at the election of the other party, Plaintiff who has so elected.

MERS could NOT have received anything of value because of its bankruptcy-remote status and subsidiary status.

The attmpt to assign this to the Securitized trust (Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007-AR7), is invalid, so any action by the trust or an arm of the trust is invalid.

The cut-off date for this trust is September 1, 2007. The date of this assignment is December 27, 2011, recorded December 17, 2012; OVER FOUR YEARS AFTER IT WAS EXECUTED AND FIVE YEARS AFTER IT WAS RECORDED.
...

Based upon the Pooling and Servicing Agreement (PSA) at pages S-96 through S-98, of the above named trust, the manner in which the above assignment purported to convey the note and deed into the trust pool was noncompliant in multiple aspects and thus, could not have made the trust pool

- 3 -

as prescribed.... Thus, the actions of any subsequent "trustee" on behalf of this trust entity is ultra vires and without legal authority.

*Id.* ¶ 22.

"It is believed the real party in interest has not authorized the commencement of foreclosure proceedings herein. Further, it is alleged the real party in interest has been substantially paid or paid in full and the principal trying to collect money from the Plaintiff is an imposter. Suggesting the contrary by these defendants is proffered as false and a misrepresentation, emanating from bad records, self-interest, and/or deception." *Id.* ¶ 23.

"Defendants used a ruse to lure Plaintiff into thinking there was a way to modify the (alleged) loan which would allow Plaintiff to save her property without filing legal action. Said ruse occupied a lot of time and money for nothing. It caused plaintiff emotional stress waiting for naught. Defendants never had any intention of modifying the alleged loan or an ability to modify and wrongfully and deceitfully gave the impression otherwise or that this process would help Plaintiff save her property. Plaintiff wasted time and money trying to comply, and now that her credit is ruined she is in a precarious position in her ability to conduct her own business, let alone refinance with another lender, if in fact such was warranted. Defendants' actions have negatively affected the marketability of the property. Plaintiff seeks damages for the above including damages for breaches of law and contract according to proof at trial." *Id.* ¶ 25.

**Basis for Action against Defendant SPS**

Plaintiff alleges separate basis for action against Defendant SPS. Plaintiff alleges that "Defendant SPS sent the Plaintiff a 'Validation of Debt Notice', dated August 12, 2013, wherein Defendant SPS claims that it is collecting payments for Wilmington Trust Company, successor Trustee to Citibank, N.A., as Trustee for the benefit of registered holders of Structured Asset Mortgage Investments II Trust ("SAMI II Trust 2007-AR7"), Mortgage Pass-Through Certificates Series 2007- AR7." (ECF No. 1 ¶ 27). "Plaintiff believes and alleges that the SAMI II 2007-AR7 Trust is

regulated by a pooling and servicing agreement ("PSA")…. Specifically, there was a Closing Date stated in this trust's PSA of September 18, 2007." *Id.* ¶ 28. "This date was not met here." *Id.* "On December 17, 2012 at 8:00 a.m., over five (5) years AFTER the Closing Date of the Trust, the Plaintiff maintains and alleges that employees of Nationwide Title Clearing, Inc., a known Florida document manufacturing plant, under the request of Lender Processing Services, Inc., caused to be drafted and recorded a "Corporate Assignment of Deed of Trust" on behalf of a defunct Lender, American Brokers Conduit ("ABC")…." *Id.* ¶ 29. "ABC, never had any authority to contract in the State of California so any liaison involving MERSCORP HOLDINGS, Inc. as the parent corporation of Mortgage Electronic Registration Systems, Inc. as ABC's nominee, could not exist and therefore any purported transfer of this (alleged) loan to Citibank as Trustee for SAMI II 2007-AR7 could not have properly taken place." *Id.* ¶ 30. Plaintiff further alleges that "this loan became an asset of American Home Mortgage or one of its affiliated companies above mentioned. American Home Mortgage and its affiliated companies went bankrupt, and when it did, any and all arrangements it had with MERS in association with this loan were rendered void and no longer effective." *Id.* ¶ 32.

Plaintiff's Complaint alleges twenty-one causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA") against Defendant SPS; (2) violation of the FDCPA against Defendant NDSC; (3) cancellation of instruments against Defendants NDSC and SPS; (4) fraud and deceit against Defendants NDSC and SPS; (5) wrongful foreclosure against Defendants NDSC and SPS; (6) declaratory relief against Defendants NDSC and SPS; (7) interference with contract and prospective business relations against Defendants NDSC and SPS; (8) recession as voidable contract against Defendants NDSC and SPS; (9) violation of the Deceptive Trade Practices Act against Defendant SPS; (10) injunctive relief against Defendants NDSC and SPS; (11) California Homeowner's Bill of Rights against Defendants NDSC and SPS; (12) violation of Regulation X of RESPA and Regulation Z of TILA against

Defendant SPS; (13) violation of 12 C.F.R. § 1024.36(d)(2)(B) against Defendant SPS; (14) violation of 12 C.F.R. § 1024.36(d)(1)(i)-(ii) against Defendant SPS; (15) violation of 12 C.F.R. § 1026.36(c)(3) against Defendant SPS; (16) violation of 12 C.F.R. § 1026.3 against Defendant SPS; (17) violation of 12 C.F.R. § 1024.35(e)(1)(A) against Defendant SPS; (18) negligence against Defendants NDSC and SPS; (19) violation of California Business & Professions Code § 17200 against Defendants NDSC and SPS; (20) accounting against Defendants NDSC and SPS; (21) violation of the Equal Credit Opportunity Act ("ECOA"), 11 U.S.C. § 1691(d)(1) against Defendant SPS.

## III.    Motion to Dismiss

**Legal Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id.* (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

**Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, and Eighth Claims**

Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, and Eighth claims appear to be based on Plaintiff's allegations that there are defects in the chain of title because: "ABC and MERS at the time in essence were fictitious entities, representing a real party in interest that did not manifest itself or properly perfect its interest;" "[t]he attempt to assign this to the Securitized trust (Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007-AR7), is invalid;" and "[b]ased upon the Pooling and Servicing Agreement ... the manner in which the above assignment purported to convey the note and deed into the trust pool was noncompliant ... and thus, could not have made the trust pool as prescribed.... Thus, the actions of any subsequent "trustee" on behalf of this trust entity is ultra vires and without legal authority."

Defendants contend that Plaintiff's claims fail to the extent they stem from her attack on MERS' authority to assign the loan. Defendants contend that "it is well settled that MERS is authorized to act on behalf of the beneficiary for whom it acts as nominee." (ECF No. 8 at 8). Defendants contend that Plaintiff lacks standing to challenge the securitization and fails to allege the requisite prejudice. Defendants contend that, given this agreement, Plaintiff was not damaged when the loan was

assigned. Defendants further contend that Plaintiff cannot allege any harm because her obligations under the loan remained the same. Defendants further contend that Plaintiff specifically agreed by signing the Deed of Trust that the "Note or a partial interest in the Note together with [the] Security Instrument) can be sold one or more times without prior notice to Borrower...." (ECF No. 8 at 7).

