1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

LAURA D. SATERBAK,

CASE NO. 15cv956-WQH-BGS

11

Plaintiff,

ORDER

v.

12

NATIONAL DEFAULT SERVICING
CORPORATION; SELECT

13

PORTFOLIO SERVICING, INC.; J.P.
MORGAN CHASE BANK, N.A.;

14

SECURITIZED ASSET
MANAGEMENT II, INC.; and DOES

15

1 - 10,

16

Defendants.

17

HAYES, Judge:

18

       The matters before the Court are (1) the motion to dismiss the First Amended

19

Complaint filed by Defendants Select Portfolio Servicing, Inc. ("SPS") and National

20

Default Servicing Corporation ("NDSC") (ECF No. 25), and (2) the motion to dismiss

21

the First Amended Complaint filed by Defendant JPMorgan Chase Bank, N.A.

22

("Chase") (ECF No. 36).

23

**I. BACKGROUND**

24

       On April 29, 2015, Plaintiff Laura D. Saterbak initiated this action by filing a

25

Complaint against Defendants SPS and NDSC.  (ECF No. 1).

26

       On June 12, 2015, Defendants filed a motion to dismiss for failure to state a

27

claim.   (ECF No. 8).   On October 1, 2015, the Court issued an Order granting

28

Defendants' motion to dismiss.  (ECF No. 12).

On January 18, 2016, Plaintiff filed a First Amended Complaint ("FAC") against Defendants SPS, NDSC, and Chase.  (ECF No. 24).  In the FAC, Plaintiff alleges that Plaintiff's loan is unenforceable, and in the alternative, Plaintiff alleges that due to violations of various laws, Defendants' collection and foreclosure efforts must cease.

On February 10, 2016, Defendants SPS and NDSC filed a motion to dismiss.  (ECF No. 25).  On February 24, 2016, Plaintiff filed an opposition.  (ECF No. 30).  On March 1, 2016, Defendants SPS and NDSC filed a reply.  (ECF No. 31).

On April 8, 2016, Defendant Chase filed a motion to dismiss.  (ECF No. 36).  On May 10, 2016, Plaintiff filed an opposition.  (ECF No. 42).  On May 16, 2016, Defendant Chase filed a reply.  (ECF No. 43).

## II. ALLEGATIONS OF THE COMPLAINT

"4826 Mount Helix Dr., La Mesa, California . . . was acquired by way of a Grant Deed dated April 30, 2007."  (ECF No. 24 ¶ 12).  "Plaintiff entered a financial transaction whereas ABC represented to be the 'lender' but in fact, ABC is a nonexistent entity."  *Id.* ¶ 14.  "Plaintiff alleges that ABC was used to conceal the real creditor funding the loan and the MERS ID used was for American Home Mortgage Holding, Inc., a separate legal entity from American Home Mortgage and ABC . . . to conceal the true creditor . . . ."  *Id.* ¶ 18.  Plaintiff alleges that "said concealment resulted in what HUD classifies as a table funded loan."  *Id.*  Plaintiff alleges that "ABC, AHM, MERS and SAMI conspired to convert the federally regulated real transaction under UCC 9 to a risky security investment under UCC 8 without notice or consent by Plaintiff."  *Id.* ¶ 19.  Plaintiff alleges that Defendants Select Portfolio Servicing, Inc. ("SPS") and National Default Servicing Corporation ("NDSC") have sent correspondence to the Plaintiff though the United States Mails claiming that "they or their alleged principal are owed a sum certain, which is not correct, and which they know or should know is not correct," and that "they are collecting for an undisclosed principal."  *Id.* ¶¶ 23-24.  "Plaintiff believes and alleges the amount noted for collection or the amount stated that is needed to satisfy the foreclosure is incorrect, and discovery

is highly likely to show Defendant's alleged 'principal' has been paid (in full or in part) due to third party payers, and thus a full explanation or accounting is requested." *Id.* ¶ 23.  Plaintiff alleges that

> the actions of the Defendants jointly and severally continue to cause her personal economic harm, in addition to jeopardizing her business relationship with other third parties, slandering her credit histories with false and misrepresentative information; thus depriving her of an income or the quiet enjoyment of her property.  Said conduct of Defendants tortuously interferes with her business affairs and relations with third parties by and through their actions as debt collectors.

*Id.* ¶ 29.  Plaintiff alleges that "actions of the Defendants, jointly and severally, now constitute an imminent threat to the Plaintiff's possession of the property, which is the subject of this Complaint." *Id.* ¶ 31.

"Defendant NDSC . . . by and through its agent, and or under the discretion of Defendant SPS, sent correspondence and various Notices of Trustee's Sales to the Plaintiff, only to later postpone or completely cancel them." *Id.* ¶ 33.  "The Plaintiff alleges that directives given in this regard and other similar notices that NDSC sent Plaintiff each and every month through April 2015 are identical and possess inherent issues based on the lack of authority due to defendants: (a) Having done improper accounting relating to the actual sum due and owing; and (b) Failure to establish a full and verifiable chain of custody as to the note or Deed of Trust ('DOT') between Plaintiff and the 'real party in interest.'" *Id.*

"Defendants' (NDSC and SPS) activities are wrongful because it emanates from a void or voidable DOT . . . and Note . . . because ABC was not a valid, legal entity capable of contracting and MERS had no agency agreement with ABC and therefore was not capable of contracting as the beneficiary as nominee of ABC." *Id.* ¶ 34. Plaintiff alleges that "neither entity was capable of acting or holding property, and no matter what, were not authorized to do business in the State of California at the time." *Id.*  "It is impossible for SPS or any other party to appoint a Substitute Trustee or NDSC to act as such for a number of reasons:

> There are defects in the chain of title of the entity carrying the financing. . . . ABC and MERS were used to conceal the real property in interest.

The real party did not manifest itself or properly perfect its interest. Therefore the Deed of Trust recorded on June 1, 2007, as the underlying authority for this foreclosure is a nullity at the option of Plaintiff, which she elects to void with the assistance of the court.

Even if the above is not voided or set aside, the subsequent attempt to assign the DOT as an Assignment of Deed of Trust ("ADOT") . . . is fraught with error and cannot be deemed a valid transfer. It is believed the Defendants claim their authority from this improper assignment. This is an invalid and improper assignment because of the following: . . .

ABC as a nonexistent entity was not qualified to do business in California at that time. Plus, it was never a legitimate company, and even if it was, it ceased to be such and or became defunct or bankrupt before December 27, 2011. . . .

Chase has no interest in the debt, Note or Deed of Trust and is not in the chain of title. Further, MERS was obligated to take direction from its principal - the alleged lender. All evidence shows that Lender as ABC, a nonexistent entity to which MERS was incapable of taking direction . . . .

Chase does not nor has it ever held the debt or security interest; therefore Chase has no authority to be recording the ADOT as to Plaintiff's DOT.

MERS was not legally a nominee for ABC; MERS claim to have received "good and valuable consideration from ABC" is false. . . . MERS is a bankruptcy remote entity that is incapable of paying or receiving payments or "consideration" as identified in the ADOT created by Chase employees. . . . The ADOT is false and is slander against Plaintiff's title because ABC does not exist and MERS held on agency with authority.