## I.  Mers' Authority to Assign the Loan

In *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256 (2011) the court explained:

> MERS is a private corporation that administers a national registry of real estate debt interest transactions. Members of the MERS System assign limited interests in the real property to MERS, which is listed as a grantee in the official records of local governments, but the members retain the promissory notes and mortgage servicing rights. The notes may thereafter be transferred among members without requiring recordation in the public records. Ordinarily, the owner of a promissory note secured by a deed of trust is designated as the beneficiary of the deed of trust. Under the MERS System, however, MERS is designated as the beneficiary in deeds of trust, acting as 'nominee' for the lender and granted the authority to exercise legal rights of the lender.

*Fontenot*, 198 Cal. App. 4th at 267; *see also Siliga v. Mortgage Elec. Registration Sys., Inc.*, 219 Cal. App. 4th 75, 83-84 (2013). California courts have held that a trustor who agreed under the terms of the deed of trust that MERS, as the lender's nominee, has the authority to exercise all of the rights and interests of the lender, including the right to foreclose, is precluded from maintaining a cause of action based on the allegation that MERS has no authority to exercise those rights. *See Siliga*, 219 Cal. App. 4th at 83-84 (2013) ("The deed of trust itself, attached to the Siligas' complaint, establishes as a factual matter that MERS has the authority to exercise all of the rights and interests of the lender. The authority to exercise all of the rights and interests of the lender necessarily includes the authority to assign the deed of trust.") (internal citations omitted); *Herrera v. Fed. Nat. Mortgage Assn.*, 205 Cal. App. 4th 1495, 1503-04 (2012) ("[I]n the instant case, plaintiffs agreed in the original DOT that MERS held the right to exercise all interests and rights held by the lender and its successors and assigns, including the right to assign the DOT and to foreclose on plaintiffs' property.

The DOT states: Borrower [plaintiffs] understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.") (internal quotation omitted).

In this case, the Deed of Trust states that the lender is American Brokers Conduit and "MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns." (ECF No. 1-4, Exh. 59: Deed of Trust at 16). The Deed of Trust further states that

> Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

*Id.* at 17. The Deed of Trust itself establishes that MERS has the authority to exercise all of the rights and interests of the lender. *See Siliga*, 219 Cal. App. 4th at 83-84. The authority to exercise all of the rights and interests of the lender necessarily includes the authority to assign the deed of trust. *See Herrera*, 205 Cal. App. 4th at 1505; *Siliga*, 219 Cal. App. 4th at 84.

## II. Standing

"[D]istrict courts have held that borrowers who were not parties to the assignment of their deed-and whose rights were not affected by it-lacked standing to challenge the assignment's validity because they had not alleged a concrete and particularized injury that is fairly traceable to the challenged assignment." *Marques v. Fed. Home Loan Mortg. Corp.*, No. 12-cv-1873, 2012 WL 6091412, at *4 (S.D. Cal. Dec. 6, 2012) (citations omitted); *see id.* at *5 ("[T]he validity of the assignment does not affect whether [the] borrower owes its obligations, but only to whom [the] borrower

is obliged.") (quotation omitted). This Court has held that borrowers who were not parties to the assignment of their deed—and whose rights were not affected by it—lacked standing to challenge the assignment's validity. *See Diunugala v. JP Morgan Chase Bank, N.A.*, No. 12CV2106-WQH KSC, 2015 WL 350559, at *13 (S.D. Cal. Jan. 21, 2015). S*ee also McLaughlin v. Wells Fargo Bank, N.A.*, No. 12-1114, 2012 WL 5994924, at *6 (C.D. Cal. Nov. 30, 2012) ("[t]o the extent [a] Plaintiff bases her claims on the theory that [Defendant] allegedly failed to comply with the terms of the [pooling and servicing agreement], the court finds that she lacks standing to do so because she is neither a party to, nor a third party beneficiary of, that agreement." (citing *Sami v. Wells Fargo Bank*, No. 12-108, 2012 WL 967051, at *5 (N.D. Cal. Mar. 21, 2012))) ; *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 514-15 (2013) ("As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, [Plaintiff] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions. Furthermore, even if any subsequent transfers of the promissory note were invalid, [Plaintiff] is not the victim of such invalid transfers because her obligations under the note remained unchanged.") (citations omitted); *cf. Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 944 (1976) ("A third party should not be permitted to enforce covenants made not for his benefit, but rather for others.... As to any provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler.").

In this case, Plaintiff was not a party to the assignment of the deed of trust, and her rights were not affected by it. Plaintiff's obligations under the Deed of Trust were only affected by the assignment of the Deed of Trust insofar as they altered the party to whom the Plaintiff was obliged. Therefore, Plaintiff does not have standing to challenge the securitization of her loan or any subsequent assignment of the Deed of Trust.

## III.    The Deed of Trust

Even if Plaintiff had standing to challenge the securitization of her loan, the securitization theory fails when plaintiffs have signed a Deed of Trust which provides that the note or a partial interest in the note may be sold. *See Fores v. GMAC Mortgage, LLC*, 2013 WL 2049388, at *3 (N.D. Cal. May 14, 2013) ("Here, the securitization theory also fails because plaintiff Irene Flores agreed that her Promissory Note, and partial interests in the Note, could be sold. Likewise, plaintiff Irene Flores signed the deed of trust, which provides that '[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.'"). In this case, Section 20 of the Deed of Trust signed by Plaintiff states: "The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." (ECF No. 1-4, Exh. 59 at 25).

Plaintiff's Third, Fourth, Fifth, Sixth, Seventh, and Eighth claim, which appear to be based on Plaintiff's allegations that there are defects in the chain of title are dismissed.

## Plaintiff's First and Second claims for Violation of FDCPA

### A.    Defendant NDSC

Defendants contend that Defendant NDSC is not liable pursuant to the FDCPA because foreclosure sale notices issued in compliance with Civil Code section 2924 do not implicate the FDCPA. Defendants contend that Defendant NDSC is alleged to have done "nothing more than send Plaintiff notice of a nonjudicial foreclosure sale." (ECf No. 8 at 11). Plaintiff contends that NDSC is a debt collector because it obtained the debt in default.

To be liable for a violation of the FDCPA, the defendant must, as a threshold requirement, be a "debt collector" within the meaning of the FDCPA. *Heintz v. Jenkins*, 514 U.S. 291, 294 (1995). A debt collector is defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15 U.S.C. § 1692a(6). As the Ninth Circuit Court of Appeals noted in *Santoro v. CTC Foreclosure Serv. Corp.*, 12 Fed. Appx. 476 *11-12 (9th Cir.2001), a foreclosure sale notice issued in compliance with California Civil Code section 2924 *et seq.* does not seek to collect a debt. *See also Gonzalez v. CNA Foreclosure Serv., Inc.*, No. 09 CV 2034 MMA MDD, 2011 WL 2580681, at *3 (S.D. Cal. June 29, 2011) ("[T]he Court concludes CNA is not a 'debt collector' within the meaning of the FDCPA. At no time did CNA seek to collect money from Plaintiffs. Rather, CNA's notices informed Plaintiffs that if they did not take action with respect to the amounts allegedly owed to the beneficiary, Dakota Loans, Plaintiffs may lose legal rights and the Property may be subject to foreclosure. . . . [S]uch notices do not fall within the conduct prohibited by the FDCPA.").