The attempt to assign this to the Securitized trust (Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007-AR7) is invalid for the reason ABC does not exist; MERS had no agency to ABC.

The cut-off date for this trust is September 1, 2007. The date of this assignment is December 27, 2011, recorded December 17, 2012; OVER FOUR YEARS AFTER IT WAS EXECUTED AND FIVE YEARS AFTER IT WAS RECORDED . . . .

[T]here is no clear and convincing evidence of who the actual creditor is; only evidence that it was not ABC and MERS held no authority to assign beneficial interest in the security. . . .

*Id.* ¶ 36. "It is alleged that the real party in interest has not authorized the commencement of foreclosure proceedings herein." *Id.* ¶ 37.

> Defendants used a ruse to lure Plaintiff into thinking there was a way to modify the (alleged) loan which would allow Plaintiff to save her property without filing legal action. Said ruse occupied a lot of time and money for nothing. It caused Plaintiff emotional stress waiting for naught. Defendants never had any intention of modifying the alleged loan or even had the ability to modify said loan.

*Id.* ¶¶ 37, 40.

**Basis for Action Against Defendant SPS**

Plaintiff alleges a separate basis for action against Defendant SPS. Plaintiff alleges that

> Defendant SPS sent the Plaintiff a 'Validation of Debt Notice,' dated August 12, 2013, wherein Defendant SPS claims that it is collecting payments for Wilmington Trust Company, successor Trustee to Citibank, N.A., as Trustee for the benefit of registered holders of Structured Asset Mortgage Investments II Trust ('SAMI II Trust 2007-AR7k'), Mortgage Pass-Through Certificates Seris 2007-AR7.

*Id.* ¶ 41. "Plaintiff believes and alleges that the SAMI II 2007-AR7 Trust is regulated by a [Pooling Servicing Agreement ("PSA")] . . . . Specifically, there was a Closing Date stated in this trust's PSA of September 18, 2007. . . . Here, this date was not met." *Id.* ¶ 42.

> On December 17, 2012 at 8:00 a.m., over five (5) years AFTER the closing date of the Trust, the Plaintiff maintains and alleges that employees of Nationwide Title Clearing, Inc. . . . caused to be drafted and recorded a 'Corporate Assignment of Deed of Trust' on behalf of a defunct (and nonexistent) Lender ABC . . . .
>
> ABC never had any authority to contract in the State of California so any liaison involving MERSCORP HOLDINGS, Inc. as the parent corporation of MERS as ABC's nominee, could not exist and therefore any purported transfer of this (alleged) loan to Citibank as Trustee for SAMI II 2007-AR7 could not have properly taken place. . . .
>
> [T]his loan became an asset of American Home Mortgage or one of its affiliated companies above mentioned; but said ownership was the result of table funding and deceit. AHM and its affiliated companies went bankrupt, and when it did, any and all arrangements it had with MERS in association with this loan were rendered void and no longer effective.

*Id.* ¶¶ 43-44, 46.

Plaintiff's Complaint alleges twenty-three causes of action: (1) invalidity of contracts for violation of Civil Codes §§ 1549, 1550, 1558, 1598 against all Defendants; (2) Cancellation of Instruments against all Defendants; (3) Rescission based upon

voidable contract against all Defendants; (4) Declaratory Relief against all Defendants; (5) Statutory violations under FDCPA against Defendant SPS; (6) Statutory violations under FDCPA against Defendant NDSC; (7) Fraud and Deceit against all Defendants; (8) Interference with Contract and Prospective Business Relations against all Defendants; (9) violation of Deceptive Trade Practices Act against Defendant SPS; (10) Injunctive or Equitable Relief against all Defendants; (11) violation of the California Homeowner's Bill of Rights against all Defendants; (12) Regulation X of RESPA and Regulation Z of TILA violation against Defendant SPS; (13) violation of 12 C.F.R. § 1024.36(d)(2)(B) against Defendant SPS; (14) violation of 12 C.F.R. § 1024.36(d)(a)(i)-(ii) against Defendant SPS; (15) violation of 12 C.F.R. § 1026.36(c)(3) against Defendant SPS; (16) violation of 12 C.F.R. § 1026.3 against Defendant SPS; (17) violation of 12 C.F.R. § 1024.35(e)(1)(A) against Defendant SPS; (18) Negligence against all Defendants; (19) violations of Business and Professions Code § 17200 against all Defendants; (20) Demand for Accounting against all Defendants; (21) violation of 11 U.S.C. § 1691(d)(1) against Defendant SPS; (22) RICO and Civil Conspiracy against all Defendants; (23) Slander of Title against all Defendants.

## III. JUDICIAL NOTICE

"As a general rule, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). However, there are "two exceptions to the requirement that consideration of extrinsic evidence converts a 12(b)(6) motion to a summary judgment motion." *Id*. First, Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it . . . is generally known within the trial court's territorial jurisdiction; or . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed R. Evid. 201(b). "[U]nder Fed.R.Evid. 201, a court may take judicial notice of 'matters of public record.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986)).

1  Second, under the doctrine of incorporation by reference, "[a] district court ruling on

2  a motion to dismiss may consider documents whose contents are alleged in a complaint

3  and whose authenticity no party questions, but which are not physically attached to the

4  plaintiff's pleadings." *Parrino v. FHP, Inc*., 146 F.3d 699, 705 (9th Cir. 1998) (internal

5  quotation marks omitted).

6  Defendants SPS and NDSC request judicial notice of the publicly recorded Deed

7  of Trust related to this action.  Defendant Chase requests judicial notice of the publicly

8  recorded Deed of Trust, the Notice of Default and Election to Sell Under Deed of Trust,

9  the Corporate Assignment of Deed of Trust, and the Notice of Trustee's Sale related to

10  this action.  The Court takes judicial notice of these matters of public record which are

11  not subject to reasonable dispute over their authenticity.  *See* Fed R. Evid. 201(b); *Lee*,

12  250 F.3d at 690.

13  **IV. LEGAL STANDARD**

14  Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state

15  a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Federal Rule of

16  Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must

17  contain . . . a short and plain statement of the claim showing that the pleader is entitled

18  to relief."  Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where

19  the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable

20  legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

22  requires more than labels and conclusions, and a formulaic recitation of the elements

23  of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

24  (quoting Fed. R. Civ. P. 8(a)).  When considering a motion to dismiss, a court must

25  accept as true all "well-pleaded factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662,

26  679 (2009).  However, a court is not "required to accept as true allegations that are

27  merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

28  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "In sum, for a

complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation marks omitted).

## V. DISCUSSION

### Res Judicata as to Defendant Chase

Defendant Chase contends that the doctrine of res judicata bars Plaintiff's FAC against Chase.  Chase contends that claim preclusion applies because Plaintiff brought an action against Chase in San Diego Superior Court based on the same loan, the same Deed of Trust, and same Assignment recorded against the same property that form the basis of Plaintiff's FAC.  Defendant Chase contends that the instant action contains allegations related to the allegedly void assignment that are substantially similar to the allegations in the state court action.  Defendants contend that Plaintiff's FAC implicates the same primary rights as the state court action despite asserting an additional thirteen causes of action against Chase.  Defendant asserts that the state court action was dismissed with prejudice and the Court of Appeal affirmed the judgment of dismissal.