Plaintiff alleges that Defendant NDSC sent correspondence to Plaintiff on September 15, 2014, October 15, 2014, November 20, 2014, and December 31, 2014. Plaintiff alleges that each correspondence "threatens to take foreclosure action that the Plaintiff does not believe the Defendant is entitled to take, in violation of 15 USC 1692e(5) and 15 USC 1692f(6)(A)." *Id.* ¶¶ 83, 89, 95, 101. Plaintiff alleges that each correspondence "misrepresented the character and status of the debt under 15 USC 1692e(2)(A)." *Id.* ¶¶ 84, 90, 96, 102. Plaintiff alleges that "Defendant NDSC has repeatedly cancelled and reset the sale date multiple times without specifically advising who it is collecting a debt for, in violation of 15 USC 1692e(10)." *Id.* ¶ 104. Plaintiff further alleges that Defendant NDSC sent correspondence to Plaintiff through its agent Tiffany and Bosco on August 19, 2015, and March 24, 2015. With respect to this correspondence, Plaintiff alleges that Defendant NDSC "knew or should have known that they did not have any real authority to demand payment or threaten to take such action, all while knowingly misrepresenting to the Plaintiff their intentions to take such actions, knowing such actions were false and misrepresentative, in violation of 15 USC 1692e(5) and 15 USC 1692f(6)(A)." *Id.* ¶¶ 114, 118.

In this case, the correspondence sent by Defendant NDSC on September 15, 2014, October 15, 2014, November 20, 2014, and December 31, 2014, do not seek to collect money from Plaintiff, but inform Plaintiff that "UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE WITHOUT FURTHER NOTICE." *See* ECF No. 1-2, Exhs. 21-24. The Court finds that the correspondence sent by Defendant NDSC on September 15, 2014, October 15, 2014, November 20, 2014, and December 31, 2014, issued in compliance with California Civil Code section 2924 *et seq.* were not attempts to collect a debt. Defendant NDSC is not a "debt collector" pursuant to the FDCPA. Plaintiff's FDCPA claim against Defendant NDSC is dismissed.

**B.    Defendant SPS**

Plaintiff alleges that Defendant SPS sent correspondence to Plaintiff on April 12, 2014, July 14, 2014, September 3, 2014, September 13, 2014, October 1, 2014, October 8, 2014, and October 18, 2014. Plaintiff alleges that each correspondence "purports to misrepresent SPS's authority." ECF No. 1 ¶¶ 39, 46, 50, 54, 60, 64, 69, 72. Plaintiff alleges that each correspondence "threatens ... to take foreclosure action that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take, in violation of 15 USC 1692e(5) and 15 USC 1692f(6)(A)." *Id.* ¶¶ 41, 44, 48, 51, 56, 62, 66, 70, 73. Plaintiff further alleges that each correspondence "misrepresented the character and status of the debt under 15 USC 1692e(2)(A)." *Id.* ¶¶ 42, 45, 49, 52, 57, 63, 67, 71, 74.

Defendants contend that Defendant SPS does not qualify as a debt collector for purposes of the FDCPA because Defendant SPS is a mortgage servicing company. Plaintiff contends that the correspondence sent by Defendant SPS specifically state that SPS is a debt collector.

Excluded from the definition of "debt collector" is any person collecting or attempting to collect "a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Therefore, a mortgage servicing company

1  is excluded from the definition of a debt collector if it acquired the loan before the

2  borrower was in default. *See Schlegel v. Wells Fargo Bank, N.A.*, 799 F.Supp.2d 1100,

3  1103-04 (N.D. Cal. 2011), *rev'd on other grounds*, 720 F.3d 1204 (2013); *Nool v.*

4  *HomeQ Servicing*, 653 F.Supp.2d 1047, 1053 (E.D. Cal. 2009) (quoting *Perry v.*

5  *Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985)).

6      Attached to Plaintiff's Complaint is a "Validation of Debt Notice" sent to

7  Plaintiff by Defendant SPS, dated August 12, 2013. *See* ECF No. 1-2, Exh. 31. The

8  Notice states that "[w]e recently sent you a letter advising you that the servicing of your

9  mortgage loan was transferred to Select Portfolio Servicing, Inc. (SPS) effective

10 08/01/2013." *Id.* Furthermore, Plaintiff asserts that "the last payment made by her on

11 this alleged debt was October, 2008." (ECF No. 1 at 24). The Court finds that Plaintiff

12 has alleged sufficient facts to show that Defendant SPS is a "debt collector" under the

13 FDCPA.

14      However, Plaintiff's FDCPA claim against Defendant SPS fails for other

15 reasons. Plaintiff alleges that Defendants SPS violated 15 U.S.C. §§ 1692e(5) and

16 1692f(6)(A). 15 U.S.C. § 1692e(5) prohibits debt collectors from threatening "to take

17 any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C.

18 § 1692f(6)(A) prohibits debt collectors from "[t]aking or threatening to take any

19 nonjudicial action to effect dispossession or disablement of property if there is no

20 present right to possession of the property claimed as collateral through an enforceable

21 security interest." Plaintiff alleges that Defendant SPS violated 15 U.S.C. §§ 1692e(5)

22 and 1692f(6)(A) because "[t]he correspondence threatens . . . to take foreclosure action

23 that the Plaintiff believes and alleges is not within the rights of Defendant SPS to take."

24 (ECF No. 1 ¶¶ 41, 44, 48, 51, 56, 62, 66, 70, 73). Plaintiff's allegations that the actions

25 were not within Plaintiff's rights are based on Plaintiff's allegations that "it is

26 impossible for SPS or any other party to appoint a Substitute Trustee, or NDSC to act

27 as such." (ECF No. 1 ¶ 22). Because the Court has found that Plaintiff lacks standing

28 to challenge the securitization of her loan or any subsequent assignment of the Deed

of Trust, Plaintiff's allegations that Defendant SPS violated 15 U.S.C. §§ 1692e(5) and 1692f(6)(A), which are based on the same grounds, must also be dismissed. To the extent Plaintiff's FDCPA claim against Defendant SPS alleges that Defendant SPS violated 15 U.S.C. §§ 1692e(5) and 1692f(6)(A), Plaintiff's FDCPA claim against Defendant SPS is dismissed.