Plaintiff contends that res judicata is not applicable.  Plaintiff contends that res judicata does not bar the instant action against Chase because Plaintiff has alleged that the deed of trust is unenforceable due to Defendant's tortious conduct in this case. Plaintiff contends that in the state case, Plaintiff alleged that Defendants could not claim ownership over the debt based on the assignment Chase created.  (ECF No. 41 at 12).

The Court takes judicial notice of the opinion of the California Court of Appeal in the state action filed by Plaintiff, *Saterbak v. JPMorgan Chase Bank*, N.A., 245 Cal.App.4th 808 (2016).[1]  In the state court action, Plaintiff asserted a claim for cancellation of written instrument and requested declaratory relief. The Superior Court of San Diego County granted Defendant Chase's demurrer and denied leave to amend,

---

[1] Defendant Chase references the case as Exhibit E in its request for judicial notice (ECF No. 37), however, no Exhibit E is attached.

concluding that there was no possibility Plaintiff could remedy the standing deficiencies of her complaint.  The Superior Court entered judgment for Chase in August 2014 and Plaintiff timely appealed.  The Court of Appeal for the Fourth Appellate District affirmed the judgment of the Superior Court, concluding that Saterbak lacked standing to challenge the assignment of the Deed of Trust.

The opinion of the Court of Appeal shows that both the state case and the instant action are based on the same underling events and documents.  Specifically, in the state case

> Saterbak claim[ed] the assignment of the deed of trust (DOT) to her home by Mortgage Electronic Registration Systems, Inc. (MERS) to Structured Asset Mortgage Investment II Trust 2007-AR7 Mortgage Pass-Through Certificates 2007 AR7 (20007-AR7 trust or Defendant) was invalid. Arguing the assignment occurred after the closing date for the 2007-AR7 trust, and that the signature on the instrument was forged or robo-signed, she seeks to cancel the assignment and obtain declaratory relief.

*Saterbak*, 245 Cal.App.4th at 811.  In the instant action, Plaintiff asserts claims against Chase for: invalidity of contracts, cancellation of instruments, rescission based on voidable contract, declaratory relief, fraud and deceit, interference with contract and prospective business relations, injunctive relief, violation of the California Homeowner's Bill of Rights, negligence, violations of California Business and Professions Code § 17200, accounting, RICO and civil conspiracy, and slander of title

The Full Faith and Credit Act, 28 U.S.C. § 1738, requires that a federal court "give the same preclusive effect to a state court judgment as another court of that State would give."  *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986).  Accordingly, the Court applies California law to determine if res judicata bars Plaintiff's current action against Defendant Chase.  *See Palomar Mobilehome Park Ass'n v. City of San Marcos*, 989 F.2d 362, 364 (9th Cir. 1993).  "In California, a judgment entered after the sustaining of a general demurrer is a judgment on the merits, and, to the extent that it adjudicates that the facts alleged do not establish a cause of action, it will bar a second action on the same facts."  *Id.* (citing *Crowley v. Modern Faucet Mfg. Co.*, 282 P.2d 33, 34 (Cal. 1955) (indicating that if facts alleged in second

action are substantially the same as those in the first action, which has been dismissed after the sustaining of a general demurrer, the second action is barred by the doctrine of res judicata)). "California, as most states, recognizes that the doctrine of res judicata will bar not only claims actually litigated in a prior proceeding, but also claims that could have been litigated." *Id.* "It is well settled that res judicata bars subsequent actions on all grounds for recovery that could have been asserted, whether they were or not." *Id.* at 365.

"While it is true that res judicata will only bar relitigation of the same cause of action by the same parties, the question of whether a cause of action is identical for purposes of res judicata depends not on the legal theory or label used, but on the 'primary right' sought to be protected in the two actions." *Johnson v. American Airlines, Inc.*, 157 Cal. App. 3d 427, 432 (1984). "[T]he 'cause of action' is based on the harm suffered, as opposed to the particular theory asserted by the litigant." *Slater v. Blackwood*, 15 Cal.3d 791, 795 (1975) (citing *Peiser v. Mettler*, 50 Cal.2d 594, 605 (1958)). "Even where there are multiple legal theories upon which recovery might be predicated, one injury gives rise to only one claim for relief. Hence, a judgment for the defendant is a bar to a subsequent action by the plaintiff based on the same injury to the same right, even though he presents a different Legal ground for relief." *Id.* "That several remedies may be available for violation of one 'primary right' does not create an additional 'cause of action.' However, it is also true that a given set of facts may give rise to the violation of more than one 'primary right,' thus giving a plaintiff the potential of two separate lawsuits against a single defendant." *Sawyer v. First City Financial Corp.*, 124 Cal. App. 3d 390, 399 (1981). In "deciding how many 'primary rights' derive from a single transaction," courts look to the source of the right and the harm suffered. *Sawyer v. First City Financial Corp.*, 124 Cal. App. 3d 390, 399 (1981). Where federal and state rights overlap in their purpose, they do not create two primary rights and res judicata should bar a second suit on the same facts. *See id.* at 400 (citing *Mattson v. City of Costa Mesa*, 106 Cal. App. 3d 441 (1980)).

Plaintiff's state court action and the instant action are premised on many of the same factual allegations.  In both actions Plaintiff has asserted claims for cancellation of instruments and has sought declaratory relief based on allegations that misconduct by Chase renders the Deed of Trust or the assignment of the Deed of Trust void.  While Plaintiff asserts additional claims and legal theories in the current action, the underlying remedy Plaintiff seeks is the same—a court order protecting Plaintiff's home from foreclosure by invalidating the instruments through which Plaintiff's mortgage loan originated and was transferred.  Although Plaintiff contends that the instant action is distinguishable from the state court action because it asserts new allegations of tortious conduct, Plaintiff's claims in the state court action were based, in part, on Chase's alleged tortious forgery of the assignment of the Deed of Trust.  The theory of harm to Plaintiff alleged in both actions appears to be the same.  Plaintiff was not precluded in the state action from asserting any of the thirteen claims that she now asserts against Chase in this action.  The state court issued a judgment against Plaintiff, which was affirmed by the state court of appeal.  The Court concludes that Plaintiff has asserted the same claims in both the state and instant action alleging violation of the same primary right, there has been a final judgment on the merits in the state action, and the parties in the instant action are identical to the parties in the state action.  The Court concludes that res judicata applies to bar all of Plaintiff's claims against Defendant Chase.[2]

**Standing to Challenge Assignment**

Plaintiff relies on the recent California Supreme Court ruling, *Yvanova v. New Century Mortg. Corp.*, 62 Cal.4th 919 (2016) to support her contention that she has standing to challenge the assignment of her loan.  Plaintiff contends that the cases cited in the Court's October 1, 2015 Order were disapproved of by the court in *Yvanova*,

---

[2] While the Court concludes that Plaintiff's claims against Defendant Chase are barred by res judicata, the Court will address Defendants' alternative arguments as to why Plaintiff's claims should be dismissed.

including *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497 (2013).