Plaintiff also alleges that Defendant SPS violated 15 U.S.C. § 1692(2)(A). 15 U.S.C. § 1692e(2)(A) prohibits the false representation of the character, amount, or legal status of any debt. However, Plaintiff fails to allege facts to show that Defendant SPS made a false representation of the character, amount, or legal status of any debt. To the extent Plaintiff's FDCPA claim against Defendant SPS alleges that Defendant SPS violated 15 U.S.C. § 1692e(2)(A), Plaintiff's FDCPA claim against Defendant SPS is dismissed.

**Plaintiff's Ninth Claim: Violation of Deceptive Trade Practices Act**

Defendants contend that Plaintiff does not allege any facts to show that Defendants are subject to the Utah statute. Defendants further contend that the parties agreed to be governed by California law pursuant to the Deed of Trust.

Plaintiff contends that Utah law applies as to Defendant SPS because Defendant SPS is headquartered in Utah, its principal place of business and the place of incorporation. Plaintiff contends that Defendant SPS "is therefore bound to follow the law wherever regardless if the ultimate act hurt persons and properties elsewhere." (ECF No. 10 at 23).

Plaintiff's ninth claim alleges violation of the deceptive trade practices act pursuant to a Utah statute § 13-11a-3. Plaintiff alleges that "SPS knew or was reckless in not knowing it was violating the provisions of [§ 13-11a-3]." (ECF No. 1 ¶ 169). Plaintiff alleges that:

> As a result of the above violation, Plaintiff spent time and effort and expended emotional energy related to attempting to deal with this matter. She continued to deal with it because SPS masqueraded as the true servicer under the authority of the real party in interest when it was not. SPS procedures that could have resulted in the loss of Plaintiff's home to the wrong party if she did not fight them. She fought back and as a result

had to expend money and suffer emotional stress dealing with it. This also harmed her in her ability to have the quiet enjoyment of her premises and not be disturbed.

*Id.* ¶ 170.

Section sixteen of the Deed of Trust, attached to Plaintiff's Complaint states that "[t]his Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." (ECF No. 1-4, Exh. 59: Deed of Trust at 24). Plaintiff's Complaint states that the subject property is "situated in La Mesa, San Diego County, California." (ECF No. 1 ¶ 5). Therefore, pursuant to the Deed of Trust, the parties agreed that the security instrument is governed by the law of California. Plaintiff's ninth claim for violation of Deceptive Trade Practices Act, Utah statute § 13-11a-3 is dismissed.

**Plaintiff's Eleventh Claim: Homeowner's Bill of Rights**

Plaintiff eleventh claim alleges violation of the Homeowner's Bill of Rights against "all Defendants." (ECF No. 1 at 50). Defendants contend that Plaintiff fails to allege any facts to show that Plaintiff previously received a loan modification; that Plaintiff was previously evaluated for a loan modification; and/or that the application Plaintiff purportedly submitted in October 2014 contained documentation of a material change. Defendants contend that it is impossible to determine whether Defendants owed any duty under § 2923.6 to refrain from recording any foreclosure document without these facts. Defendant contend that "as best can be ascertained from the available facts, no Trustee's Deed Upon Sale has been recorded, to date, and Plaintiff's application for a modification is still pending." (ECF No. 8 at 19). Defendants contend that absent any facts showing that the alleged violations have not been cured and/or that the foreclosure sale has taken place, Plaintiff's claim lacks sufficient facts upon which relief may be granted. Defendants further contend that Plaintiff's claim is not ripe because a lender/servicer can avoid liability under HBOR altogether by correcting any would-be violations before the sale takes place. Defendants contend that "because there has been no sale . . . Plaintiff's HBOR claims [are] not ripe." (ECF No. 8 at 20).

Plaintiffs contend that the Complaint alleges that "Defendants' recorded the Notice of Sale on March 26, 2015 while Plaintiff's completed application was pending in violation of Civ. Code § 2923.6(c)." (ECF No. 10 at 24). Plaintiff's contend that the allegation is sufficient to withstand a motion to dismiss.

In reply, Defendants contend that California Civil Code § 2924.12(c) of HBOR specifically absolves servicers and trustees of all liability where they have corrected the alleged violation before the foreclosure.

California Civil Code § 2923.6(c) provides :

> If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:
>
> > (1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.
> >
> > (2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.
> >
> > (3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

A borrower may seek an injunction to enjoin an improper foreclosure if a trustee's deed upon sale has not been recorded, Cal. Civ.Code § 2924.12(a)(1); or, if a trustee's deed upon sale has been recorded, the borrower may seek damages for violations of the statutory provisions, *id.* § 2924.12(b). However, the statute provides a "safe harbor," precluding liability "for any violation . . . corrected and remedied prior to the recordation of a trustee's deed upon sale." *Id.* § 2924.12(c).

Plaintiff alleges that she sent an "application package was sent via USPS Priority Mail." (ECF No. 1 ¶ 186). "In a letter dated October 8, 2014, SPS acknowledged receipt of Plaintiff's application and identified additional documentation required to complete the application." *Id.* ¶ 187. Plaintiff alleges that she mailed Defendant SPS

- 17 -

the additional documents on November 11, 2014. *Id.* ¶ 189. Plaintiff alleges that "[a]s of November 12, 2014, SPS was in possession of Plaintiff's complete application for a loan modification." *Id.* ¶ 196. "Defendants recorded the Notice of Sale on March 26, 2015 while Plaintiff's complete application was pending, in violation of Civil Code § 2923.6(c)." *Id.* ¶ 197. "To date, SPS has not made a written determination of Plaintiff's modification application and, instead, Defendants attempt to conduct a trustee's sale on May 19, 2015 in further violation of Civil Code § 2923.6(c)." *Id.* ¶ 198.

In this case, Plaintiff alleges that Defendants recorded the Notice of Sale on March 26, 2015 while Plaintiff's complete application was pending. Plaintiff fails to allege that a trustee's deed upon sale has been filed or that a foreclosure sale has taken place. Therefore, Plaintiff has not alleged facts sufficient to show that Defendant SPS does not fall within the "safe harbor" of California Civil Code § 2924.12(c). *See Gonzales v. Citimortgage, Inc*, No. C-14-4059 EMC, 2015 WL 3505533, at *2 (N.D. Cal. June 3, 2015) (Here, it is undisputed that no trustee's deed upon sale was filed and that no foreclosure has taken place. Because a foreclosure sale has not taken place, and thus a trustee deed upon sale has not been recorded, Plaintiff has not stated a claim for damages."); *Vasquez v. Bank of Am., N.A.*, No. 13-CV-02902-JST, 2013 WL 6001924, at *7 (N.D.Cal. Nov. 12, 2013) ("Plaintiff's claims . . . for actual damages, attorneys' fees, and treble damages are unavailable until such time as the deed upon sale has been recorded."); *Ellis v. Bank of Am., N.A.*, No. 13-cv-5257, 2013 WL 5935412, at *4 (C.D.Cal. Oct. 28, 2013) ("There is currently no foreclosure activity against the property and plaintiff does not allege that a trustee's sale ever took place. The Court accordingly concludes that section 2924.12 shields defendants from any liability for their alleged violations of statutory requirements, and that plaintiff's claim therefore fails.").