Defendants SPS and NDSC contend that the Plaintiff fails to acknowledge that *Yvanova* is limited to circumstances where a plaintiff is challenging an assignment after a nonjudicial foreclosure has occurred.

The *Yvanova* court stated,

> Our ruling in this case is a narrow one. We hold only that a borrower who has suffered a nonjudicial foreclosure does not lack standing to sue for wrongful foreclosure based on an allegedly void assignment merely because she was in default on the loan and was not a party to the challenged assignment. We do not hold or suggest that a borrower may attempt to preempt a threatened nonjudicial foreclosure by a suit questioning the foreclosing party's right to proceed.

62 Cal.4th at 924. In *Yvanova*, the court stated that "[t]his action of Jenkins, disallowing the use of a lawsuit to preempt a nonjudicial foreclosure, is not within the scope of our review . . . . We do not address the distinct question of whether, or under what circumstances, a borrower may bring an action for injunctive or declaratory relief to prevent a foreclosure from going forward." *Id.* at 934. The California Supreme Court's decision in *Yvanova* does not impact the Court's analysis in this case, where the Plaintiff is challenging an assignment of a deed in order to prevent a nonjudicial foreclosure that has not yet occurred.[3]

The Court's prior Order relied on *Jenkins* to conclude that a borrower who was not a party to the assignment cannot preempt a nonjudicial foreclosure. *Jenkins*' authority on this point remains good law. Plaintiff brings this action before a non-judicial foreclosure has occurred. On the same grounds discussed in the Court's Order dismissing the original Complaint, the Court finds that Plaintiff lacks standing to

---

[3] Plaintiff also cites to *Yvanova* to support her claim of standing on the grounds that the loan at issue was void, not merely voidable, because the lender, American Broker's Conduit ("ABC") was not a valid entity capable of forming a valid, legal contract. Where a party to a contract lacks capacity, the contract is voidable. *Person v. Superior Court*, 202 Cal. App. 4th 1333, 1338 (2012). *Yvanova* issued a narrow ruling that applies only to circumstances where a plaintiff can challenge a void assignment; the court declined to determine the circumstances in which a plaintiff may challenge a voidable assignment. Plaintiff's attempt to apply *Yvanova* to this case based on the allegation that loan was void fails because Plaintiff's allegations that ABC had no capacity to contract supports an allegation that the loan was voidable, not void.

1  challenge the assignment of the Deed of Trust because a foreclosure has not yet
2  occurred.  *See* ECF No. 12 at 10.

3  **Statutes of Limitations for First, Second, and Third Causes of Action**

4      Defendants contend that Plaintiff's first, second, and third causes of action are
5  time-barred because Plaintiff disputed the debt in October 2008 and alleges the cause
6  of action for invalidity of contracts for the first time in January 2016 and the causes of
7  action for cancellation of instruments and rescission for the first time in April 2015.
8  Plaintiff contends that her claims are timely because Defendants' continual threats and
9  actions are ongoing, therefore the statute of limitations has not begun to accrue.

10      "The limitations period, the period in which a plaintiff must bring suit or be
11  barred, runs from the moment a claim accrues . . . . [O]rdinarily, the statute of
12  limitations runs from the occurrence of the last element essential to the cause of action."
13  *Aryeh v. Canon Business Solutions, Inc.*, 292 P.3d 871, 875 (Cal. 2013) (quotations
14  omitted).  "To align the actual application of the limitations defense more closely with
15  the policy goals animating it, the courts and the Legislature have over time developed
16  a handful of equitable exceptions to and modifications of the usual rules governing
17  limitations periods."  *Id.*  "The most important of these doctrines, the discovery rule,
18  where applicable, postpones accrual of a cause of action until the plaintiff discovers, or
19  has reason to discover, the cause of action."  *Id.* (quotations omitted).  Under another
20  exception, "the theory of continuous accrual, a series of wrongs or injuries may be
21  viewed as each triggering its own limitations period, such that a suit for relief may be
22  partially time-barred as to older events but timely as to those within the applicable
23  limitations period."  *Id.*  The continuing violation doctrine is meant to serve equitable
24  purposes when "injuries are the product of a series of small harms, any one of which
25  may not be actionable on its own," or when the plaintiff has alleged "a pattern of
26  reasonably frequent and similar acts . . . justifying treating the acts as an indivisible
27  course of conduct actionable in its entirety, notwithstanding that the conduct occurred
28  partially outside and partially inside the limitations period."  *Id.* at 879.  The burden is

1   on the plaintiff to allege that his or her claims fall within the applicable statute of
2   limitations or survive based on an exception to limitations period. *See id.* at 879.

3   **A. First Cause of Action: Invalidity of Contract**

4   "Ordinarily a suit to set aside and cancel a void instrument is governed by Sec.
5   343 of the [California] Code of Civil Procedure." *Zakaessian v. Zakaessian*, 70 Cal.
6   App. 2d 721, 725 (1945).  Section 343 of the California Code of Civil Procedure
7   requires a plaintiff to bring suit within four years from the date the cause of action
8   accrues.  Plaintiff does not contest that she began contesting the validity of the loan in
9   October 2008.  Plaintiff's claims that a contract was invalid based on the incapacity of
10  ABC to contract and that there was no meeting of the minds prior to contract formation
11  do not support Plaintiff's theory that the claim has not begun to accrue and the statute
12  of limitations has not begun to run yet.  The contract formation occurred in 2007 and
13  the four-year statute of limitations began to run at that time.  Plaintiff does not allege
14  facts to support the application of the delayed discovery doctrine because she does not
15  allege that she was unable to discover her claims until recently, despite reasonable
16  diligence.  Plaintiff appears to have begun questioning the validity of her debt in as
17  early as October 2008.  Plaintiff's claim for invalidity of contracts is barred by the
18  statute of limitations. *See* Cal. Code Civ. P. § 343.  The first cause of action for
19  invalidity of contracts is dismissed with prejudice.

20  **B. Second Cause of Action: Cancellation of Instruments**

21  The claim for cancellation of instruments is based on allegations that the Note
22  and Deed of Trust dated May 24, 2007 and the assignment of the Deed of Trust dated
23  December 27, 2011 should be cancelled because ABC did not have capacity to contract,
24  because Plaintiff did not receive any notice of the sale of her debt, and because there are
25  problems in the chain of title.  The statute of limitations for the claim to cancel the Note
26  and Deed of Trust began to run in May 2007.  Plaintiff first contested the validity of the
27  loan in October 2008; therefore, the statute of limitations has run on the claim to cancel
28  the Note and Deed of Trust.  Plaintiff has not alleged sufficient facts to support an

inference that an exception to the statute of limitations applies.

To the extent that Plaintiff's claim for cancellation of instruments is based on the assignment of the Deed of Trust, it is not barred by the statute of limitations.  However, the Court has concluded that Plaintiff lacks standing to challenge the assignment of the Deed of Trust.  The Court concluded in the Order dismissing the original Complaint that MERS has authority to assign the loan pursuant to the Deed of Trust.  (ECF No. 12 at 9).  The Court further concluded that

> Plaintiff was not a party to the assignment of the deed of trust, and her rights were not affected by it.  Plaintiff's obligations under the Deed of Trust were only affected by the assignment of the Deed of Trust insofar as they altered the party to whom the Plaintiff was obliged.  Therefore, Plaintiff does not have standing to challenge the securitization of her loan or any subsequent assignment of the Deed of Trust.