Furthermore, Plaintiff alleges that the loan modification application was complete on November 2, 2014, but indicates that Defendant SPS requested additional

information after November 2, 2014. Plaintiff fails to plausibly allege that the loan modification application was complete. Plaintiff's Homeowner's Bill of Rights claim is dismissed.

**Plaintiff's Eighteenth Claim: Negligence**

Plaintiff's eighteenth claim alleges negligence against all Defendants. Defendants contend that there are no facts to suggest that Defendants owed Plaintiff a duty or that Defendants' role exceeded the scope of a conventional lender. Defendants contend that, even if the Defendants did owe Plaintiff a duty, there are no facts to suggest that Defendants breached that duty. Defendants further contend that Plaintiff cannot show Defendants caused her poor credit rating because Plaintiff admits that she has not made a payment towards her loan since 2008.

Plaintiff contends that servicers owe a duty in certain situations. Plaintiff contends that the facts relating to causation and damages are factual issues not appropriate for dismissal at the motion to dismiss stage. Plaintiff further contends that she has set forth her version of the facts in the eleventh cause of action which are incorporated by reference.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (1998) (citation omitted). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Invs., Inc.*, 118 Cal. App. 4th 269, 278 (2004). "[F]or purposes of a negligence claim, 'as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 740 (2010) (quoting *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991)); *see also Wagner v. Benson*, 101 Cal. App. 3d 27, 34-35 (1980). Absent "special circumstances . . . a loan transaction is at arm's

length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Superior Court*, 145 Cal. App. 4th 453, 466 (2006). Likewise, a loan servicer generally does not owe a duty to the borrower of the loan it is servicing. *See Castaneda v. Saxon Mortg. Servs.*, 687 F. Supp. 2d 1191, 1198 (E.D. Cal. 2009). Furthermore, absent special circumstances, there is no duty for a servicer to modify a loan. *See Bunce v. Ocwen Loan Servicing, LLC*, No. 13-00976, 2013 WL 3773950, at *5-*6 (E.D. Cal. July 17, 2013) (collecting cases); *Gonzalez v. Wells Fargo Bank*, No. 12cv3842, 2012 WL 5350035 *6 (N.D. Cal. Oct. 29, 2012) ("A loan modification, which is nothing more than a renegotiation of loan terms, falls well within a[n] institution's conventional money-lending role.") (citations omitted).

"However, even when the lender is acting as a conventional lender, the no-duty rule is only a general rule." *Alvarez v. BAC Home Loans Servicing, L.P.*, 228 Cal. App. 4th 941, 945 (2014) (internal citations omitted). In California, the test for determining whether a financial institution owes a duty of care to a borrower-client involves the balancing of various factors, referred to as the *Biakanja* factors, "'among which are (1) the extent to which the transaction was intended to affect the plaintiff, (2) the foreseeability of harm to him, (3) the degree of certainty that the plaintiff suffered injury, (4) the closeness of the connection between the defendant's conduct and the injury suffered, (5) the moral blame attached to the defendant's conduct, and (6) the policy of preventing future harm.'" *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1098 (Cal. Ct. App. 1991) (citing *Connor v. Great Western Sav. & Loan Assn.*, (1968) 69 Cal.2d 850, 865 (quoting *Biakanja v. Irving* (1958) 49 Cal.2d 647, 650).

Plaintiff alleges:

> Defendants breached their duty by: (1) failing to acquire authority from the real party in interest, (2) failing to give Plaintiff credit for payments, (3) commencing legal action outside the time barred allowed [sic] by law; (4) failing to review Plaintiff's application in a timely manner; (5) misplacing Plaintiff's application for loan modification; (6) mishandling Plaintiff's application by relying on incorrect information; (7) misrepresenting the status of Plaintiff's loan modification application; and (8) initiating and continuing foreclosure in violation of public policy

and the HBOR's restrictions on dual-track foreclosures, (9) not responding to the letters referenced above and required by law.

(ECF No. 1 ¶ 272). "As a direct and proximate result of Defendants' negligence, Plaintiff has been harmed in that the delayed processing of her application the slander to her credit that was done, and the inability to settle the case through a court option." *Id.* ¶ 273. "In addition SPS was negligent to suggest a loan modification as a viable option to settle, Defendant did not have authority to act for the proper real party in interest." *Id.* Plaintiff alleges that, as a result, she: "now faces imminent foreclosure and must pursue court action at great expense to her;" "has suffered the derogatory ratings by the credit agencies that have made it difficult for her to establish creditworthiness;" "has been required to retain legal counsel and has paid money to protect her interest and defending title in the Subject Property that otherwise she would not have had to expend; and "has been harmed in that she has lost substantial equity in the Subject Property." *Id.*

Plaintiff cites *Jolley v. Chase Home Finanace, LLC*, 213 Cal. App. 4th 872, (2013) in support of her contention that this case involves a circumstance where Defendants owe Plaintiff a duty of care. In *Jolley*, the court found triable issues of fact existed as to the plaintiff's negligence claim. The plaintiff in *Jolley* alleged that:

> Chase … acted unreasonably by failing to review Jolley's request for a loan modification in good faith, having decided in advance it would extend no further monies in connection with WaMu's loans. Jolley also complains about specific misstatements, false assurances given by Chase personnel about the prospects for a loan modification, while different personnel at Chase-the actual decision makers-were bent on foreclosure.

*Jolley*, 213 Cal. 4th at 899-900.

The court in *Jolley* conducted an analysis of the *Biakanja* factors as noted that defendants made specific misrepresentations to the plaintiff which affected the plaintiff's decision making. *See Jolley*, 213 Cal. App. 4th 900 ("North's representations were made directly to Jolley, and were certainly likely to, if not intended to, affect his decisionmaking."); *id.* ("Given North's encouragement, it was also foreseeable that Jolley would sink more of his own money into the project, thereby

suffering further injury."); *id.* ("the upbeat prediction of the availability of a loan modification and the rollover of the loan into a conventional mortgage was almost certainly a primary factor in causing this particular injury.").

The court in *Jolley* further stated "[w]e find support for our conclusion in recent federal district court cases." *Id.* at 905. The court stated that:

> *Ansanelli v. JP Morgan Chase Bank, N.A.* (N.D. Cal. Mar. 28, 2011 No. C 10-03892) 2011 WL 1134451, p. *7, 2011 U.S. Dist. Lexis 32350, p. *21, is illustrative. There, the court found a duty of care had properly been pleaded in a negligence action where the bank offered plaintiffs a trial loan modification plan, then reneged on a promise to modify the loan. The bank reported the loan as past due despite the fact that plaintiffs had made proper payments under the trial modification, thereby damaging their credit rating.
>
> Similarly, *Robinson v. Bank of America* (N.D. Cal. May 29, 2012 No. 12-CV-00494-RMW) 2012 WL 1932842, p. *7, 2012 U.S. Dist. Lexis 74212, p. *21, decided on a motion to dismiss, held that a bank went beyond its role as a "silent" lender in its dealings with plaintiff during loan modification negotiations. There, the bank was "alleged to have executed and breached the modification agreement, then engaged in a series of contradictory and somewhat misleading communications with plaintiff-in person, in writing, and by phone-regarding the status of his loan. Under such circumstances, it was entirely foreseeable that [the bank's] conduct could result in damage to plaintiff's credit rating or a decrease in the value of his home."