*Id.* at 10.  Because Plaintiff's claim to cancel the Deed of Trust is barred by the statute of limitations and the Court has found that Plaintiff lacks standing to challenge the assignment of the Deed of Trust, Plaintiff has failed to allege a cause of action for cancellation of instruments.  Plaintiff cannot cure the defects of this claim by amending the FAC.  Plaintiff's second cause of action for cancellation of instruments is dismissed with prejudice.

### C. Third Cause of Action: Rescission Based on Voidable Contract

A claim for rescission is barred by the four-year statute of limitations governing rescission of a written contract.  Cal. Code Civ. P. § 337.  Plaintiff executed the Note and Deed of Trust in May 2007 and began contesting the validity of the contract in October 2008.  Plaintiff has not alleged sufficient facts to support a finding that an exception to the statute of limitations applies.  Plaintiff's claim for rescission is barred by the statute of limitations.  The third cause of action for rescission is dismissed with prejudice.

### Fifth and Sixth Causes of Action: FDCPA

Plaintiff alleges claims for violation of the FDCPA against Defendants SPS and NDSC.  The only new allegation regarding the FDCPA claims in the FAC is that Defendants used "debt collection language in their correspondence to Plaintiff,

language that is specifically addressed in the Fair Debt Collection Practices Act." FAC ¶ 25.

Many courts have held that including language in letters sent to consumers indicating that the sender is "a debt collector attempting to collect a debt" does not raise an inference that the sender is a debt collector attempting to collect a debt under the FDCPA. *See Hernandez v. Green Tree Servicing* LLC, No. 2:14-cv-1438, 2014 WL 2586932, at *3 (C.D. Cal. June 9, 2014) ("Plaintiff responds that he has received a letter from Green Tree concerning his loan that included the disclaimer: "This communication is from a debt collector. It is an attempt to collect a debt' . . . . This argument fails: whether Green Tree is a debt collector under the FDCPA does not turn on whether Green Tree holds itself out as a debt collector"); *Golliday v. Chase Home Finance, LLC*, 761 F. Supp. 2d 629, 636 (W.D. Mich. 2011) ("The fact that FDCPA disclaimers were sent in connection with a non-judicial foreclosure proceeding does not automatically transform the defendants into 'debt collectors.' . . . [T]he use of the disclaimer . . . is insufficient to raise a triable issue of fact on the question of the firm's status as a debt collector."); *Stamper v. Wilson & Assoc., P.L.L.C.*, No. 3:09-cv-270, 2010 WL 1408585, at *8-9 (E.D. Tenn. Mar. 312, 2010) ("it is perfectly reasonable for [defendant law firm] to err on the side of caution by including FDCPA disclaimers . . . . if they did not include FDCPA disclaimers, they would be opening themselves up to potential liabilty under 15 U.S.C. § 1692f(6)").

In the Order dismissing the original Complaint, the Court concluded that allegations against Defendant NDSC do not support an inference that Defendant NDSC is a "debt collector" pursuant to the FDCPA. *See* ECF No. 12 at 13. The Court concludes that whether Defendants used debt collection language in their correspondence to Plaintiff does not impact the Court's conclusion that the foreclosure-related correspondence to Plaintiff did not constitute debt collection. Plaintiff's FDCPA claims against Defendant NDSC are dismissed.

In the Order dismissing the original Complaint, the Court dismissed Plaintiff's

claims that Defendant SPS violated 15 U.S.C. §§ 1692e(5) and 1692f(6)(A) because Plaintiff lacked standing to challenge the securitization of her loan or any subsequent assignment of the Deed of Trust. *Id.* at 14-15.  The Court also dismissed Plaintiff's claim that Defendant SPS violated 15 U.S.C. § 1692e(2)(A) because Plaintiff failed to allege sufficient facts to support an inference that SPS "made a false representation of the character, amount, or legal status of any debt." *Id.* at 15.  The FDCPA claims against Defendant SPS are dismissed for the same reasons discussed in the prior Order. *See* ECF No. 12 at 14-15.

**Seventh Cause of Action: Fraud and Deceit**

Defendants SPS and NDSC contend that Plaintiff's allegation that Defendants misrepresented something to her is conclusory because Plaintiff does not provide facts to show that her efforts to modify the loan constitutes detrimental reliance and Plaintiff does not allege facts to show she was harmed.  Defendants SPS and NDSC contend that Plaintiff has failed to allege fraud with the requisite specificity.  Defendant Chase contends that the FAC does not allege facts to support a claim of fraud against Chase.

Plaintiff contends that the FAC contains factual allegations of inconsistent representations about who the lender is, but Plaintiff needs additional information before she can identify specific individuals and policies that established the practice of table funding loans through ABC.  Plaintiff contends that the allegations in the FAC that Chase was pretending to be MERS to the detriment of Plaintiff support a fraud claim.

Under California law, the elements of a claim for fraud are: "(1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation, i.e., scienter; (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages." *Cadlo v. Owens-Illinois, Inc.*, 125 Cal. App. 4th 513, 519 (2004) (citing *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003)).  Claims sounding in fraud or mistake must comply with the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which

requires that a complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[O]ne purpose of Rule 9(b)'s requirement that plaintiffs plead fraud with particularity is to prevent the filing of a complaint as a pretext for the discovery of unknown wrongs." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1985) (quotations omitted). Rule 9(b) requires that "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (citing *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Rule 9(b) "requires . . . an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quotation omitted); *see also Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (averments of fraud must be accompanied by "the who, what, when, where, and how of the misconduct charged") (quotation omitted).

The FAC alleges that

> DOE DEFENDANT (real creditor) knew ABC was being used to conceal its identity and willfully with intention did encourage its concealment. . . . [T]he real creditor sought to conceal its identity because it intended to convey the Note from a secured mortgage transaction to a security investment and sought to conceal its intent from Plaintiff. As a result, Plaintiff was induced into a table funded loan in which the parties and nature of the transaction were concealed; and further concealment introduced other 3rd parties with adverse interest to Plaintiff's, including but not limited to Chase, NDSC, SPS, and other Doe Defendants. . . . [T]he true identity of DOE DEFENDANT and individuals [is] specialized knowledge held by Doe Defendant. . . . Defendants misrepresented to Plaintiff that they were the real party in interest.

FAC ¶¶ 169-73.

The allegations of fraud in the FAC do not sufficiently allege an injury. The FAC does not allege that transfers of the loan affected Plaintiff's obligations under the loan nor does the FAC support an inference that Plaintiff has standing to challenge the securitization or assignment of the loan. Additionally, the FAC does not allege facts, including the "specific content of the false representations as well as the identities of the parties to the misrepresentations," that are sufficient to support an inference of

fraud. *See Swartz*, 476 F.3d at 764. The allegations of the FAC lack the specificity to meet the requirements of Rule 9(b). Plaintiff cannot use her claim of fraud "as a pretext for the discovery of unknown wrongs" because her claim is not pleaded with particularity. *See Neubronner*, 6 F.3d at 671. Plaintiff's cause of action for fraud and deceit against all Defendants is dismissed.