*Id.* at 906.

In this case, the Court finds that Plaintiff's allegations are not sufficient to show that Defendants owed a duty of care. The facts alleged do not show that Defendants' involvement exceeded the scope of their conventional role as a mere lender of money. *See Gonzalez v. Wells Fargo Bank*, No. 12cv3842, 2012 WL 5350035 *6 (N.D. Cal. Oct. 29, 2012) ("A loan modification, which is nothing more than a renegotiation of loan terms, falls well within a[n] institution's conventional money-lending role.") (citations omitted); *see also Bunce v. Ocwen Loan Servicing*, LLC, No. 13-00976, 2013 WL 3773950, at *5-*6 (E.D. Cal. July 17, 2013) (collecting cases). *Jolley* and the supporting cases are distinguishable from this case. *Jolley*, *Ansanelli*, and *Robinson* all involve defendants who actively mislead plaintiffs as to the status of their loan modification application, or the likelihood of receiving a loan modification. In this case, Plaintiff fails to allege facts to support her conclusory allegations that Defendants

- 22 -

misplaced Plaintiff's application for loan modification, mishandled Plaintiff's application, and misrepresented the status of Plaintiff's loan modification application. Plaintiff only alleges that "Plaintiff had a complete loan modification application in process with SPS as of November 12, 2014. However, SPS has kept Plaintiff's application in perpetual review with an endless cycle of requests for duplicative or unnecessary information." These allegations fail to support a claim for negligence.

**Plaintiff's Twentieth Claim: Accounting**

Plaintiff's twentieth claim requests an accounting.

Defendants contend that Plaintiffs accounting claim fails because there is no fiduciary relationship exists between Plaintiff and Defendants. Defendants further contend that Plaintiff has not alleged facts to show that she is owed any balance.

Plaintiff contends that an accounting is appropriate where there is a dispute as to the amount due. Plaintiff contends that she has no confidence that Defendants are calculating the alleged account correctly because Defendants "do not come up with the same amount each time," and "Defendants cannot obtain a consistent amount." (ECF No. 10 at 29). Plaintiff does not address Defendants' contention that no fiduciary relationship exists.

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Tamburri v. Suntrust Mortg., Inc.*, 2011 WL 6294472, at *17 (N.D. Cal. Dec. 15, 2011) (quoting *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 179 (2009)). "[A]bsent special circumstances . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and lender." *Oaks Mgmt. Corp. v. Super. Ct.*, 145 Cal. App. 4th 453, 466 (2006). A loan servicer generally does not owe a duty to the borrower of the loan it is servicing. *See Shepherd v. Am. Home Mortgage Servs., Inc.*, No. CIV 209-1916 WBS GGH, 2009 WL 4505925, at *2 (E.D. Cal. Nov. 20, 2009) ("In fact, loan servicers do not owe a duty to the borrowers of the loans they service.");

*Watts v. Decision One Mortg. Co.*, No. 09-43, 2009 U.S. Dist. LEXIS 59694 (S.D. Cal. July 13, 2009); *Marks v. Ocwen Loan Servicing*, No. 07-2133, 2009 WL 975792, at *7 (N.D.Cal. Apr.10, 2009) ("[A] loan servicer does not owe a fiduciary duty to a borrower beyond the duties set forth in the loan contract").

Plaintiff alleges that "Defendants improperly marked-up prices charged by vendors and then, without disclosing the mark-up, assessed Plaintiff's account for the marked-up amounts with the intention of generating a profit on the nonperforming loan." *Id.* ¶ 292. Plaintiff alleges that "Defendants fraudulently concealed these unauthorized fees on borrowers' alleged accounts, omitting any information about Defendants' additional profits, by not identifying them on mortgage statements as alleged above." *Id.* ¶ 293.

Plaintiff's First Amended Complaint fails to allege facts demonstrating that circumstances exist between Plaintiff and Defendants creating a fiduciary relationship. Plaintiff's accounting claim is dismissed.

**Plaintiff's Twenty-First Claim: Violation of 11 U.S.C. § 1691(d)(1)**

Plaintiff's twenty-first claim alleges violation of the Equal Credit Opportunity Act, 11 U.S.C. § 1691(d)(1), against Defendant SPS. Plaintiff alleges that "[i]n November 2014 Plaintiff submitted a completed loan modification application, thereby applying for an extension of credit. However, the application remained in Defendants' underwriting department through at least the time the suit was commenced." (ECF No. 1 ¶ 296). Plaintiff alleges that "Defendants' failure to notify Plaintiff of an answer within thirty days of the receipt of a loan modification application constitutes a violation of section 1691(d)(1) of the Equal Credit Opportunity Act, regardless of Plaintiff's default status, which she denies." *Id.* ¶ 297.

Defendants contend that Plaintiff fails to allege facts to show that she was a member of a protected class. Defendants contend that Plaintiff fails to allege facts to show that she was qualified for the modification for which she applied. Defendants contend that Plaintiff fails to allege facts to show that she was wrongfully denied credit

despite being qualified. Defendants further contend that Plaintiff fails to allege facts to show that she suffered any actual damages arising from Defendants' alleged failure to make a determination on her loan modification application within thirty days.

15 U.S.C. § 1691(a) provides:

> It shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction-(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract); (2) because all or part of the applicant's income derives from any public assistance program; or (3) because the applicant has in good faith exercised any right under this chapter.

Plaintiff seeks relief under a provision of the Equal Credit Opportunity Act which requires creditors to notify applicants of the outcome of their credit applications within thirty days of the application. *Id.* § 1691(d)(1).

The Ninth Circuit has yet to articulate the elements of an Equal Credit Opportunity Act claim. However, numerous district courts in this circuit have held that to state a claim under the Equal Credit Opportunity Act a plaintiff must allege that: "(1) she is a member of a protected class; (2) she applied for credit with defendants; (3) she qualified for credit; and (4) she was denied credit despite being qualified." *Harvey v. Bank of Am., N.A.*, 906 F. Supp. 2d 982, 990-91 (N.D. Cal. 2012) (citing *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039, 1045 (N.D. Cal.2009)). Plaintiff's Complaint fails to allege that she is a member of a protected class, or that she was denied credit despite being qualified. Plaintiff specifically alleges that her loan modification application is still pending. *See* ECF No. 1 ¶ 198 ("To date, SPS has not made a written determination of Plaintiff's modification application...."). The Court concludes that Plaintiff fails to plausibly allege facts under the Equal Credit Opportunity Act. Plaintiff's twenty-first claim alleging violation of the Equal Credit Opportunity Act, 11 U.S.C. § 1691(d)(1) is dismissed.