**Eighth Cause of Action: Interference with Contract**

Plaintiff's eighth cause of action alleges interference with contract and prospective business relations. Defendants SPS and NDSC contend that Plaintiff cannot show improper conduct by the Defendants and that Plaintiff concedes that Defendants had a valid reason to foreclose by admitting she has not tendered a loan payment since 2008. Defendant Chase contends that Plaintiff's allegations regarding interference with contract do not contain any facts showing wrongdoing by Chase. Chase contends that Plaintiff does not allege facts to support any of the elements of interference with contract and prospective business relations.

Plaintiff contends that the Complaint alleges that Defendants have been acting in their own interest to the detriment of both Plaintiff and the lender, and as such, are liable for their interference. Plaintiff contends that Chase pretending to be MERS has interfered with Plaintiff's ability to identify the real lender.

To state a claim for intentional interference with prospective economic advantage, the plaintiff must allege: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendant." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1153 (2003). To allege interference with contract, the plaintiff "must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof." *Augustine*

*v. Trucco*, 124 Cal. App. 2d 229, 246 (1954).

Plaintiff alleges that "Defendants by doing what they are doing (engaging in foreclosure activity against Plaintiff . . .) intend to and are disrupting and interfering with the relationship and contracts of the true lender and the legitimate assignee, or holder of the note, as well as the vendors Plaintiff deals with as the homeowner . . . ." FAC ¶ 183. The facts alleged do not support an inference that Plaintiff's economic injury in having her home foreclosed was caused by tortious conduct of the Defendants rather than the conduct of Plaintiff in not making payments on her mortgage. The FAC contains generalized allegations which fail to state facts sufficient to support a cause of action against any Defendant for interference with contract and prospective business relations. Plaintiff's eighth cause of action is dismissed.

**Ninth Cause of Action: Violation of Deceptive Trade Practices Act**

Plaintiff's allegations to support her claim against Defendant SPS for violation of the Deceptive Trade Practices Act are identical to the allegations made in the original Complaint. The Court dismisses the claim under the Deceptive Trade Practices Act, Utah statute § 13-11a-3 because, as the Court stated in its prior Order, the security instrument at issue in this action is governed by the law of California. (ECF No. 12 at 16).

**Eleventh Cause of Action: Homeowner's Bill of Rights**

Plaintiff's allegations to support her claim against all Defendants for violation of the Homeowner's Bill of Rights are identical to the allegations made in the original Complaint. In the response to Chase's motion to dismiss, Plaintiff requests that the Court dismiss the claim under the California Homeowner Bill of Rights against Defendant Chase and allow Plaintiff to "re-allege claims as appropriate" when "the basis of Chase's involvement is further revealed." (ECF No. 42 at 19).

The Court dismisses the claim under the Homeowner's Bill of Rights against Defendant SPS and NDSC for the same reasons discussed in the Court's prior Order. (ECF No. 12 at 16). Plaintiff's claim under the Homeowner's Bill of Rights against

Defendant Chase is dismissed pursuant to Plaintiff's request and based on Plaintiff's failure to allege sufficient facts to state a claim against Defendant Chase. To the extent that Plaintiff does not currently possess sufficient facts to state a negligence claim against Defendant Chase, nine years after the Deed of Trust was executed and nearly five years after the assignment of the Deed of Trust was executed, the Court concludes that the delay that would be caused by allowing Plaintiff to re-file her claim against Chase if additional facts are "further revealed to Plaintiff" would prejudice Defendant Chase. Plaintiff has had the opportunity to amend her allegations as to Defendants SPS and NDSC and admits that she does not possess sufficient facts to state a negligence claim for violation of the Homeowner's Bill of Rights against Defendant Chase. The Court dismisses the claim for violation of the Homeowner's Bill of Rights against all Defendants with prejudice.

**Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth   Causes of Action**

Plaintiff's twelfth (Regulation X/Regulation Z of TILA), thirteenth (12 C.F.R. § 1024.36(d)(2)(B)), fourteenth 12 C.F.R. (§ 1024.36(d)(a)(i)(ii)), fifteenth (12 C.F.R. § 1024.36(c)(3)), sixteenth (12 C.F.R. § 1026.3), and seventeenth (12 C.F.R. § 1024.35(e)(1)(A)) causes of action against Defendant SPS in the FAC and the allegations in support of the TILA and RESPA claims are identical to the allegations of the original Complaint. The Court dismisses these claims for the same reasons discussed in the Court's Order dismissing the original Complaint; Plaintiff fails to provide facts to show that Defendant SPS did not comply with RESPA or that Defendants SPS and NDSC are lenders to whom TILA applies. *See* ECF No. 12 at 28-30.

**Eighteenth Cause of Action for Negligence**

Plaintiff's eighteenth cause of action alleges negligence against all Defendants. The FAC alleges facts identical to the facts alleged in the Original Complaint. The Court dismisses the negligence claim against Defendants SPS and NDSC for the same

reasons discussed in the Court's Order dismissing the Original Complaint. Specifically, the Court finds that Plaintiff's allegations are not sufficient to show that Defendants SPS and NDSC owed a duty of care. Plaintiff's claim of negligence against Defendants SPS and NDSC is dismissed.

Defendant Chase contends that the Complaint does not allege any wrongdoing by Chase and does not allege sufficient facts to support an inference that Chase owed a duty of care to Plaintiff. Plaintiff contends that Chase has concealed its involvement with the loan and Chase's involvement is unclear. Plaintiff requests the Court to dismiss the negligence claim against Chase without prejudice and allow Plaintiff to re-allege claims against Chase when Chase's involvement is revealed.

The negligence claim against Defendant Chase is dismissed pursuant to Plaintiff's request. To the extent that Plaintiff does not currently possess sufficient facts to state a negligence claim against Defendant Chase, nine years after the Deed of Trust was executed and nearly five years after the assignment of the Deed of Trust was executed, the Court concludes that the delay that would be caused by allowing Plaintiff to re-file her claim against Chase if additional facts are "further revealed to Plaintiff" would prejudice Defendant Chase. Plaintiff has had the opportunity to amend her allegations as to Defendants SPS and NDSC and admits that she does not possess sufficient facts to state a negligence claim against Defendant Chase. The Court dismisses the negligence claim against all Defendants with prejudice.

**Nineteenth Cause of Action: Violation of Business and Professions Code § 17200**

In the Court's Order dismissing the original Complaint, the Court stated,

Plaintiff concedes that she has not made a payment on her loan since 2008. . . . Therefore, the Complaint fails to adequately allege facts that support the claim that the imminent risk of foreclosure is a result of the alleged unlawful, unfair or fraudulent business practices. Plaintiff's Complaint fails to adequately allege that Plaintiff has standing to assert a claim pursuant to the UCL.