**Plaintiff's Tenth Claim: Injunctive Relief**

Plaintiff's tenth claim for injunctive relief is brought against all Defendants. Plaintiff alleges that "Defendants ... have engaged in a course of conduct that has

resulted in repeated violations of the Plaintiff's rights under the Fair Debt Collection Practices Act, and the numerous other causes of action set forth above, not the least of which is the improper commencing of foreclosure proceedings beyond what the State of California allows." (ECF No. 1 ¶ 175). Plaintiff alleges that "[i]t has been since October 2008 since the last payment was made, and that is four years beyond that allowed to enforce the underlying debt as provide[d] in violation of CCP 337." Plaintiff alleges that "[o]nce the underlying debt is unenforceable because of the statute of limitations, so is the ability to enforce the security which is dependent upon it," and "[r]egardless, foreclosing on security after five years is not permissible under CCP 320." *Id.* Plaintiff alleges that "unless Defendants are restrained by this Court, Plaintiff may lose her home and suffer irreparable harm including losing her home, her good credit, relations with parties, and her emotional health." *Id.* ¶ 176.

Defendants contend that a nonjudicial foreclosure sale does not involve the filing of an action and therefore CCP 320 and CCP 337 are not applicable. Defendants further contend that there are no grounds for an injunction. Defendants contend that injunctive relief is not available to Plaintiff pursuant to the FDCPA and Plaintiff's other claims all fail for lack of merit. Defendants contend that Plaintiff's injunctive relief claim rises and falls with Plaintiff's other causes of action.

Plaintiff contends that she is seeking injunctive relief pursuant to Federal Rule of Civil Procedure 65. Plaintiff further contends that California provides for injunctive relief in homeowner foreclosure actions such as action based on Cal. Civ. Code § 2924.12(a).

CCP 320 states provides that "[n]o entry upon real estate is deemed sufficient or valid as a claim, unless an action be commenced thereupon within one year after making such entry, and within five years from the time when the right to make it descended or accrued." Cal. Civ. Proc. Code § 320. Cal. Civ. Proc. Code § 337 provides:

> An action upon any contract, obligation or liability founded upon an instrument in writing, except as provided in Section 336a of this code; provided, that the time within which any action for a money judgment for the balance due upon an obligation for the payment of which a deed of

trust or mortgage with power of sale upon real property or any interest therein was given as security, following the exercise of the power of sale in such deed of trust or mortgage, may be brought shall not extend beyond three months after the time of sale under such deed of trust or mortgage.

Plaintiff fails to allege facts to show that CCP 320 and CCP 337 are applicable in this case. Defendants have not brought a claim against Plaintiff, rather Defendants have engaged in nonjudicial foreclosure.

To the extent Plaintiff alleges that she is entitled to injunctive relief due to Defendants' repeated violations of Plaintiff's right "under the Fair Debt Collection Practices Act, and the numerous other cause of action set forth above," the Court finds that Plaintiff is not entitled to injunctive relief. Plaintiff's prayer for relief requests injunctive relief "pursuant to Cal. Bus. & Prof. Code § 17200, Cal. Civ. Code § 3396 and CCP § 526, Cal. Civ. Code § 2924.12 and/or pursuant to Fed. Rules of Civ. Proc. 65." (ECF No. 1 at 78). To the extent that Plaintiff seeks injunctive relief "pursuant to Cal. Bus. & Prof. Code § 17200, Cal. Civ. Code § 3396 and CCP § 526, Cal. Civ. Code § 2924.12," the Court finds that Plaintiff is not entitled to injunctive relief because Plaintiff's claims have been dismissed.

To the extent Plaintiff seeks injunctive relief pursuant to Federal Rule of Civil Procedure 65, the Court finds that Plaintiff is not entitled to injunctive relief. To obtain preliminary injunctive relief, a movant must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008); *see also Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("[S]erious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction...."). The function of a preliminary injunction is to preserve the status quo pending a determination of the action on the merits. *King v. Saddleback Junior Coll. Dist.*, 425 F.2d 426, 427 (9th Cir. 1970). The Court has dismissed all claims on which Plaintiff relies for injunctive relief

based on a failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated above, the Court finds that Plaintiffs have failed to establish a likelihood of success on the merits. Plaintiff's request for injunctive relief pursuant to Federal Rule of Civil Procedure 65 is denied. *See Global Horizons, Inc. v. U.S. Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007) ("Once a court determines a complete lack of probability of success or serious questions going to the merits, its analysis may end, and no further findings are necessary."). Plaintiff's injunctive relief claim is dismissed.

## RESPA and TILA Claims

Plaintiff's twelfth through seventeenth claim allege violations of RESPA and TILA against Defendant SPS. Plaintiff alleges that "she is entitled to statutory damages and actual damages suffered as a result of SPS's willful and intentional failure to comply with [its statutory obligations and duties under Regulation X of RESPA and Regulation Z of TILA], including, but not limited to, the time and expense spent attempting to obtain SPS's compliance, and the emotional and psychological harm suffered as a result of SPS's persistent noncompliance." (ECF No. 1 ¶ 203). "On or about October 29, 2015, Plaintiff, by and through her attorney, mailed nine (9) separate [Requests for Information] ("RFIs") in nine (9) separate letters to SPS. Each RFI letter related to separate and distinct information rights under Regulations X and Z and in many instances different responsive time lines applied to each separate RFI letter." *Id.* ¶ 206.

### A. RESPA

### Sufficient Facts to State a RESPA Claim

Section 2605(e) provides that not later than 30 after the receipt from any borrower of any qualified written request the servicer shall, after conducting an investigation, provide the borrower with a written explanation or clarification that includes (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and (ii) the name and

1  telephone number of an individual employed by, or the office or department of, the
2  servicer who can provide assistance to the borrower. 12 U.S.C. § 2605(e).

3      Plaintiff alleges that " SPS failed to provide accurate and complete responses to
4  the RFIs … within 30 days after receipt." (ECF No. 1 ¶ 226). Plaintiff alleges that:

5      Defendant provided inaccurate payoff balances, at least four (4) inaccurate
       itemized payoff balances, and inaccurate periodic billing statements.
6      These four separate and each inaccurate itemized payoff
       balances/statements were provided by SPS in letters dated November 4,
7      2014, November 6, 2014, November 18, 2014 and February 3, 2015,
       respectively. Plaintiff was only provided with a payoff balance/statement,
8      albeit incorrect, an itemized payoff balance/statement, and an owner of the
       note, albeit incorrect, and was not provided with any of the other
9      information requested in the RFIs.