(ECF No. 12 at 32). The FAC adds allegations regarding Defendants engaging in table funding the mortgage loan, concealing the real lender, and concealing the true nature of the financial transaction. FAC ¶ 302. The FAC adds an allegation that Defendants

created and  notarized instruments in land records in violation of California law.  *Id.* The allegations added to the FAC do not remedy Plaintiff's lack of standing to pursue a claim under California Business and Professions Code § 17200.  The Court dismisses Plaintiff's claim under California Business and Professions Code § 17200 for the same reasons discussed in the Court's prior Order.  *See* ECF No. 12 at 32.

**Twentieth Cause of Action: Accounting**

Plaintiffs twentieth claim requests an accounting against all Defendants.  The allegations in support of the accounting claim are identical to the allegations of the original Complaint, with the addition of the following: "It is common sense that if someone maintains a debt is owed to them that they provide an accounting to the party from whom they are demanded money."  FAC ¶ 313.  The Court stated in its Order dismissing the original Complaint,

> "A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting." *Tamburri v. Suntrust Mortg., Inc.*, No. C-11-2899-EMC, 2011 WL 6294472, at *17 (N.D. Cal. Dec. 15, 2011) (quoting *Teselle v. McLoughlin*, 173 Cal.App.4th 156, 179 (2009). "[A] loan transaction . . . a loan transaction is at arm's length and there is no fiduciary relationship between the borrower and the lender." *Oaks Mgmt. Corp. v. Super. Ct.*, 145 Cal. App. 4th 453, 466 (2006).

(ECF No. 12 at 23).  Plaintiffs FAC fails to allege facts demonstrating that a relationship exists between Plaintiff and any of the Defendants that requires an accounting or that some balance is due to Plaintiff that can only be determined by an accounting. *See Tamburri*, 2011 WL 6294472, at *17; *Teselle*, 173 Cal. App. 4th at 179. Plaintiff's accounting claim is dismissed.

**Twenty-First Cause of Action: Violation of 11 U.S.C. § 1691(d)(1)**

Plaintiff's twenty-first cause of action alleges a violation of the Equal Credit Opportunity Act, 11 U.S.C. § 1691(d)(1), against Defendant SPS.  The allegations in support of the Equal Credit Opportunity Act claim in the FAC are identical to the allegations of the original Complaint.  The Court's Order dismissing the original Complaint concluded, "Plaintiff's Complaint fails to allege that she is a member of a protected class, or that she was denied credit despite being qualified.  Plaintiff

specifically alleges that her loan modification application is still pending . . . . The Court concludes that Plaintiff fails to plausibly allege facts under the Equal Credit Opportunity Act." (ECF No. 12 at 25).  The Court dismisses the claim under the Equal Credit Opportunity Act for the same reasons discussed in the Court's Order dismissing the Original Complaint.

**Twenty-Second Cause of Action: RICO and Civil Conspiracy**

Defendants SPS and NDSC contend that Plaintiff's RICO claim is barred by a four-year statute of limitations.  Defendants SPS and NDSC contend that Plaintiff has alleged only legal conclusions, not specific facts to show an enterprise between alleged co-conspirators or a pattern or practice of alleged co-conspirators.  Defendant Chase contends that Plaintiff does not plead RICO allegations with the requisite specificity. Defendant Chase contends that the FAC does not explain Chase's role in the alleged mail fraud scheme.  Defendant Chase contends that because Plaintiff fails to plead a viable RICO claim, her claim for conspiracy also fails.

Plaintiff contends that the FAC and attached exhibits 34 and 35 show the specific date, time, and individuals related to the RICO and conspiracy claim.  Plaintiff contends that the allegations that Defendants sent communications by mail alleging to be an agent of the lender, and that Defendants sent Plaintiffs the Deed of Trust, assignment, Substitution of Trustee, and Notices of Trustee Sale, all containing false statements, through the U.S. mail.

Under the Racketeer Influenced and Corrupt Organizations Act ("RICO") statutes (18 U.S.C. § 1961 *et seq.*) A plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *McMartin v. Children's Institute Int'l*, 212 Cal. App. 3d 1393, 1406.  RICO claims have a four-year statute of limitations period. *Rotella v. Wood*, 528 U.S. 549, 552 (2000).  "In pleading a violation of the mail fraud statute (18 U.S.C. § 1341) as a predicate act under a RICO scheme, plaintiffs must allege that (1) defendants devised a scheme or artifice to defraud, (2) defendants used the mails in furtherance of the scheme, and (3) defendants did so with the specific intent

to deceive or defraud." *McMartin*, 212 Cal. App. 3d at 1407.  Federal Rule of Civil Procedure Rule 9(b) particularity requirements are to RICO claims.  *Moore v. Kayport Package Exp., Inc.,* 885 F.2d 531 (9th Cir. 1989).

The FAC alleges, in part, that Defendants "conspired with remaining defendants to interfere with Plaintiff's quiet enjoyment of her property, to secure a nonjudicial foreclosure through the use of false instruments, sham pleadings, [and] manufactured evidence . . . ."  FAC ¶ 333.  The FAC alleges that "Defendants knowingly prepared, made and subscribed notarized writings to record in the official land records of San Diego County with the intent to make fraudulent claims for interest in real property . . . ."  *Id.* ¶ 327.  The FAC alleges that "Defendants entered into agreement(s) with each other to defraud Plaintiff by creating false instruments and giving false testimony regarding the funding of the subject loan, the validity of the endorsement on the Note and the default of the Loan to parties with no legal or valid interest in the debt . . . ."  *Id.* ¶ 325.

The Court concludes that the allegations in the FAC alleging RICO violations by the Defendants are conclusory do not meet the particularity requirements of Rule 9(b).  Plaintiff does not allege facts to show an enterprise or a pattern of racketeering between the Defendants and alleged co-conspirators.  The FAC and the attached exhibits do not contain sufficient factual allegations to support a RICO claim.  The RICO claim may be barred by the statute of limitations, however, the lack of specificity in the allegations prevents the Court from determining when the statute of limitations on the alleged RICO claim began.  Because the Plaintiff has not adequately alleged a RICO claim, her derivative claim for conspiracy is also insufficient.  *See Westways World Travel, Inc. v. AMR Corp.*, 265 Fed. Appx. 472, 474 (9th Cir. 2009).  Plaintiff's twenty-second cause of action for RICO and civil conspiracy is dismissed.

**Twenty-Third Cause of Action: Slander of Title**

Defendants SPS and NDSC contend that Plaintiff's claim for slander of title is barred by the statute of limitations.  Defendants SPS and NDSC contend that Plaintiff

has not alleged that she has suffered harm as a result of the alleged misconduct. Defendants contend that the alleged publication and recordation of documents was privileged pursuant to California Civil Code § 2924(d) because the conduct was required for the nonjudicial foreclosure process.  Defendants contend that Plaintiff's claim for slander of title does not allege facts that facts to show malice.

Plaintiff contends that malice or ill will is unnecessary for the tort of slander of title; an untrue statement alone supports a finding of slandered title.  Plaintiff contends that the recordation of an instrument that is facially valid but is without underlying merit gives rise to an action for slander of title.  Plaintiff did not respond to Defendants' contentions that the publication and recordation of the Deed of Trust, the Assignment of Deed of Trust, Notice of Default, and Notice of Trustee's Sale was privileged.