10  *Id.* ¶ 245. With respect to Plaintiff's first, second, third and ninth Requests for
11  Information, Plaintiff alleges that "SPS has failed to provide responses to Plaintiff's []
12  RFIs in violation of 12 C.F.R. § 1024.36(d)(2)(B)." *Id.* ¶ 253. With respect to all nine
13  of Plaintiff's RFI letters, Plaintiff alleges that:

14      SPS failed to provide adequate and accurate information to Plaintiff's
        counsel's office with contact information and a telephone number for
15      further assistance in writing, and failed to conduct a reasonable search for
        such information and provide a written notification, with the basis for
16      SPS's determination that the information was not available to it.

17  *Id.* ¶ 256. With respect to all nine of Plaintiff's Notice of Error letters, Plaintiff alleges
18  that "SPS concluded 'some of the documents you requested will not be provided as they
19  are not specific to the servicing of the mortgage or are proprietary to SPS,'" but
20  "Plaintiff's RFIs and subsequent NOE letters related specifically to the servicing of the
21  mortgage and were not proprietary to SPS because all information was requested, and
22  is specifically identified in either RESPA or TILA, and must be provided by SPS to
23  Plaintiff." *Id.* ¶¶ 266-67. Plaintiff further alleges that "SPS failed to identify which of
24  these requested documents or information were proprietary to SPS, and failed to identify
25  which of the requested documents or information did not specifically relate to the
26  servicing of Plaintiff's Loan." *Id.* ¶ 268.

27      The Court finds that Plaintiff has not alleged sufficient facts to show that
28  Defendant SPS failed to comply with the requirements of RESPA because Plaintiff's

15cv956-WQH-NLS

allegations are conclusory. Plaintiff alleges that the information provided by Defendant SPS is inadequate and incorrect, but Plaintiff fails to provide facts to support the conclusion that the information was inadequate or incorrect. Plaintiff's twelfth claim is dismissed to the extent it alleges a RESPA claim. Plaintiff's thirteenth, fourteenth, and seventeenth actions alleging violations of RESPA are dismissed.

## B.  TILA

Defendants contend that Regulation Z of TILA does not apply to them because neither NDSC, nor SPS constitute lenders who offers or extends credit regularly. Plaintiff does not address this contention.

12 C.F.R. § 226.1(c) specifies who is covered by the provision:

(c) Coverage.

(1) In general, this regulation applies to each individual or business that offers or extends credit when four conditions are met:

(i) The credit is offered or extended to consumers;

(ii) The offering or extension of credit is done regularly;

(iii) The credit is subject to a finance charge or is payable by a written agreement in more than four installments; and

(iv) The credit is primarily for personal, family, or household purposes.

Plaintiff's Complaint fails to allege facts to show that Defendants regularly offer or extend credit. Plaintiff fails to allege that Defendants offered or extended Plaintiff credit in this case. Documents attached to Plaintiff's Complaint show that Defendants NDSC and SPS are the trustee and loan servicer, respectively. Neither Defendant NDSC, nor Defendant SPS offered or extended credit to Plaintiff. Because Plaintiff fails to allege facts to show that Defendants regularly offer or extend credit, Plaintiff fails to show that 12 C.F.R. § 226 is applicable in this case. Plaintiff's twelfth claim is dismissed to the extent it alleges a TILA claim. Plaintiff's fifteenth and sixteenth claims for violation of TILA are dismissed.

## UCL § 17200

Plaintiff's nineteenth claim alleges violation of California Business & Professions

Code § 17200 against Defendants NDSC and SPS.

Defendants contend that Plaintiff's allegations "amount to a laundry list of mere conclusions of law." (ECF No. 8 at 24). Defendants contend that Plaintiff's conclusions do not meet the required degree of specificity required to bring a UCL claim. Defendants further contend that Plaintiff does not allege an injury in fact because Plaintiff was facing foreclosure before any of the alleged conduct occurred.

Plaintiff contends that "[a]ll that is required is an unfair, unlawful, and or fraudulent business act of practice." (ECF No. 10 at 28). Plaintiff contends that "[t]here are many of those things here, and they are listed at [paragraph] 279, and declared actionable at [paragraphs] 281 through 284." Plaintiff does not address Defendants' contention that she fails to allege an injury in fact.

The UCL prohibits any "unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. A plaintiff alleging a UCL claim must satisfy UCL standing requirements. *See Birdsong v. Apple, Inc.*, 590 F.3d 955, 960 n.4 (9th Cir. 2009). Private standing under the UCL is limited to "a person who has suffered injury in fact and has lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204; *see also Degelmann v. Advanced Med. Optics, Inc.*, 659 F.3d 835, 839 (9th Cir. 2011). "This provision requires [plaintiff] to show that she has lost money or property sufficient to constitute an injury in fact under Article III of the Constitution, and also requires a causal connection between defendant's alleged UCL violation and her injury in fact." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-05 (9th Cir. 2010) (quotation omitted). Several courts have found that a plaintiff has not suffered an injury in fact when the loss suffered is a result of a plaintiff's default on the loan. *See, e.g., Bernardi v. JPMorgan Chase Bank, N.A.*, No. 11-cv-4212, 2012 WL 2343679, at *5 (N.D. Cal. June 20, 2012); *Serna v. Bank of Am., N.A.*, No. 11-10598, 2012 WL 2030705, at *5 (C.D. Cal. June 4, 2012); *DeLeon v. Wells Fargo Bank, N.A.*, No. 10-cv-1390, 2011 WL 311376, at *7 (N.D. Cal. Jan. 28, 2011).

Plaintiff alleges that "[a]s a direct and proximate result of Defendants' unlawful,

unfair and fraudulent conduct alleged herein, Plaintiff is in imminent risk of losing the Subject Property to the wrong parties." (ECF No. 1 ¶ 285). Plaintiff alleges that "[t]he imminent threat and risk of foreclosure constitutes injury-in-fact because it is concrete and particularized as to the property in question and initiation of foreclosure proceedings puts Plaintiff's interest in the Subject Property sufficiently in jeopardy [] constituting an injury under § 17200." *Id.*

However, Plaintiff concedes that she has not made a payment on her loan since 2008. (ECF No. 1 ¶ 33). Therefore, the Complaint fails to adequately allege facts that support the claim that the imminent risk of foreclosure is a result of the alleged unlawful, unfair or fraudulent business acts or practices. Plaintiff's Complaint fails to adequately allege that Plaintiff has standing to assert a claim pursuant to the UCL. *See, e.g.*, *Bernardi*, 2012 WL 2343679, at *5. Plaintiff's nineteenth claim for violation of California Business and Professions Code § 17200 is dismissed.

## IV. Conclusion

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss Plaintiff's Complaint is GRANTED in its entirety. Plaintiff's Complaint is dismissed without prejudice. Plaintiff may file a motion to file a First Amended Complaint within thirty (30) days of the date this order is issued, accompanied by the proposed First Amended Complaint. If Plaintiff does not file a motion to file a First Amended Complaint within thirty (30) days of the date this order is issued, the Clerk of Court will be ordered to close the case.

DATED: *10/1/15*

WILLIAM Q. HAYES
United States District Judge