"Slander of title occurs when there is an unprivileged publication of a false statement that disparages title to property and causes pecuniary loss." *Compass Bank v. Peterson*, 886 F. Supp. 2d 1186, 1197 (C.D. Cal. 2012) (quoting *Stalberg v. W. Title Ins. Co.*, 27 Cal. App. 4th 925, 929 (1994).  The elements of the tort of slander of title are "publication, falsity, absence of privilege, and disparagement of another's land which is relied upon by a third party and which results in pecuniary loss." *Smith v. Commonwealth Land Title Ins. Co.*, 177 Cal. App. 3d 625, 630 (1986).  "A privilege, either absolute or qualified, is a defense to a charge of slander of title." *Id.*  "[W]here the Complaint shows that the communication or publication is one within the classes of qualified privilege, it is necessary for the plaintiff to go further and plead and prove that the privilege is not available as a defense in the particular case, e.g., because of malice. *Id.* (citing 4 Witkin Summary of Cal. Law (8th ed. 1974) Torts, § 302, p. 2573).  "For this purpose, malice is defined as actual malice, meaning that the publication was motivated by hatred or ill will towards the plaintiff or by showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights. *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 336 (2008).

Section 2924 of the California Civil Code provides the legal framework and procedures for nonjudicial foreclosures.  Section 2924(d) of the California Civil Code states that "the following shall constitute privileged communications . . . (1) the mailing, publication, and delivery of notices as required by this section. (2) Performance of the procedures set forth in this article."  Cal. Civ. Code § 2924(d).  Section 2924 requires the trustee, mortgagee, or beneficiary to file a notice of default, a statement identifying the mortgage or deed of trust, a notice of sale.  Cal. Civ. Code § 2924.  The Court concludes that filing the Notice of Default and Notice of Trustee's Sale was privileged.  The privilege of these documents appears on the face of Plaintiff's Complaint.  Plaintiff does not allege sufficient facts to show malice as to the Defendants.  *See Kachlon*, 168 Cal. App. 4th at 336.

To the extent that the claim for slander of title relies on Plaintiff's allegations that ABC and Doe Defendant recorded a false Deed of Trust with MERS as the beneficiary because ABC was not the real lender and the Deed of Trust fails to identify the real parties to the transaction, the claim is barred by the statute of limitations.  The Deed of Trust was filed in 2007 and Plaintiff began questioning the validity of the Deed of Trust in October 2008, therefore, Plaintiff's claim for slander of title stemming from filing a Deed of Trust with inaccurate information is barred because it was not brought within the three-year statute of limitations and Plaintiff has not alleged facts to show that any exception to the statute of limitations apply.  *See* Cal. Code Civ. P. § 338(g).  Furthermore, the Court concludes that Plaintiff's claim for slander of title fails to allege sufficient facts to support an inference that Defendants published and recorded documents that were false, that were not privileged, that disparaged Plaintiff's property, and that were relied on by a third party, resulting in pecuniary loss the Plaintiff.  *See* 177 Cal. App. 3d at 630.  Plaintiff's claim for slander of title is dismissed.

**Tenth Cause of Action: Injunctive or Equitable Relief**

Plaintiff's allegations to support her claim against all Defendants for injunctive relief are identical to the allegations made in the original Complaint.  The Court

concluded in its prior Order that Plaintiff was not entitled to injunctive relief pursuant to FDCPA violations, was not entitled to relief pursuant to Federal Rule of Civil Procedure 65, and was not entitled to injunctive relief pursuant to Plaintiff's other claims because all claims had been dismissed.  The Court has dismissed all the claims in the FAC on which Plaintiff relies for injunctive relief, therefore, the Court dismisses Plaintiff's request for injunctive relief for the same reasons the Court discussed in the Order dismissing the original Complaint.  *See* ECF No. 12 at 27.

**Fourth Cause of Action: Declaratory Relief**

A claim for declaratory relief is not a stand-alone claim.  *See Eugene N. Gordon, Inc. v. La-Z-Boy, Inc.*, No. 2:06CV2353, 2007 WL 1101456, at *7 (E.D. Cal. Apr. 12, 2007) ("Plaintiffs' claims for specific performance and declaratory relief have been dismissed because they are remedies as opposed to stand-alone claims."); *Mayen v. Bank of Am., N.A.*, No. 14-CV-03757, 2015 WL 179541, at *5 (N.D. Cal. Jan. 14, 2015) ("The Court agrees that declaratory relief is not a standalone claim.").  If a plaintiff's substantive claims have been dismissed, plaintiff's claim for declaratory relief will be dismissed as well.  *See Mayen*, 2015 WL 179541, at *5 ("The Court also agrees that, because Plaintiff's complaint will be dismissed in its entirety, no viable cause of action remains to support Plaintiff's request for declaratory relief.  Plaintiff's declaratory relief claim must be dismissed."); *Ballard v. Chase Bank USA, NA*, No. 10CV790, 2010 WL 5114952, at *8 (S.D. Cal. Dec. 9, 2010) ("A claim for declaratory relief rises or falls with [the] other claims.").

The substantive claims in Plaintiff's FAC have been dismissed.  Plaintiff's claim for declaratory relief must also be dismissed because it is not a stand-alone claim and does not adequately allege a basis that would entitle Plaintiff to declaratory relief.

**IV. CONCLUSION**

Federal Rule of Civil Procedure 15 mandates that leave to amend "be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court offered several factors for district courts to consider in

deciding whether to grant a motion to amend under Rule 15(a):

> In the absence of any apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the leave sought should, as the rules require, be 'freely given.'

*Foman*, 371 U.S. at 182; *see also Smith v. Pac. Prop. Dev. Co.*, 358 F.3d 1097, 1101 (9th Cir. 2004) (citing *Foman* factors).  In applying the *Foman* factors, "[n]ot all factors merit equal weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight." *Id.*  "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court . . . ." *Foman*, 371 U.S. at 182.  "[W]here the plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, the district court's discretion to deny leave to amend is particularly broad." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).  "A district court does not abuse its discretion when it denies leave to amend where a plaintiff . . . did not propose any new facts or legal theories for an amended complaint and therefore give the Court any basis to allow an amendment." *Boehm v. Shemaria*, 478 Fed. Appx. 457, 457 (9th Cir. 2012).  When amendment would be futile, the district court need not grant leave to amend. *Gompper v. VISX, Inc.*, 298 F.3d 893, 898 (9th Cir. 2002).

Plaintiff was previously granted leave to amend her claims and the FAC subsequently failed to add the requisite particularity to its claims and failed to allege sound legal theories.  The Court concludes that allowing Plaintiff to further amend her claims would be futile and would prejudice Defendants.  Therefore, the Court dismisses the FAC with prejudice.

IT IS HEREBY ORDERED that the motion to dismiss the First Amended Complaint filed by Defendants SPS and NDSC (ECF No. 25) is granted.  Plaintiff's claims against Defendants SPS and NDSC are dismissed with prejudice.

IT IS FURTHER ORDERED that the motion to dismiss the First Amended

Complaint filed by Defendant Chase (ECF No. 36) is granted. Plaintiff's claims against Defendant Chase are dismissed with prejudice.

DATED: August 22, 2016

**WILLIAM Q. HAYES**
United States District Judge